JS 44C/SDNY
REV. 12/2005

# CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of
pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the
Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of
initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Allan S. Larson | Jaine Elkind Eney |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER) | ATTORNEYS (IF KNOWN) |
|---|---|
| Powley&Gibson, P.C., 304 Hudson Street, 2nd Fl. NY, NY 10013, 212-226-5054 | Unknown    APR 1 0 2008 |

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Breach of Implied Contract, Unjust Enrichment, Fraud, Conversion and Breach of Implied Covenant of Good Faith and Fair
Dealing

Has this or a similar case been previously filed in SDNY at any time? No ☒ Yes? ☐ Judge Previously Assigned

If yes, was this case Vol. ☐ Invol. ☐ Dismissed. No ☐ Yes ☐ If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*          NATURE OF SUIT

### ACTIONS UNDER STATUTES

| | TORTS | | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|---|
| **CONTRACT** | **PERSONAL INJURY** | | **PERSONAL INJURY** | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 620 FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | | [ ] 430 BANKS & BANKING |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 630 LIQUOR LAWS | **PROPERTY RIGHTS** | [ ] 450 COMMERCE/ICC RATES/ETC. |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | | | [ ] 640 RR & TRUCK | [ ] 820 COPYRIGHTS | [ ] 460 DEPORTATION |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | | **PERSONAL PROPERTY** | [ ] 650 AIRLINE REGS | [ ] 830 PATENT | [ ] 470 RACKETEER INFLU-ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| [ ] 151 MEDICARE ACT | [ ] 345 MARINE PRODUCT LIABILITY | | [ ] 370 OTHER FRAUD | [ ] 660 OCCUPATIONAL SAFETY/HEALTH | [ ] 840 TRADEMARK | [ ] 480 CONSUMER CREDIT |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 350 MOTOR VEHICLE | | [ ] 371 TRUTH IN LENDING | [ ] 690 OTHER | | [ ] 490 CABLE/SATELLITE TV |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | **LABOR** | **SOCIAL SECURITY** | [ ] 810 SELECTIVE SERVICE |
| [ ] 160 STOCKHOLDERS SUITS | [ ] 360 OTHER PERSONAL INJURY | | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 861 MIA (1395FF) | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| [x] 190 OTHER CONTRACT | | | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 862 BLACK LUNG (923) | [ ] 875 CUSTOMER CHALLENGE 12 USC 3410 |
| [ ] 195 CONTRACT PRODUCT LIABILITY | | | | [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT | [ ] 863 DIWC (405(g)) | [ ] 891 AGRICULTURE ACTS |
| [ ] 196 FRANCHISE | | | | [ ] 740 RAILWAY LABOR ACT | [ ] 863 DIWW (405(g)) | [ ] 892 ECONOMIC STABILIZATION ACT |
| | **ACTIONS UNDER STATUTES** | | | [ ] 790 OTHER LABOR LITIGATION | [ ] 864 SSID TITLE XVI | [ ] 893 ENVIRONMENTAL MATTERS |
| | | | | [ ] 791 EMPL RET INC SECURITY ACT | [ ] 865 RSI (405(g)) | [ ] 894 ENERGY ALLOCATION ACT |
| **REAL PROPERTY** | **CIVIL RIGHTS** | | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 441 VOTING | | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | | [ ] 870 TAXES | [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 220 FORECLOSURE | [ ] 442 EMPLOYMENT | | | | [ ] 871 IRS-THIRD PARTY 20 USC 7609 | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 443 HOUSING ACCOMMODATIONS | | [ ] 530 HABEAS CORPUS | | | [ ] 890 OTHER STATUTORY ACTIONS |
| [ ] 240 TORTS TO LAND | [ ] 444 WELFARE | | [ ] 535 DEATH PENALTY | | | |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | | [ ] 540 MANDAMUS & OTHER | | | |
| [ ] 290 ALL OTHER REAL PROPERTY | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | | [ ] 550 CIVIL RIGHTS | | | |
| | [ ] 440 OTHER CIVIL RIGHTS | | [ ] 555 PRISON CONDITION | | | |

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $_____ OTHER _____ JUDGE _____ DOCKET NUMBER_____

*Check YES only if demanded in complaint*
JURY DEMAND: ☒ YES ☐ NO          NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

| (PLACE AN  x  IN ONE BOX ONLY) | | | ORIGIN | | | | |
|---|---|---|---|---|---|---|---|
| [x] 1 Original<br>Proceeding | [ ] 2a. Removed from<br>State Court<br>[ ] 2b. Removed from State Court<br>AND at least one party is a pro se litigant | [ ] 3 Remanded from<br>Appellate Court | [ ] 4 Reinstated or<br>Reopened | [ ] 5 Transferred from<br>(Specify District) | [ ] 6 Multidistrict<br>Litigation | [ ] 7 Appeal to District<br>Judge from<br>Magistrate Judge<br>Judgment |

| (PLACE AN  x  IN ONE BOX ONLY) | | BASIS OF JURISDICTION | | *IF DIVERSITY, INDICATE* |
|---|---|---|---|---|
| [ ] 1 U.S. PLAINTIFF | [ ] 2 U.S. DEFENDANT | [ ] 3 FEDERAL QUESTION<br>(U.S. NOT A PARTY) | [x] 4 DIVERSITY | *CITIZENSHIP BELOW.*<br>*(28 USC 1332, 1441)* |

## CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF DEF | | PTF DEF | | PTF DEF |
|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1  [x] 1 | CITIZEN OR SUBJECT OF A<br>FOREIGN COUNTRY | [ ] 3  [ ] 3 | INCORPORATED and PRINCIPAL PLACE<br>OF BUSINESS IN ANOTHER STATE | [ ] 5  [ ] 5 |
| CITIZEN OF ANOTHER STATE | [x] 2  [ ] 2 | INCORPORATED or PRINCIPAL PLACE<br>OF BUSINESS IN THIS STATE | [ ] 4  [ ] 4 | FOREIGN NATION | [ ] 6  [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Allan S. Larson
13603 Marina Pointe Drive
Marina del Rey, California 90292
Los Angeles County

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York  10538
Westchester County

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE
RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:    THIS ACTION SHOULD BE ASSIGNED TO:    [ ] WHITE PLAINS    [x] FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE  4/10/08    SIGNATURE OF ATTORNEY OF RECORD

RECEIPT #

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[x] YES (DATE ADMITTED  Mo. March  Yr. 2000  )
Attorney Bar Code #  DL 3072

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____MAAS_____ Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)


AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

Allan S. Larson

**SUMMONS IN A CIVIL ACTION**

v.

Jaine Elkind Eney

CASE NUMBER:

## 08 CV 03513

TO: (Name and address of Defendant)

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Robert L. Powley
James M. Gibson
David J. Lorenz
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013

an answer to the complaint which is served on you with this summons, within _____ twenty (20) _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON

APR 1 0 2008

CLERK

DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| NAME OF SERVER *(PRINT)* | TITLE |
|---|---|
| | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant.  Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

   Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|
| | | |

## DECLARATION OF SERVER

   I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____          _____
                          Date                              *Signature of Server*

                                             _____
                                             *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
David J. Lorenz (DL 3072)
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013
Telephone: (212) 226-5054
Facsimile:  (212) 226-5085

Attorneys for Plaintiff
Allan S. Larson



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – x

| | | |
|---|---|---|
| ALLAN S. LARSON | : | |
| Plaintiff, | : | **CASE NO.** |
| v. | : | **COMPLAINT FOR BREACH OF CONTRACT, UNJUST** |
| | : | **ENRICHMENT, FRAUD,** |
| JAINE ELKIND ENEY | | **CONVERSION AND BREACH OF** |
| | : | **IMPLIED COVENANT OF GOOD** |
| Defendant. | | **FAITH AND FAIR DEALING** |
| | : | |
| | | **ECF** |
| | : | |

– – – – – – – – – – – – – – – – – – – – – – – – – – x

Plaintiff Allan S. Larson (hereinafter referred to as "Plaintiff") by his attorneys

complains of defendant Jaine Elkind Eney (hereinafter referred to as "Defendant") and alleges

as follows:

<u>THE PARTIES</u>

1.      Plaintiff is a citizen of the State of California with an address at 13603 Marina Pointe

Drive, Marina del Rey, California 90292.

2.    On information and belief, Defendant is a citizen of the State of New York with an address at 9 Kilmer Road, Larchmont, New York 10538.

## JURISDICTION AND VENUE

3.    The court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1).  Diversity of citizenship is present between Plaintiff and Defendant.  The matter in controversy exceeds $75,000 in value, exclusive of interest and costs.

4.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).  Property at issue in this action is located within this district, a substantial part of the events giving rise to Plaintiff's claims against Defendant occurred in this district and, upon information and belief, a substantial portion of the money Plaintiff seeks from Defendant was used to satisfy a mortgage owing on Defendant's property, to pay for legal services and to pay living expenses, all of which took place in this district.

## NATURE OF THE CASE

5.    This action arises out of Defendant's failure to repay funds loaned to Defendant by Plaintiff.  On several occasions, Plaintiff made loans to Defendant totaling $296,610.80 ("the Subject Loans").  On information and belief, Defendant used the monies from the Subject Loans for the purpose of satisfying mortgage obligations and other interests applicable to Defendant's residence, as well as paying for legal services received by Defendant and for general living expenses.

6.    Prior to the Subject Loans being made, Defendant orally agreed to repay the Subject Loans with interest.  The parties' intent that the Subject Loans would be repaid to Plaintiff is clearly manifested by certain writings, including a Mortgage, Mortgage Note and Note dated January 2003 that were prepared by Defendant and sent to Plaintiff.  The Mortgage,

Mortgage Note and Note dated January 2003 were not executed as the parties were not able to reach agreement upon an interest rate for repayment. True and correct copies of the January 2003 Mortgage, January 2003 Mortgage Note and January 2003 Note are attached as Exhibits 1, 2 and 3, respectively.

7.     To date, Defendant has not repaid any of the Subject Loans despite repeated requests from Plaintiff do so.

BACKGROUND FACTS

The Subject Loans

8.     On or about May 26, 2000, Plaintiff sent to Defendant a loan in the amount of $10,000.00 by check bearing serial number 1114. Plaintiff marked said check as "loan" in the memo section. A true and correct copy of the check bearing serial number 1114 is attached as Exhibit 4.

9.     On or about August 5, 2002, Plaintiff sent to Defendant a loan in the amount of $6,500.00 by check bearing serial number 1661. Plaintiff marked said check as "loan" in the memo section. A true and correct copy of the check bearing serial number 1661 is attached as Exhibit 5.

10.     On or about October 8, 2002, Plaintiff sent to Defendant a loan in the amount of $100,000.00 by wire transfer. A true and correct copy of Plaintiff's bank statement showing the October 8, 2002 wire transfer is attached as Exhibit 6.

11.     On or about October 29, 2002, Plaintiff made a loan to Defendant in the amount of $10,000.00 by check bearing serial number 1519. At Defendant's request and pursuant to the parties' agreement, Plaintiff made this check payable to Richard Danzig, Esq. on Defendant's behalf. Upon information and belief, said loan was used for Defendant's benefit to pay for

3

legal services rendered to Defendant.  A true and correct copy of the check bearing serial number 1519 is attached as Exhibit 7.

12.    On or about November 10, 2002, Plaintiff made a loan to Defendant in the amount of $10,000.00 by check bearing serial number 1531.  At Defendant's request and pursuant to the parties' agreement, Plaintiff made this check payable to Kurzman Eisenberg Corbin & Lever, LLP on Defendant's behalf.  Upon information and belief, said loan was used for Defendant's benefit to pay for legal services rendered to Defendant.  A true and correct copy of the check bearing serial number 1531 is attached as Exhibit 8.

13.    On or about November 10, 2002, Plaintiff made a loan to Defendant in the amount of $5,110.80 by check bearing serial number 1532.  At Defendant's request and pursuant to the parties' agreement, Plaintiff made this check payable to Richard Danzig, Esq. on Defendant's behalf.  Upon information and belief, said loan was used for Defendant's benefit to pay for legal services rendered to Defendant.  A true and correct copy of the check bearing serial number 1532 is attached as Exhibit 9.

14.    On or about April 14, 2003, Plaintiff sent to Defendant a loan in the amount of $120,000.00 by wire transfer.  A true and correct copy of Plaintiff's bank statement showing the April 14, 2003 wire transfer is attached as Exhibit 10.

15.    On or about September 3, 2003, Plaintiff sent to Defendant a loan in the amount of $15,000.00 by check bearing serial number 1909.  Plaintiff marked said check as "loan" in the memo section.  A true and correct copy of the check bearing serial number 1909 is attached as Exhibit 11.

16.    On or about October 12, 2003, Plaintiff sent to Defendant a loan in the amount of $20,000.00 by check bearing serial number 1927.  Plaintiff marked said check as "loan" in

4

the memo section. A true and correct copy of the check bearing serial number 1927 is attached as Exhibit 12.

17.    The foregoing loans sent to Defendant, totaling $296,610.80, constitute the principal of the Subject Loans from Plaintiff to Defendant.

The Parties' Agreement

18.    On information and belief, on or before May 26, 2000, Plaintiff orally agreed to provide the Subject Loans to Defendant, with the purpose of enabling Defendant to satisfy an existing bank mortgage owing on Defendant's residence located at 9 Kilmer Road, Larchmont, New York 10538 ("the Subject Property"), to "buy out" an interest in the Subject Property owned by Defendant's former spouse, to pay for legal services received by Defendant and to defray Defendant's living expenses. On information and belief, Defendant agreed to repay the Subject Loans in the same manner as Defendant was repaying the existing bank mortgage, but at an annual interest rate to be negotiated by the parties ("the Agreement"). In part, the purpose of the Agreement was to reduce the financial burden of the bank mortgage on Defendant. A true and correct copy of the Description of the Subject Property is attached as Exhibit 13.

19.    From about October 2002 to the present, Plaintiff, through his attorneys Artiano, Guzman & Toomey, LLP ("AGT") (now Guzman & Lou, LLP ("G&L")), regularly and frequently contacted Defendant by letter and telephone to request that Defendant begin repaying the Subject Loans pursuant to the Agreement. In the course of said contacts, Plaintiff provided notice that Defendant was in continuous default in repaying the Subject Loans. During said discussions from about October 2002 to as late as about March 2007, the parties negotiated specific terms of the Agreement. During said discussions, Defendant did

not dispute its obligation under the Agreement to repay the Subject Loans with interest.

20.     On or about January 16, 2003, Defendant prepared and sent to Plaintiff the January 2003 Mortgage, Mortgage Note and Note.  (See Exhibits 1, 2 and 3).  In a cover letter dated January 16, 2003 accompanying said documents, Defendant purported to enclose "a draft of the Mortgage Note, Mortgage and Note for my loan transaction with [Plaintiff]."  A true and correct copy of the January 16, 2003 cover letter is attached as Exhibit 14.

21.     The January 2003 Mortgage defines Defendant as Borrower and Plaintiff as Lender. The January 2003 Mortgage specifies that Defendant owes Plaintiff $170,000 plus interest and other amounts that may be payable.  (See Exhibit 1, p. 1).

22.     The January 2003 Mortgage specifies that Defendant mortgages, grants and conveys the Subject Property to Plaintiff against Defendant's obligation to repay the amounts specified in the January 2003 Mortgage.  (See Exhibit 1, p. 2).

23.     The January 2003 Mortgage specifies that the Mortgage is governed by federal law and the law of New York State.  (See Exhibit 1, p. 10).

24.     The January 2003 Mortgage specifies that, if Defendant fails to fulfill the obligations under the Mortgage, Plaintiff may require immediate payment in full of the remaining unpaid balance, may initiate litigation to take away all remaining rights of Defendant in the Subject Property and have the Subject Property sold and may collect all attorneys' fees and costs, which fees shall become part of the obligations secured by the Subject Property.  (See Exhibit 1, p. 12).

25.     The January 2003 Mortgage Note specifies repayment by Defendant of a principal amount of $170,000 at 4.45% interest per year, with monthly installments of $856.32 to be paid by Defendant beginning March 1, 2003 and ending February 1, 2033.  (See Exhibit 2, ¶¶

1-3).

26.     The January 2003 Mortgage Note specifies that Defendant will be in default if Defendant does not pay the full amount of each monthly payment on the date it is due.  (See Exhibit 2, ¶ 6(E)).

27.     The January 2003 Mortgage Note specifies that if Defendant is in default, Plaintiff may require immediate repayment of all principal and unpaid accrued interest and is entitled to all costs and expenses incurred by Plaintiff in the collection of the Mortgage Note, including reasonable attorneys' fees.  (See Exhibit 2, ¶ 22).

28.     The January 2003 Note specifies repayment by Defendant to Plaintiff of a principal amount of $80,000 at 4.45% interest per year, with monthly interest-only installments to be paid by Defendant beginning February 1, 2004 and ending February 1, 2033.  (See Exhibit 3, p. 1).

29.     The January 2003 Note specifies that Defendant will be in default if Defendant does not pay the full amount of each annual interest payment by the end of fifteen calendar days after the date it is due.  (See Exhibit 3, p. 1).

30.     The January 2003 Note specifies that if Defendant is in default, Plaintiff may require immediate repayment of all principal and unpaid accrued interest and is entitled to all costs and expenses incurred by Plaintiff in the collection of the Note, including reasonable attorneys' fees.  (See Exhibit 3, p. 1).

31.     On or about January 22, 2003, Defendant amended the mortgagee declaration in an insurance policy ("the Policy") applicable to the Subject Property.  The Policy was issued by the Amica Mutual Insurance Company and was renewable annually.  Defendant amended the Policy to name Plaintiff as Mortgagee of the Subject Property.  First Union National Bank is

named Second Mortgagee of the Subject Property. A true and correct copy of the Amended Declarations for the Policy is attached as Exhibit 15.

32.    On or about May 1, 2003 and July 21, 2003, Plaintiff, through attorneys AGT, corresponded with Defendant to request that Defendant begin repaying the Subject Loans outstanding as of those dates. True and correct copies of the May 1, 2003 and July 21, 2003 correspondence are attached as Exhibits 16 and 17.

33.    On or about March 23, 2004, Plaintiff, through attorneys AGT, sent correspondence to Defendant enclosing a Mortgage and Note specifying a principal of $177,721.20, which included the $170,000 principal recited in the January 2003 Mortgage Note and Mortgage plus unpaid accrued interest, and a Mortgage and New York Balloon Note specifying a principal of $83,633.52, which included the $80,000 principal recited in the January 2003 Note plus unpaid accrued interest. True and correct copies of the March 2004 correspondence, Mortgages, Note and New York Balloon Note are attached as Exhibits 18, 19, 20, 21 and 22, respectively.

34.    The March 2004 Mortgages, Note and New York Balloon Note additionally recited proposed revised interest rates and a revised repayment term for the $83,633.52 loan but otherwise contained substantially the same provisions as the January 2003 Mortgage Note, Mortgage and Note.

35.    In preparing the March 2004 Mortgages, Note and New York Balloon Note, Plaintiff incorporated the $170,000 and $80,000 principal amounts specified by Defendant in the January 2003 Mortgage Note, Mortgage and Note.

36.    During the time period from about April 2004 to about June 2004, Plaintiff, through attorneys AGT, contacted and attempted to contact Defendant by telephone regarding the

March 2004 Mortgages, Note and New York Balloon Note and payments due thereon. During one telephone conference on or about June 4, 2004, Defendant agreed to secure the $177,721.20 loan and agreed to a thirty year term for the $83,633.52 loan. Defendant objected to the proposed revised interest rates to the extent that the resulting monthly payments would exceed the monthly payments due under Defendant's original home mortgage.

37.    On or about August 17, 2004, Plaintiff, through attorneys AGT, informed Defendant of Plaintiff's decision to approve all terms proposed by Defendant during the telephone conference on or about June 4, 2004 for the March 2004 Mortgages, Note and New York Balloon Note and requested a payment schedule from Defendant. A true and correct copy of correspondence dated August 17, 2004 is attached as Exhibit 23.

38.    Despite Plaintiff's agreement to Defendant's proposed terms, and despite Plaintiff's continued demands between about August 17, 2004 and the present for Defendant to begin repaying the Subject Loans, Defendant has failed to honor the Agreement and has made no payments.

39.    On or about February 23, 2005, Plaintiff, through attorneys AGT, sent correspondence to Defendant requesting that Defendant begin repaying the Subject Loans. The February 2005 correspondence indicated that two promissory notes and a mortgage reflecting updated principal amounts due on both notes were enclosed. According to the February 2005 correspondence, the updated principal due on the loan recited in the January 2003 Mortgage Note and Mortgage was $185,150, which included the $170,000 principal plus unpaid accrued interest. According to the February 2005 correspondence, the updated principal due on the loan recited in the January 2003 Note was $82,200, which included the

$80,000 principal plus unpaid accrued interest. True and correct copies of the February 2005 correspondence and Note for the $82,200 loan are attached as Exhibits 24 and 25, respectively.

40.     On or about February 13, 2007, Plaintiff, through attorneys AGT, sent correspondence to Defendant requesting that Defendant begin repaying the Subject Loans and enclosing a Mortgage, Note and Promissory Note reflecting updated loan totals due under the March 2004 Mortgages, Note and New York Balloon Note. The February 2007 Mortgage and Note specified a principal of $200,931, which included the $170,000 principal recited in the January 2003 Mortgage Note and Mortgage plus unpaid accrued interest. The February 2007 Promissory Note specified a principal of $89,616, which included the $80,000 principal recited in the January 2003 Note plus unpaid accrued interest at the interest rate specified in the January 2003 Note. True and correct copies of the February 2007 correspondence, Mortgage, Note and Promissory Note are attached as Exhibits 26, 27, 28 and 29, respectively.

41.     On or about April 10, 2007, Plaintiff, through attorneys AGT, again requested that Defendant repay the Subject Loans. Plaintiff reviewed the January 2003 Mortgage, Mortgage Note and Note and noted that the accompanying correspondence from Defendant stated that these documents were for Defendant's loan from Plaintiff in the amount of $250,000. Plaintiff informed Defendant that a search of Plaintiff's records showed that the Subject Loans, which Defendant was obligated to repay pursuant to the Agreement, in fact totaled $296,610.80 in principal. Plaintiff enclosed a list itemizing the dates and amounts of the Subject Loans. A true and correct copy of the April 2007 correspondence is attached as Exhibit 30.

FIRST CAUSE OF ACTION
BREACH OF IMPLIED CONTRACT

42.     Plaintiff realleges and reasserts Paragraphs 1 through 41 as if fully set forth and restated herein.

43.     Plaintiff and Defendant reached the Agreement obligating Plaintiff to provide the Subject Loans to Defendant and obligating Defendant to repay the Subject Loans with interest.  Plaintiff and Defendant memorialized the terms of the Agreement in the January 2003 Mortgage Note, the January 2003 Mortgage, the January 2003 Note, the revised versions thereof and correspondence between the parties subsequent to the formation of the Agreement.  Defendant additionally amended the Policy to name Plaintiff as Mortgagee of the Subject Property.

44.     Plaintiff sent the Subject Loans to Defendant pursuant to the Agreement and has fully performed all of Plaintiff's obligations under the Agreement.

45.     Defendant has failed and refused to repay any portion of the Subject Loans or to otherwise satisfy Defendant's obligations under the Agreement.

46.     As a direct and proximate cause of Defendant's breach of the Agreement, Plaintiff has suffered and continues to suffer damages.

47.     Consequently, Defendant has wrongfully and dishonorably denied Plaintiff's expectation interests, per the terms of the Agreement.  Plaintiff therefore is entitled to damages and other equitable relief which flow from the breach.

48.     The January 2003 Mortgage, January 2003 Mortgage Note and January 2003 Note, and all revised versions thereof, each specify that Defendant agrees to pay all costs and expenses, including reasonable attorneys' fees, incurred by Plaintiff in the collection of the Subject Loans.

11

49.    As a direct and proximate cause of Defendant's breach of the Agreement and Plaintiff's attempts to enforce Defendant's performance arising thereunder, Plaintiff has incurred, and continues to incur, costs and expenses, including reasonable attorneys' fees.

SECOND CAUSE OF ACTION
UNJUST ENRICHMENT

50.    Plaintiff realleges and reasserts Paragraphs 1 through 49 as if fully set forth and restated herein.

51.    Defendant directly benefited from the Subject Loans.

52.    Defendant was unjustly enriched at Plaintiff's expense by failing to repay any portion of the Subject Loans.

53.    The circumstances of Defendant's unjust enrichment are such that Defendant is obligated to make restitution to Plaintiff.

54.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff has suffered and continues to suffer damages.

THIRD CAUSE OF ACTION
FRAUD

55.    Plaintiff realleges and reasserts Paragraphs 1 through 54 as if fully set forth and restated herein.

56.    As part of the Agreement, Defendant agreed to repay the Subject Loans to Plaintiff.

57.    In reasonable reliance upon Defendant's representations, Plaintiff sent the Subject Loans to Defendant.

58.    Defendant's representations that the Subject Loans would be repaid were materially false and misleading.

59.    As a direct and proximate result of Plaintiff's reasonable reliance on Defendant's

material representations, wrongful deception and fraudulent conduct, Plaintiff has suffered and continues to suffer damages.

## FOURTH CAUSE OF ACTION
### CONVERSION

60.    Plaintiff realleges and reasserts Paragraphs 1 through 59 as if fully set forth and restated herein.

61.    Defendant has engaged in an unauthorized assumption and exercise of ownership over the Subject Loans.

62.    Defendant is acting in an unauthorized way and without appropriate right, depriving Plaintiff of ownership rights in the Subject Loans.

63.    As a direct and proximate result of Defendant's unauthorized assumption and exercise of ownership over the Subject Loans, Plaintiff has suffered and continues to suffer damages.

## FIFTH CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING

64.    Plaintiff realleges and reasserts Paragraphs 1 through 63 as if fully set forth and restated herein.

65.    The Agreement contains an implied covenant of good faith and fair dealing, which requires Defendant not do anything to destroy Plaintiff's right to receive the benefits of the Agreement.

66.    Defendant has breached the aforesaid implied covenant by engaging in those wrongful acts set forth herein above.  In so doing, Defendant has acted willfully and maliciously with intent to injure Plaintiff.

67.    As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered and continues to suffer damages.

<u>PRAYER FOR RELIEF</u>

WHEREFORE Plaintiff asks that this Court:

A.      Award damages in an amount proven at trial, but in no event less than the Subject Loans

plus interest;

B.      Award Plaintiff's costs in bringing this action or any related action or proceeding to

recover the Subject Loans;

C.      Award Plaintiff's attorneys' fees incurred in bringing this action;

D.      Award such other relief as the Court deems necessary and appropriate; and

E.      Order the Subject Property sold at auction to recoup the Subject Loans.

<u>JURY TRIAL DEMANDED</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all

issues and causes of action so triable herein.

Respectfully submitted,

Dated: April 10, 2008

Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
David J. Lorenz (DL 3072)
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013
(212) 226-5054

Attorneys for Plaintiff
Allan S. Larson

# EXHIBIT 1

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A)**    "**Security Instrument.**"  This document, which is dated January 2003 together with all Riders to this document, will be called the "Security Instrument."

**(B)**    "**Borrower.**"  Jaine Elkind Eney
_____ 9 Kilmer Road, Larchmont, New York 10538 _____, whose address is called "Borrower" and sometimes simply "I" or "me."    sometimes will be

**(C)**    "**Lender.**"  Allan S. Larson _____ will be called "Lender." Lender is a corporation or association which exists under the laws of New York State. Lender's address is: 13603 Marina Pointe Drive, Marina Del Rey, California 90292

**(D)**    "**Note.**"  The note signed by Borrower and dated January 2003 will be called the "Note." The Note shows that I owe Lender One Hundred Seventy Thousand and 007/100 _____ Dollars (U.S. $ 170,000.00 ) plus interest and other amounts that may be payable.  I have promised to pay this debt in Periodic Payments and to pay the debt in full by February 1, 2033

**(E)**    "**Property.**"  The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F)**    "**Loan.**"  The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums under this Security Instrument, plus interest.

**(G)**    "**Sums Secured.**"  The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H)**    "**Riders.**"  All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders."  The following Riders are to be signed Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider   ☐ Other(s)[specify] _____
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider

**(I)**    "**Applicable Law.**"  All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and order (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J)**    "**Community Association Dues, Fees, and Assessments.**"  All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K)**    "**Electronic Funds Transfer.**"  "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic termination, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)**    "**Escrow Items.**"  Those items that are described in Section 3 will be called "Escrow Items."

**(M)**    "**Miscellaneous Proceeds.**"  "Miscellaneous Proceeds" mean any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for:  (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations                                                          of,                                          or

NEW YORK- Single Family-Fannie Mae /Freddie Mac UNIFORM INSTRUMENT                    FORM 3033 1/01 (Page 1 of 13)

_____ Initials

omissions as to, the value and/or condition of the Property.  A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N)**   **"Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)**   **"Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P)**   **"RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument.  This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property.  I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A)   Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B)   Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C)   Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A)   The Property which is located at  __9 Kilmer Road__ ,

_____ __Larchmont__ _____, New York    __10538__
             [City, Town or Village]                    [Zip Code]
                        [Street]

This Property is in __Westchester____ County.  If has the following legal description:

(B)   All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)   All rights in other property that I have as owner of the Property described in subsection (A) of this section.  These rights are known as "easements and appurtenances attached to the Property;"

(D)   All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)   All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)   All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)   All replacement of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that:  (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

NEW YORK- Single Family-Fannie Mae /Freddie Mac UNIFORM INSTRUMENT                    FORM 3033 1/01 (Page 2 of 13)

_____ Initials

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

2. **Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order: First, to pay interest due under the Note;
Next, to pay principal due under the Note; and
Next, to pay the amounts due Lender under Section 3 of this Security Instrument.
Such payments will be applied to each Periodic Payment in the order in which it became due.
Any remaining amounts will be applied as follows:
First, to pay any late charges;
Next, to pay any other amounts due under this Security Instrument; and
Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

3. **Monthly Payments For Taxes and Insurance.** N/A

**(a)    Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1)    The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2)    The leasehold payments or ground rents on the Property (if any);

(3)    The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4)    The premium for Mortgage Insurance (if any);

(5)    The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6)    If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I have to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a Lender could required under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

**(b)    Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires lender to pay interest on the Escrow Funds.

(c)   **Adjustments to the Escrow Funds.**  Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold.  If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary.  I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4.**   **Borrower's Obligation to Pay Charges, Assessments and Claims.**  I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.  I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property.  If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument.  In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument.  However, this Security Instrument does not require me to satisfy a superior Lien if:  (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way I which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person.  If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien.  Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take on or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5.**   **Borrower's Obligation to Maintain Hazard insurance or Property Insurance.**  I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property.  The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to, earthquakes and floods.  The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender.  What Lender requires under the last sentence can change during the term of the Loan.  I may choose the insurance company, but my choice is subject to Lender's right to disapprove.  Lender may not disapprove my choice unless the disapproval is reasonable.  Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification.  If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense.  Lender is under no obligation to purchase any particular type or amount of coverage.  Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect.  I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained.  Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument.  These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee.  The form of all policies and renewals will be acceptable to Lender.  Lender will have the right to hold the policies and renewal

certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.    **Borrower's Obligations to Occupy the Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7.    **Borrower's Obligations to Maintain and Protect the Property and to Fulfill Any Lease Obligations.**

(a)    **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease I value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance of Condemnation (as described in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purpose. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b)    **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

NEW YORK- Single Family-Fannie Mae /Freddie Mac UNIFORM INSTRUMENT                    FORM 3033 1/01 (Page 6 of 13)

——————— Initials

8.    **Borrower's Loan Application.**  If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement if important information.

9.    **Lender's Right to Protect Its Rights in the Property.**  If:  (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Persona rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceeds for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations; or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to:  (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called the "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The loss reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if:  (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, or any other entity, may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

11.    **Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that

dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award of claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12.    Continuation of Borrower's Obligations and of Lender's Rights.**
(a)    **Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b)    **Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument o 7under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payment from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13.    Obligations of Borrower and of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14.    Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law if finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge for the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15.    Notices Required Under This Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if

NEW YORK- Single Family-Fannie Mae /Freddie Mac UNIFORM INSTRUMENT                    FORM 3033 1/01 (Page 9 of 13)

sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16.  **Law That Governs This Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any terms of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain in effect if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and the words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

17.  **Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

18.  **Agreements About Lender's Right if the Property is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during the period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

19.  **Borrower's Right to Have Lender's Enforcement of This Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a)     I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)     I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)     I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)     I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement

NEW YORK- Single Family-**Fannie Mae /Freddie Mac** UNIFORM INSTRUMENT          FORM 3033 1/01 (Page 10 of 13)

_____ Initials

of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

20.    **Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** ~~The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.~~

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which h I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges the the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

21.    **Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substances on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

NEW YORK- Single Family-Fannie Mae /Freddie Mac UNIFORM INSTRUMENT          FORM 3033 1/01 (Page 11 of 13)

————————— Initials

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS**

I also promise and agree with Lender as follows:

22.     **Lender's Rights If Borrower Fails to Keep Promises and Agreements.** Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."

If Lender required Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosures and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:

(a)     I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;

(b)     Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:

(1)     The promise or agreement that I failed to keep or the default that has occurred;
(2)     The action that I must take to correct that default;
(3)     A date by which I must correct the default. That date will be at least 30 days from the date on which notice is given;
(4)     That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;
(5)     That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and
(6)     That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and this Security Instrument, and to present any other defenses that I may have; and

(c)     I do not correct the default stated in the notice from Lender by the date stated in that notice.

23.     **Lender's Obligation to Discharge This Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

24.     **Agreements About New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

25.     **Borrower's Statement Regarding the Property [check box as applicable].**
☒     This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.

NEW YORK- Single Family-Fannie Mae /Freddie Mac UNIFORM INSTRUMENT                    FORM 3033 1/01 (Page 12 of 13)

_____ Initials

☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.

☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 14 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____        _____ (Seal)
                                          - Borrower  Jaine Elkind Eney

_____        _____ (Seal)
                                          - Borrower

_____ [Space Above This Line For Recording Data] _____

STATE OF NEW YORK)
COUNTY OF Westchester )  ss:

    On the _____ day of January , 200 3 , before me, the undersigned, a Notary Public in and for said State, personally appeared Jaine Elkind Eney personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

                                          _____
                                          Notary Public

# EXHIBIT 2

# NOTE

January   , 2003              Larchmont                    New York
[Date]                        [City]                       [State]

### 9 Kilmer Road, Larchmont, New York
[Property Address]

**1. BORROWER'S PROMISE TO PAY**
    In return for a loan that I have received, I promise to pay U.S. $170,000.00 ("principal"), plus interest, to the order of the Lender. The Lender is Allan S. Larson                    (this amount is called

~~that the Lender may transfer this Note.~~  The Lender or ~~anyone who takes this Note by transfer and~~ who is entitled to receive         ~~I understand~~
payments under this Note is called the "Note Holder."

**2. INTEREST**
    Interest will be charged on unpaid principal until the full amount of principal has been paid.  I will pay interest at a yearly rate of     4.45        %.
    The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**
    **(A) Time and Place of Payments**
    I will pay principal and interest by making payments every month.
    I will make my monthly payments on the 1st       day of each month beginning on March 1, 2003             . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note.  My monthly payments will be applied to interest before principal. If, on February 1, 2033           , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
    I will make my monthly payments at 13603 Marina Pointe Drive, Marina Del Rey California 90292                                    or at a different place if required by the Note Holder.
    **(B) Amount of Monthly Payments**
    My monthly payment will be in the amount of U.S. $856.32

**4. BORROWER'S RIGHT TO PREPAY**
    I have the right to make payments of principal at any time before they are due.  A payment of principal only is known as a "prepayment."  When I make a prepayment, I will tell the Note Holder in writing that I am doing so.
    I may make a full prepayment or partial prepayments without paying any prepayment charge.  The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.  If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**
    If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me.  If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**
    **(A) Late Charge for Overdue Payments**
    If the Note Holder has not received the full amount of any monthly payment by the end of    15        calendar days after the date it is due, I will pay a late charge to the Note Holder.  The amount of the charge will be                        2     % of my overdue payment of principal and interest.  I will pay this late charge promptly but only once on each late payment.
    **(B) Default**
    If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument                     Form 3233 10/91

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections give to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**AGREEMENTS ABOUT LENDER'S RIGHT IF THE PROPERTY IS SOLD OR TRANSFERRED**

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transfered without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

| | |
|---|---|
| _____ (Seal) | _____ (Seal) |
| -Borrower | Jaine Elkind Eney -Borrower |
| SSN: | SSN: |
| _____ (Seal) | _____ (Seal) |
| -Borrower | -Borrower |
| SSN: | SSN: |

*[Sign Original Only]*

Form 3233 10/91

# EXHIBIT 3

$80,000.                                                        Dated: January  ,2003

## NOTE

**SECTION 1. PAYMENT:** For value received, **Jaine Elkind Eney** ("Borrower"), with residing at 9 Kilmer Road, Larchmont, New York 10538, promises to pay to the order of **Allan S. Larson** ("Lender") at 13603 Marina Pointe Drive, Marina Del Rey, California 90292, in lawful money of the United States, the principal sum of eighty thousand and 00/100 Dollars ($80,000.00), plus interest on the principal sum outstanding from the date hereof until paid.

The rate of interest under this Note shall be four and forty-five one hundredths percent (4.45%) per annum. This is the interest rate before and after any default under this Note.

This Note shall be repaid in annual installments of interest only on the unpaid principal amount, with the first installment due and payable on February 1, 2004, and all subsequent installment payments will be due and payable on the first day of each and every February thereafter until February 1, 2033 (the "Maturity Date"), when the entire remaining principal balance of this Note plus any accrued and unpaid interest and all other amounts owing under this Note will be due and payable in full.

This Note may be prepaid in whole at any time or in part from time to time, without premium or penalty

If a law which applies to this Note and which sets maximum loan charges is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this Note exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. The Lender may choose to make this refund by reducing the principal Borrower owes under this Note or by making direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment.

If the Borrower does not pay the full amount of each annual interest payment by the end of fifteen calendar days after the date it is due, Borrower will be in default. If Borrower is in default, Lender may send Borrower written notice that if the overdue amount is not paid within thirty days of said notice, Lender may require Borrower to pay immediately all principal and accrued and unpaid interest owing under this Note. No waiver by the Lender of its right to require immediate payment in full as described in the foregoing sentence will be deemed a waiver by the Lender of its right to do so if Borrower is in default at a later time. If Lender requires immediate payment in full, the Borrower agrees to pay all costs and expenses incurred by the Lender in the collection of this Note (including reasonable attorneys' fees).

Any notice that must be given to Borrower under this Note will be given by delivering it or by mailing by first class mail to the Borrower at the address set forth above (or at such other address as the Borrower notifies the Lender in writing ). Any notice that must be given to Lender under this Note will be given by delivering it or by mailing by first class mail to the Lender at the address set forth above (or at such other address as the Lender notifies the Borrower in writing ).

The Borrower waives presentment and notice of dishonor.

This Note shall be governed by and construed in accordance with the laws of the State of New York.

_____
Jaine Elkind Eney, Borrower

STATE OF NEW YORK          )
                           ) ss:
COUNTY OF WESTCHESTER      )

On the      day of  January in the year 2003 before me, the undersigned, personally appeared **Jaine Elkind Eney**, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

# EXHIBIT 4



# EXHIBIT 5





# EXHIBIT 6

Your PMA® relationship number

Page 10 of 15

## Portfolio Management® Account
Statement period: October 01, 2002 - October 31, 2002

## PMA® Investment Account

Account number:

## Activity detail

### Subtractions

#### Withdrawals

| Date | Description | | $ Amount |
|------|-------------|---|----------|
| 10/08 | State Sales Tax | | 0.58 |
| 10/08 | Wire Trans Svc Charge - Sequence: | Srf# | 10.00 |
| | Trn/ | Rfb#: | |
| 10/08 | WT Fed/ | | 100,000.00 |
| | Trn#: | Rfb#: | |
| | Jpmorgan Chase Ban /Fir/Bnf=Jane Elkind Eney Srf# | | |
| Total withdrawals | | | $ 100,010.58 |

9129

L.d

# EXHIBIT 7





# EXHIBIT 8



LN S. OR NANETTE T. LARSON

85-219/1070

1531

DATE 11/10/02

PAY TO THE ORDER OF _Kurrymaan Eisenberg Corbin et al_    $ 19 000

_Ten thousand and no/oo_    DOLLARS

WELLS FARGO BANK NEW MEXICO, N.A.
348 NW
ALBUQUERQUE, NM 87102
WELLSFARGO.COM

C0700 21921:    1531    000 1000000

7/1996   STYLE # F01   1-800-354-3540   www.checkgallery.com    PRINTED ON RECYCLED PAPER USING VEGETABLE-BASED INKS

# EXHIBIT 9





# EXHIBIT 10

Your PMA® relationship number

## Portfolio Management® Account
Statement period: April 01, 2003 - April 30, 2003

### PMA Checking

Account number:

When you open a new account, be sure to contact your banker to link your new account to your PMA relationship.

Once your new account is linked, the balance will be used for balance qualification to avoid a service fee, and the account information can be displayed on your PMA statement.

### Activity detail

| 04/14 | State Sales Tax | | 0.58 |
| 04/14 | Wire Trans Svc Charge - Sequence:        Seq#: | | 10.00 |
| 04/14 | Trn#:        RB#: | | |
| 04/14 | WT Fedwire        Jpmorgan Chase Ban /Fer/Bnf=jaime Ekund Eney Seq# | | 120,000.00 |
| | Trn#:        B#: | | |

p.7

8486

# EXHIBIT 11

ALLAN S. OR NANETTE T. LARSON                                                    1909

DATE _6/3/03_                                                    95-219/1070

PAY
TO THE
ORDER OF _Jane Erey_                                        $ _15,000_

_Fifteen thousand and no/100_ _____ DOLLARS

WELLS FARGO BANK NEW MEXICO, N.A.
ALBUQUERQUE, NM 87102

FOR _loan_                                        _Allan S Larson_

⑆107002192⑆        ⑈1909        ⑆000150000⑆

EXHIBIT 12





# EXHIBIT 13

LIBER 10213 PAGE 235

### CHICAGO TITLE INSURANCE COMPANY

TITLE NO:  9110-02030

#### SCHEDULE A - DESCRIPTION

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Larchmont, Town of Mamaroneck, County of Westchester and State of New York, bounded and described as follows:

BEGINNING at a point on the easterly side of Kilmer Road, distant 148.26 feet north from the northerly end of a curve connecting the northerly side of Boston Post Road with the easterly side of Kilmer road, as shown by a survey of Boston Post Road as of December 31, 1932, made by Guy Vroman, C.E., filed in the Office of the Clerk of the County of Westchester, Division of Land Records, as Map No. 3430B, which point is also distant 170 feet northerly from the intersection of the former northerly side of Boston Post Road and the easterly side of Kilmer Road as shown in Liber 3297 of conveyances at page 159;

running thence North 21° 25' 00" West along the easterly side of Kilmer Road 75 feet to a point;

running thence North 68° 35' 00" East and along the dividing line between Lots 64 and 63 on a map of Pine Brook Terrace Property belonging to Larchmont Development Co., Inc., dated June 5, 1924, made by L. E. Van Etten, Engineer, filed in the Office of the Clerk of Westchester County, Division of Land Records, as Map No. 2625, 172.91 feet to land now or formerly of Cohn;

running thence South 14° 47' 00" East and along the easterly line of Lot 64 and 65 and a line in prolongation thereof 75.51 feet to a point;

running thence South 68° 35' 00" West and along the northerly line of land formerly of Schramek 164.18 feet to the easterly side of Kilmer Road at the point or place of beginning.

Page  1 of  1

DESCRIPTION

# EXHIBIT 14

# JAINE ELKIND ENEY, ESQ.
## 9 KILMER ROAD
## LARCHMONT, NEW YORK 10538
### Phone (914) 834-6661  Fax (914) 834-9184

January 16, 2003

Avv. Denise M. Guzman
Artiano, Guzman & Toomey, LLP
3828 Carson Street, Suite 102
Torrance, California 90503-6713

Dear Denise:

Enclosed is a draft of the Mortgage Note, Mortgage and Note for my loan transaction with Al. Please call me to discuss the transaction before you review all of the enclosed documents.

Cordially,

Avv. Jaine Elkind Eney

# EXHIBIT 15

In consideration of NO ADDITIONAL CHARGE we agree that the policy operations are changed as follows: **CHANGE MORTGAGEE**

Changes are Effective **MAY 2, 2003**

Attached to and forming part of Policy No.

issued by the **Amica Mutual Insurance Company**

**NAMED INSURED AND MAILING ADDRESS**
JAINE E. ENEY
9 KILMER ROAD
LARCHMONT, NY 10538

**POLICY PERIOD: 12:01 A.M.,** Standard Time at the residence premises
From: JANUARY 22, 2003
To: JANUARY 22, 2004

WESTCHESTER
County in which premises is located

The residence premises covered by this policy is located at the above address unless otherwise stated:

COVERAGES PROVIDED WHERE A PREMIUM OR LIMIT OF LIABILITY IS SHOWN FOR THE COVERAGE

| Section I Coverages | Limit of Liability |
|---|---|
| A. Dwelling | $ 240,700 |
| B. Other Structures | $ 24,070 |
| C. Personal Property | $ 180,525 |
| D. Loss of Use | $ 48,140 |
| **Section II Coverages** | |
| E. Personal Liability | $ 300,000 Each Occurrence |
| F. Medical Payments to Others | $ 1,000 Each Person |

SPECIAL DISCOUNT:
MULTI-LINE CREDIT

**DEDUCTIBLE-SECTION I:** $500# #EXCEPT 2% OF THE COVERAGE A LIMIT FOR HURRICANE ($ 4,814)

In case of a loss under Section I, we cover only that part of the loss over the deductible stated.

Special State Provisions:

**Section II - Other insured locations:**

| Mortgagee | SECOND MORTGAGEE |
|---|---|
| ALLAN S. LARSON | FIRST UNION NATIONAL BANK |
| 13603 MARINA POINTE DR., APT. D601 | ITS SUCCESSORS AND/OR ASSIGNS |
| MARINA DEL RAY, CA 90292 | SECOND MORTGAGE DIVISION |
| | 100 FIDELITY PLAZA |
| | NORTH BRUNSWICK, NJ 08905 |

This amendment shall not be valid unless countersigned by our authorized agent or representative.

*J. Michael McGilligan*

Authorized Representative

AL INSURANCE COMPANY
LINCOLN, RHODE ISLAND

## CONTINUATION OF AMENDED DECLARATIONS FOR HOMEOWNERS POLICY NO.

Page 2 of 2

**NAMED INSURED AND MAILING ADDRESS**

JAINE E. ENEY
9 KILMER ROAD
LARCHMONT, NY 10538

**Form and Endorsements made part of this policy at time of issue:**

Form : HO 00 03 04 91 SPECIAL FORM

Endorsement(s) :

```
AM 00 18 02 01 MUTUAL PROVISIONS - NON-DIVIDEND POLICY
HO 01 31 01 02 SPECIAL PROVISIONS - NEW YORK
HO 03 20 12 94 WINDSTORM PERCENTAGE DEDUCTIBLE - NEW YORK
HO 04 11 06 94 ADDITIONAL LIMITS OF LIABILITY FOR COVERAGES A, B, C, AND D
HO 04 12 09 95 INCREASED LIMITS ON BUSINESS PROPERTY
               INCREASE IN LIMIT OF LIABILITY - $2500
               TOTAL LIMIT OF LIABILITY - $5000
HO 04 16 04 91 PREMISES ALARM OR FIRE PROTECTION SYSTEM
HO 04 90 04 91 PERSONAL PROPERTY REPLACEMENT COST
HO 23 13 12 99 SPECIAL COMPUTER COVERAGE - NY
HO 23 43 12 99
               NO SECTION II - LIABILITY COVERAGES FOR HOME DAY CARE BUSINESS
               LIMITED SECTION I - PROPERTY COVERAGES FOR HOME DAY CARE BUSINESS
HO 23 85 08 94 WATER BACK UP AND SUMP OVERFLOW - NEW YORK

   TOTAL LIMIT OF LIABILITY                DEDUCTIBLE

        $    5,000                    $       500
HO 24 93 02 00 WORKERS' COMPENSATION - NEW YORK
```

# EXHIBIT 16

# AGT

ATTORNEY AT LAW

Denise M. Guzman
Extension 106
denise.guzman@agtlaw.com

May 1, 2003

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

Re:     Loan from Al Larson
        Our File No. B224.10

Dear Jaine:

As you know from our recent conversations I am in the process of formalizing a number of loans that Al has made to his family of friends in the past few years. I am sending all recipients of loans this same letter for purposes of explanation. This information may be something that you already know since you are a real estate attorney but it does contain information that is specific to your loan.

Al's records indicate that prior to any monies that Al has transferred to you this year that there were $ 100,000 in loans outstanding. I know that in one of our phone conversations that you stated that you did not think that the previous loans were that high. Can you please send me your records of the loans so I may compare to Al's ledger.

From your own conversations with Al you know that he does not want to place any pressure on you to pay back the loans. However, there are severe tax consequences to Al and Nan if payment is never made or if the intent to pay back is never established.

At minimum, Al and Nan will need you to make monthly (or yearly) interest payments on the principal borrowed. These interest amounts cannot be forgiven by gift since this is exactly the issue that we are trying to avoid classification in

Artiano, Guzman
& Toomey, LLP
3828 Carson Street
Suite 102
Torrance, CA 90503-6702
Telephone: 310.543.1240

Jaine Eney
May 1, 2003
Page 2

---

with the IRS. If interest payments are least made this will eliminate the IRS from categorizing the transactions as a gift and charging a gift tax to Al and Nan for the entire amount.

Please keep me posted on the formal written mortgage that you will amend once a final number has been reached by you and Al. Please call me if you have any questions. Again, I emphasize that Al does not want to place any undue burden on you but also wants to be protected from incurring any additional taxation.

Thank for understanding Jaine.

Talk to you soon.

Very truly yours,

Denise M. Guzman

C: Al and Nan Larson

# EXHIBIT 17



Denise M. Guzman
Extension 106
denise.guzman@agtlaw.com

<u>Via Regular Mail</u>

July 21, 2003

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

Re:    Loan from Al Larson
       Our File No. B224.13

Dear Jaine:

As you know, from our conversations this year, I am in the process of formalizing a number of loans that Al has made to his family of friends, in the past few years. I am sending all recipients, of these loans, the same letter for purposes of explanation. This information may be something that you already know, since you are a real estate attorney, but it contains information that is specific to your loan.

Al's records indicate, that prior to any monies that he has transferred to you this year, that there was a cumulative loan amount of $100,000 outstanding. I know that in one of our phone conversations you stated to me that you did not think that the previous loans were that high. Can you please send me your records of the loans so that I may compare them to Al's ledger.

You have also sent me loan documents for $80,000, in January 2003. The last time we spoke in April, you were to amend this document to reflect additional sums that Al would be lending to you.

From your own conversations with Al, you know that he does not want to place any pressure on you to pay back the loans. However, there are severe tax consequences to Al and Nan if payments are never made, or if the intent to pay back is never established.

At minimum, Al and Nan will need you to make monthly (or yearly) interest payments on the principal borrowed. These interest amounts cannot be forgiven by gifts, since this is exactly the issue that we are trying to avoid classification in with the IRS. If interest payments are at least made, this will eliminate the IRS

Artiano, Guzman
& Toomey, LLP
3828 Carson Street
Suite 102
Torrance, CA 90503-6702
Telephone: 310.543.1240
Facsimile: 310.543.9850

Jaine Eney
July 21, 2003
Page 2

from categorizing the transactions as a gift, and charging a gift tax to Al and Nan for the entire amount.

I understand, from speaking with Al, that you have named him as a beneficiary on your life insurance policy. That gesture is appreciated by Al. Naming him as a beneficiary could go to prove your intent to pay him back, however, because of your age, and presumed age of death, repayment on the loan would not be effectuated during Al's lifetime, and therefore, it could still be argued by the IRS that the transfer of funds to you was a gift from Al.

Please keep me posted on the formal written mortgage that you will amend, once a final number has been reached between you and Al. Please call me if you have any questions. Again, I emphasize that Al does not want to place any undue burden on you, but he also wants to be protected from incurring any additional taxation.

Please call me so that we may discuss the current principal amount borrowed, interest rate for the loan, and a payment schedule for interest payments.

Thank you for your understanding in this matter, Jaine.

Talk to you soon.

Very truly yours,


Denise M. Guzman

cc:    Al and Nan Larson

# EXHIBIT 18



**AG&T**
ATTORNEYS AT LAW

E.Frank Keller *
Extension 117
frank.keller@agtlaw.com

<u>**Via Federal Express**</u>

March 23, 2004

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

Re:    Loans from Al Larson
       Our File No. B224.13.2

Dear Ms. Eney:

As you know, we are attempting to update all of the loans made by Nan and Al Larson to their family or friends.

As we informed you in the past, Mr. Larson will be confronted with adverse tax consequences if payments under these loans are not made and minimum interests are not charged. Therefore, it is imperative that these loans be formalized immediately.

We have discussed the terms of the enclosed notes with Al, as he does not want to burden you, yet, desires that payments begin. From an IRS point of view, we are restricted from dropping interest charges below a certain amount without jeopardizing the re-characterizing of these monies as gifts. We took the notes that you provided us, in January of 2003, and added up the combined payments as a starting point of what you could pay. We have stayed within that amount.

Enclosed herewith please find the following documents:

- Balloon Note in the amount of $83,633.54 for a term of 7 years. This note provides for monthly interest payments only at a fix rate of 3.5% per annum;
- Promissory Note in the amount of $177,721.20 for a term of 30-years. This note provides for monthly interest and principal payments at a rate of 5.01% per annum; and
- Two Mortgages or Security Instruments, which secure both loans evidenced in the above-mentioned notes.

Artiano, Guzman
& Toomey, LLP
3828 Carson Street
Suite 102
Torrance, CA 90503-6702
Telephone: 310.543.1240
Facsimile: 310.543.9850
* Licensed in Chile only.

Jane Elkind Eney
March 13, 2004
Page 2

_____

The interest rate applied to both loans corresponds to the minimum rate that the IRS mandates for said notes. The IRS requires a rate of at least 5.01% per annum for loans exceeding 9 years and a minimum rate of 3.5% per annum for loans of 9 years or less. Transactions charging lower rates are characterized as gifts by the IRS.

The enclosed notes reflect the updated principal amounts due on both loans. We added interest to the principal amount owed from day one through December 31, 2003 using a rate of 4.45%. Interest had to be added in order to eliminate the risk of the IRS characterizing these transactions as gifts.

Both of your loans were originally for a 30-year term at an interest rate of 4.45% per annum. The $80,000 loan was structured as interest only for 30-years. The structure of this note would not be acceptable by the IRS as a valid loan. The IRS gauges the validity of a loan by comparison to commercial lending institutions. A commercial institution would not loan money for 30 years with no ongoing principal repayment built into the loan. The average loan with no ongoing principal repayment is for a period of 5 to 7 years. Therefore, we have restructured the original $80,000 loan as an interest only note for 7 years at a rate of 3.5% per annum. The monthly payments on this loan will be approximately $243.91 with a balloon payment at the end of the 7 years. This will enable us to pass the IRS' scrutiny and keep your monthly payment within the original estimated amount.

The $177,721.20 loan will remain for the original term (30 years), but in order to comply with the IRS' minimum statutory rate, we have no other alternative but to raise the interest to a fix 5.01% per annum. The payments for this loan will be $955.13 a month.

The combined monthly payment for both loans would be $1,199.06, an amount that is not much higher than the $1,152.99 amount that you had set forth in your original notes.

Please note that under the terms of the enclosed notes, your first payment will be due 30 days from the date of this letter.

Upon receipt of this correspondence please sign and notarize the mortgages and notes enclosed, and return them to this office along with a copy of the Grand Deed or other document that contains the legal description of the property.

Jane Elkind Eney
March 13, 2004
Page 3

Should you have any questions, please feel free to contact me.

Thank you for your prompt attention to this matter.

Very truly yours,

Frank Keller

Enclosures

cc:    Al Larson

Clients_120: LMN:L:Larson, Al B224:B224.13.2 Pers Inv Jaine Eney:B224.13.2 Correspondence:Eney031704Ltr.doc

# EXHIBIT 19

After Recording Return To:

_____

_____

_____

_____

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated _____, ____, together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."** Jaine Elkind Eney _____

_____, whose address is

9 Kilmer Rd.,Larchmont, NY 10538 _____ sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender."** Allan S. Larson _____ will be called "Lender." ~~Lender is a corporation or association which exists under the laws of~~ _____

Lender's address is 13603 Marina Pointe Dr., Marina Del Rey, CA 90292

**(D) "Note."** The note signed by Borrower and dated _____, will be called the "Note." The Note shows that I owe Lender One Hundred Seventy Seven Thou. Seven Hundred Twenty One Dollars (U.S. $ 177,721.20 ) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by April 1 ,2034.

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider   ☐ Condominium Rider   ☐ Second Home Rider
☐ Balloon Rider   ☐ Planned Unit Development Rider   ☐ Other(s) [specify] _____
☐ 1-4 Family Rider   ☐ Biweekly Payment Rider

**NEW YORK**--Single Family--**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**          Form 3033   1/01   *(page 1 of 19 pages)*

**(I)  "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J)  "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K)  "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)  "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M)  "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for:  (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N)  "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)  "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P)  "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B) Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C) Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A) The Property which is located at  9 Kilmer Road                                        ,
                                                                    [Street]

        Larchmont                                      , New York  10538       .
_____
        [City, Town or Village]                                                       [Zip Code]
This Property is in  Westchester              County. It has the following legal description:

(B) All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C) All rights in other property that I have as owner of the Property described in subsection (A) of this section.  These rights are known as "easements and appurtenances attached to the Property;"

(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E) All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F) All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G) All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 3 of 19 pages)*

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

**COVENANTS**

I promise and I agree with Lender as follows:

**1. Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; and

~~Next, to pay the amounts due Lender under Section 3 of this Security Instrument.~~

Such payments will be applied to each Periodic Payment in the order in which it became due. Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

(1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

(2) The leasehold payments or ground rents on the Property (if any);

(3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

(4) The premium for Mortgage Insurance (if any);

(5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

(6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

NEW YORK—Single Family—Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3033   1/01   *(page 5 of 19 pages)*

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) Lender's Obligations. Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give to me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow

Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds**. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during

the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not

economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

7. **Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

(a) **Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

(b) **Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3033   1/01   *(page 12 of 19 pages)*

damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

(a) **Borrower's Obligations**. Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

(b) **Lender's Rights**. Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3033   1/01   *(page 13 of 19 pages)*

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 14 of 19 pages)*

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b) I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d) I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 15 of 19 pages)*

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer

products).   I may use or store these small quantities on the Property.   In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements.  Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment.  This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold.  At this sale Lender or another Person may acquire the Property.  This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

**(a)   I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

**(b)   Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

**(1)  The promise or agreement that I failed to keep or the default that has occurred;**
**(2)  The action that I must take to correct that default;**
**(3)  A date by which I must correct the default.  That date will be at least 30 days from the date on which the notice is given;**

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 17 of 19 pages)*

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**
☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 19 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____(Seal)
                                           Jaine Elkind Eney        -Borrower


_____          _____(Seal)
                                                                    -Borrower

_____ [Space Below This Line For Acknowledgment] _____

# EXHIBIT 20

After Recording Return To:

_____
_____
_____
_____

_____ [Space Above This Line For Recording Data] _____

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT

**(A) "Security Instrument."** This document, which is dated _____, ____, together with all Riders to this document, will be called the "Security Instrument."

**(B) "Borrower."** __Jaine Elkind Eney_____

_____, whose address is __9 Kilmer Rd., Larchmont, NY 10538_____ sometimes will be called "Borrower" and sometimes simply "I" or "me."

**(C) "Lender."** __Allan S. Larson_____ will be called "Lender." ~~Lender is a corporation or association which exists under the laws of~~_____. Lender's address is 13603 Marina Pointe Dr., Marina Del Rey, CA 90292

**(D) "Note."** The note signed by Borrower and dated _____, will be called the "Note." The Note shows that I owe Lender Eighty Three Thousand Six Hundred and Thirty Three 52/100 Dollars (U.S. $ _83,633.52____) plus interest and other amounts that may be payable. I have promised to pay this debt in Periodic Payments and to pay the debt in full by _April 1___, 2011.

**(E) "Property."** The property that is described below in the section titled "Description of the Property," will be called the "Property."

**(F) "Loan."** The "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

**(G) "Sums Secured."** The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in the Property" sometimes will be called the "Sums Secured."

**(H) "Riders."** All Riders attached to this Security Instrument that are signed by Borrower will be called "Riders." The following Riders are to be signed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider         ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider    ☐ Other(s) [specify] _____
☐ 1-4 Family Rider         ☐ Biweekly Payment Rider

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3033   1/01   *(page 1 of 19 pages)*

**(I)  "Applicable Law."** All controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable, judicial opinions will be called "Applicable Law."

**(J)  "Community Association Dues, Fees, and Assessments."** All dues, fees, assessments, and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization will be called "Community Association Dues, Fees, and Assessments."

**(K)  "Electronic Funds Transfer."** "Electronic Funds Transfer" means any transfer of money, other than by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Some common examples of an Electronic Funds Transfer are point-of-sale transfers (where a card such as an asset or debit card is used at a merchant), automated teller machine (or ATM) transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

**(L)  "Escrow Items."** Those items that are described in Section 3 will be called "Escrow Items."

**(M)  "Miscellaneous Proceeds."** "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than Insurance Proceeds, as defined in, and paid under the coverage described in, Section 5) for: (i) damage to, or destruction of, the Property; (ii) Condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of Condemnation or sale to avoid Condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property. A taking of the Property by any governmental authority by eminent domain is known as "Condemnation."

**(N)  "Mortgage Insurance."** "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

**(O)  "Periodic Payment."** The regularly scheduled amount due for (i) principal and interest under the Note, and (ii) any amounts under Section 3 will be called "Periodic Payment."

**(P)  "RESPA."** "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY

I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument and also those rights that Applicable Law gives to lenders who hold mortgages on real property. I am giving Lender these rights to protect Lender from possible losses that might result if I fail to:

(A) Pay all the amounts that I owe Lender as stated in the Note including, but not limited to, all renewals, extensions and modifications of the Note;

(B)  Pay, with interest, any amounts that Lender spends under this Security Instrument to protect the value of the Property and Lender's rights in the Property; and

(C)  Keep all of my other promises and agreements under this Security Instrument and the Note.

## DESCRIPTION OF THE PROPERTY

I give Lender rights in the Property described in (A) through (G) below:

(A)  The Property which is located at 9 Kilmer Road
_____ ,
                                                        [Street]

_____ Larchmont _____ , New York ____10538____ .
              [City, Town or Village]                            [Zip Code]
This Property is in ___Westchester_____ County. It has the following legal description:

(B)  All buildings and other improvements that are located on the Property described in subsection (A) of this section;

(C)  All rights in other property that I have as owner of the Property described in subsection (A) of this section.  These rights are known as "easements and appurtenances attached to the Property;"

(D)  All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subsection (A) of this section;

(E)  All fixtures that are now or in the future will be on the Property described in subsections (A) and (B) of this section;

(F)  All of the rights and property described in subsections (B) through (E) of this section that I acquire in the future; and

(G)  All replacements of or additions to the Property described in subsections (B) through (F) of this section and all Insurance Proceeds for loss or damage to, and all Miscellaneous Proceeds of the Property described in subsections (A) through (F) of this section.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 3 of 19 pages)*

## BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and (C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## PLAIN LANGUAGE SECURITY INSTRUMENT

This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary in different parts of the country. My promises and agreements are stated in "plain language."

## COVENANTS

I promise and I agree with Lender as follows:

   1. **Borrower's Promise to Pay.** I will pay to Lender on time principal and interest due under the Note and any prepayment, late charges and other amounts due under the Note. I will also pay all amounts for Escrow Items under Section 3 of this Security Instrument.

Payments due under the Note and this Security Instrument shall be made in U.S. currency. If any of my payments by check or other payment instrument is returned to Lender unpaid, Lender may require my payment be made by: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location required in the Note, or at another location designated by Lender under Section 15 of this Security Instrument. Lender may return or accept any payment or partial payment if it is for an amount that is less than the amount that is then due. If Lender accepts a lesser payment, Lender may refuse to accept a lesser payment that I may make in the future and does not waive any of its rights. Lender is not obligated to apply such lesser payments when it accepts such payments. If interest on principal accrues as if all Periodic Payments had been paid when due, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until I make payments to bring the Loan current. If I do not do so within a reasonable period of time, Lender will either apply such funds or return them to me. In the event of foreclosure, any unapplied funds will be applied to the outstanding principal balance immediately prior to foreclosure. No offset or claim which I might have now or in the future against Lender will relieve me from making payments due under the Note and this Security Instrument or keeping all of my other promises and agreements secured by this Security Instrument.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 4 of 19 pages)*

**2. Application of Borrower's Payments and Insurance Proceeds.** Unless Applicable Law or this Section 2 requires otherwise, Lender will apply each of my payments that Lender accepts in the following order:

First, to pay interest due under the Note;

Next, to pay principal due under the Note; ~~and~~

~~Next, to pay the amounts due Lender under Section 3 of this Security Instrument.~~

Such payments will be applied to each Periodic Payment in the order in which it became due. Any remaining amounts will be applied as follows:

First, to pay any late charges;

Next, to pay any other amounts due under this Security Instrument; and

Next, to reduce the principal balance of the Note.

If Lender receives a payment from me for a late Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the late Periodic Payment and the late charge. If more than one Periodic Payment is due, Lender may apply any payment received from me: First, to the repayment of the Periodic Payments that are due if, and to the extent that, each payment can be paid in full; Next, to the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.

Voluntary prepayments will be applied as follows: First, to any prepayment charges; and Next, as described in the Note.

Any application of payments, Insurance Proceeds, or Miscellaneous Proceeds to principal due under the Note will not extend or postpone the due date of the Periodic Payments or change the amount of those payments.

**3. Monthly Payments For Taxes And Insurance.**

**(a) Borrower's Obligations.** I will pay to Lender all amounts necessary to pay for taxes, assessments, water charges, sewer rents and other similar charges, ground leasehold payments or rents (if any), hazard or property insurance covering the Property, flood insurance (if any), and any required Mortgage Insurance, or a Loss Reserve as described in Section 10 in the place of Mortgage Insurance. Each Periodic Payment will include an amount to be applied toward payment of the following items which are called "Escrow Items:"

    (1) The taxes, assessments, water charges, sewer rents and other similar charges, on the Property which under Applicable Law may be superior to this Security Instrument as a Lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "Lien;"

    (2) The leasehold payments or ground rents on the Property (if any);

    (3) The premium for any and all insurance required by Lender under Section 5 of this Security Instrument;

    (4) The premium for Mortgage Insurance (if any);

    (5) The amount I may be required to pay Lender under Section 10 of this Security Instrument instead of the payment of the premium for Mortgage Insurance (if any); and

    (6) If required by Lender, the amount for any Community Association Dues, Fees, and Assessments.

After signing the Note, or at any time during its term, Lender may include these amounts as Escrow Items. The monthly payment I will make for Escrow Items will be based on Lender's estimate of the annual amount required.

I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless Applicable Law requires otherwise. I will make these payments on the same day that my Periodic Payments of principal and interest are due under the Note.

The amounts that I pay to Lender for Escrow Items under this Section 3 will be called "Escrow Funds." I will pay Lender the Escrow Funds for Escrow Items unless Lender waives my obligation to pay the Escrow Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Escrow Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, I will pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Escrow Funds has been waived by Lender and, if Lender requires, will promptly send to Lender receipts showing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts will be considered to be a promise and agreement contained in this Security Instrument, as the phrase "promises and agreements" is used in Section 9 of this Security Instrument. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may pay that amount and I will then be obligated under Section 9 of this Security Instrument to repay to Lender. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 of this Security Instrument and, upon the revocation, I will pay to Lender all Escrow Funds, and in amounts, that are then required under this Section 3.

I promise to promptly send to Lender any notices that I receive of Escrow Item amounts to be paid. Lender will estimate from time to time the amount of Escrow Funds I will have to pay by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless Applicable Law requires Lender to use another method for determining the amount I am to pay.

Lender may, at any time, collect and hold Escrow Funds in an amount sufficient to permit Lender to apply the Escrow Funds at the time specified under RESPA. Applicable Law puts limits on the total amount of Escrow Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender could require under RESPA. If there is another Applicable Law that imposes a lower limit on the total amount of Escrow Funds Lender can collect and hold, Lender will be limited to the lower amount.

(b) **Lender's Obligations.** Lender will keep the Escrow Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank. If Lender is such a savings or banking institution, Lender may hold the Escrow Funds. Lender will use the Escrow Funds to pay the Escrow Items no later than the time allowed under RESPA or other Applicable Law. Lender will give me, without charge, an annual accounting of the Escrow Funds. That accounting will show all additions to and deductions from the Escrow Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Escrow Funds, for using the Escrow Funds to pay Escrow Items, for making a yearly analysis of my payment of Escrow Funds or for receiving, or for verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Escrow Funds and if Applicable Law permits Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Escrow

Funds unless either (1) Lender and I agree in writing that Lender will pay interest on the Escrow Funds, or (2) Applicable Law requires Lender to pay interest on the Escrow Funds.

(c) **Adjustments to the Escrow Funds**. Under Applicable Law, there is a limit on the amount of Escrow Funds Lender may hold. If the amount of Escrow Funds held by Lender exceeds this limit, then there will be an excess amount and RESPA requires Lender to account to me in a special manner for the excess amount of Escrow Funds.

If, at any time, Lender has not received enough Escrow Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items when the payments are due, but the number of payments will not be more than 12.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Escrow Funds that are then being held by Lender.

**4. Borrower's Obligation to Pay Charges, Assessments And Claims.** I will pay all taxes, assessments, water charges, sewer rents and other similar charges, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make ground rents or payments due under my lease if I am a tenant on the Property and Community Association Dues, Fees, and Assessments (if any) due on the Property. If these items are Escrow Items, I will do this by making the payments as described in Section 3 of this Security Instrument. In this Security Instrument, the word "Person" means any individual, organization, governmental authority or other party.

I will promptly pay or satisfy all Liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior Lien if: (a) I agree, in writing, to pay the obligation which gave rise to the superior Lien and Lender approves the way in which I agree to pay that obligation, but only so long as I am performing such agreement; (b) in good faith, I argue or defend against the superior Lien in a lawsuit so that in Lender's opinion, during the lawsuit, the superior Lien may not be enforced, but only until the lawsuit ends; or (c) I secure from the holder of that other Lien an agreement, approved in writing by Lender, that the Lien of this Security Instrument is superior to the Lien held by that Person. If Lender determines that any part of the Property is subject to a superior Lien, Lender may give Borrower a notice identifying the superior Lien. Within 10 days of the date on which the notice is given, Borrower shall pay or satisfy the superior Lien or take one or more of the actions mentioned in this Section 4.

Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with the Loan, unless Applicable Law does not permit Lender to make such a charge.

**5. Borrower's Obligation to Maintain Hazard Insurance or Property Insurance.** I will obtain hazard or property insurance to cover all buildings and other improvements that now are, or in the future will be, located on the Property. The insurance will cover loss or damage caused by fire, hazards normally covered by "Extended Coverage" hazard insurance policies, and any other hazards for which Lender requires coverage, including, but not limited to earthquakes and floods. The insurance will be in the amounts (including, but not limited to, deductible levels) and for the periods of time required by Lender. What Lender requires under the last sentence can change during

the term of the Loan. I may choose the insurance company, but my choice is subject to Lender's right to disapprove. Lender may not disapprove my choice unless the disapproval is reasonable. Lender may require me to pay either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect the flood zone determination or certification. If I disagree with the flood zone determination, I may request the Federal Emergency Management Agency to review the flood zone determination and I promise to pay any fees charged by the Federal Emergency Management Agency for its review.

If I fail to maintain any of the insurance coverages described above, Lender may obtain insurance coverage, at Lender's option and my expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage will cover Lender, but might or might not protect me, my equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. I acknowledge that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that I could have obtained. Any amounts disbursed by Lender under this Section 5 will become my additional debt secured by this Security Instrument. These amounts will bear interest at the interest rate set forth in the Note from the date of disbursement and will be payable with such interest, upon notice from Lender to me requesting payment.

All of the insurance policies and renewals of those policies will include what is known as a "Standard Mortgage Clause" to protect Lender and will name Lender as mortgagee and/or as an additional loss payee. The form of all policies and renewals will be acceptable to Lender. Lender will have the right to hold the policies and renewal certificates. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If I obtain any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy will include a Standard Mortgage Clause and will name Lender as mortgagee and/or as an additional loss payee.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company for loss or damage to the Property is called "Insurance Proceeds." Unless Lender and I otherwise agree in writing, any Insurance Proceeds, whether or not the underlying insurance was required by Lender, will be used to repair or to restore the damaged Property unless: (a) it is not economically feasible to make the repairs or restoration; (b) the use of the Insurance Proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (c) Lender and I have agreed in writing not to use the Insurance Proceeds for that purpose. During the period that any repairs or restorations are being made, Lender may hold any Insurance Proceeds until it has had an opportunity to inspect the Property to verify that the repair work has been completed to Lender's satisfaction. However, this inspection will be done promptly. Lender may make payments for the repairs and restorations in a single payment or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires otherwise, Lender is not required to pay me any interest or earnings on the Insurance Proceeds. I will pay for any public adjusters or other third parties that I hire, and their fees will not be paid out of the Insurance Proceeds. If the repair or restoration is not

NEW YORK–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 8 of 19 pages)*

economically feasible or if it would lessen Lender's protection under this Security Instrument, then the Insurance Proceeds will be used to reduce the amount that I owe to Lender under this Security Instrument. Such Insurance Proceeds will be applied in the order provided for in Section 2. If any of the Insurance Proceeds remain after the amount that I owe to Lender has been paid in full, the remaining Insurance Proceeds will be paid to me.

If I abandon the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 of this Security Instrument or otherwise, I give Lender my rights to any Insurance Proceeds in an amount not greater than the amounts unpaid under the Note and this Security Instrument. I also give Lender any other of my rights (other than the right to any refund of unearned premiums that I paid) under all insurance policies covering the Property, if the rights are applicable to the coverage of the Property. Lender may use the Insurance Proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Borrower's Obligations to Occupy The Property.** I will occupy the Property and use the Property as my principal residence within 60 days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**7. Borrower's Obligations to Maintain And Protect The Property And to Fulfill Any Lease Obligations.**

**(a) Maintenance and Protection of the Property.** I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate. Whether or not I am residing in the Property, I will keep the Property in good repair so that it will not deteriorate or decrease in value due to its condition. Unless it is determined under Section 5 of this Security Instrument that repair is not economically feasible, I will promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or Condemnation (as defined in the definition of Miscellaneous Proceeds) proceeds are paid because of loss or damage to, or Condemnation of, the Property, I will repair or restore the Property only if Lender has released those proceeds for such purposes. Lender may pay for the repairs and restoration out of proceeds in a single payment or in a series of progress payments as the work is completed. If the insurance or Condemnation proceeds are not sufficient to repair or restore the Property, I promise to pay for the completion of such repair or restoration.

**(b) Lender's Inspection of Property.** Lender, and others authorized by Lender, may enter on and inspect the Property. They will do so in a reasonable manner and at reasonable times. If it has a reasonable purpose, Lender may inspect the inside of the home or other improvements on the Property. Before or at the time an inspection is made, Lender will give me notice stating a reasonable purpose for such interior inspection.

**8. Borrower's Loan Application.** If, during the application process for the Loan, I, or any Person or entity acting at my direction or with my knowledge or consent, made false, misleading, or inaccurate statements to Lender about information important to Lender in determining my eligibility for the Loan (or did not provide Lender with such information), Lender will treat my actions as a default under this Security Instrument. False, misleading, or inaccurate statements about information important to Lender would include a misrepresentation of my intention to occupy the Property as a principal residence. This is just one example of a false, misleading, or inaccurate statement of important information.

**9. Lender's Right to Protect Its Rights in The Property.** If: (a) I do not keep my promises and agreements made in this Security Instrument; (b) someone, including me, begins a legal proceeding that may significantly affect Lender's interest in the Property or rights under this Security Instrument (such as a legal proceeding in bankruptcy, in probate, for Condemnation or Forfeiture (as defined in Section 11), proceedings which could give a Person rights which could equal or exceed Lender's interest in the Property or under this Security Instrument, proceedings for enforcement of a Lien which may become superior to this Security Instrument, or to enforce laws or regulations); or (c) I have abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and Lender's rights under this Security Instrument.

Lender's actions may include, but are not limited to: (a) protecting and/or assessing the value of the Property; (b) securing and/or repairing the Property; (c) paying sums to eliminate any Lien against the Property that may be equal or superior to this Security Instrument; (d) appearing in court; and (e) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Lender can also enter the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, have utilities turned on or off, and take any other action to secure the Property. Although Lender may take action under this Section 9, Lender does not have to do so and is under no duty to do so. I agree that Lender will not be liable for not taking any or all actions under this Section 9.

I will pay to Lender any amounts, with interest, which Lender spends under this Section 9. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will pay interest on those amounts at the interest rate set forth in the Note. Interest on each amount will begin on the date that the amount is spent by Lender. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

If I do not own, but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the full title (sometimes called "Fee Title") to the Property, my lease interest and the Fee Title will not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, I will pay the premiums for the Mortgage Insurance. If, for any reason, the Mortgage Insurance coverage ceases to be available from the mortgage insurer that previously provided such insurance and Lender required me to make separate payments toward the premiums for Mortgage Insurance, I will pay the premiums for substantially equivalent Mortgage Insurance coverage from an alternate mortgage insurer. However, the cost of this Mortgage Insurance coverage will be substantially equivalent to the cost to me of the previous Mortgage Insurance coverage, and the alternate mortgage insurer will be selected by Lender.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 10 of 19 pages)*

If substantially equivalent Mortgage Insurance coverage is not available, Lender will establish a non-refundable "Loss Reserve" as a substitute for the Mortgage Insurance coverage. I will continue to pay to Lender each month an amount equal to one-twelfth of the yearly Mortgage Insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the Mortgage Insurance would have covered. The Loss Reserve is non-refundable even if the Loan is ultimately paid in full and Lender is not required to pay me any interest on the Loss Reserve. Lender can no longer require Loss Reserve payments if: (a) Mortgage Insurance coverage again becomes available through an insurer selected by Lender; (b) such Mortgage Insurance is obtained; (c) Lender requires separately designated payments toward the premiums for Mortgage Insurance; and (d) the Mortgage Insurance coverage is in the amount and for the period of time required by Lender.

If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separate payments toward the premiums for Mortgage Insurance, I will pay the Mortgage Insurance premiums, or the Loss Reserve payments, until the requirement for Mortgage Insurance ends according to any written agreement between Lender and me providing for such termination or until termination of Mortgage Insurance is required by Applicable Law. Lender may require me to pay the premiums, or the Loss Reserve payments, in the manner described in Section 3 of this Security Instrument. Nothing in this Section 10 will affect my obligation to pay interest at the rate provided in the Note.

A Mortgage Insurance policy pays Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance policy.

Mortgage insurers assess their total risk on all Mortgage Insurance from time to time. Mortgage insurers may enter into agreements with other parties to share or change their risk, or to reduce losses. These agreements are based on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include Mortgage Insurance premiums).

As a result of these agreements, Lender, any owner of the Note, another insurer, any reinsurer, any other entity may receive (directly or indirectly) amounts that come from a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or changing the mortgage insurer's risk, or reducing losses. If these agreements provide that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."

It also should be understood that: (a) any of these agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. These agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund; and (b) any of these agreements will not affect the rights Borrower has – if any – regarding the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right (a) to receive certain disclosures, (b) to request and obtain cancellation of the Mortgage Insurance, (c) to have the Mortgage Insurance terminated automatically, and/or (d) to receive a refund of any Mortgage Insurance premiums that were not earned at the time of such cancellation or termination.

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033   1/01   *(page 11 of 19 pages)*

**11. Agreements About Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are assigned to and will be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds will be applied to restoration or repair of the Property, if (a) the restoration or repair is economically feasible, and (b) Lender's security given in this Security Instrument is not lessened. During such repair and restoration period, Lender will have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect the Property to verify that the work has been completed to Lender's satisfaction. However, the inspection will be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless Lender and I agree otherwise in writing or unless Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender will not be required to pay Borrower any interest or earnings on the Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security given in this Security Instrument would be lessened, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me. Such Miscellaneous Proceeds will be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds will be applied to the Sums Secured, whether or not then due. The excess, if any, will be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Sums Secured will be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the Sums Secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to me.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the Sums Secured immediately before the partial taking, destruction, or loss in value, the Miscellaneous Proceeds will be applied to the Sums Secured whether or not the sums are then due.

If I abandon the Property, or if, after Lender sends me notice that the Opposing Party (as defined in the next sentence) offered to make an award to settle a claim for damages, I fail to respond to Lender within 30 days after the date Lender gives notice, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the Sums Secured, whether or not then due. "Opposing Party" means the third party that owes me Miscellaneous Proceeds or the party against whom I have a right of action in regard to Miscellaneous Proceeds.

I will be in default under this Security Instrument if any civil or criminal action or proceeding that Lender determines could result in a court ruling (a) that would require Forfeiture of the Property, or (b) that could damage Lender's interest in the Property or rights under this Security Instrument. "Forfeiture" is a court action to require the Property, or any part of the Property, to be given up. I may correct the default by obtaining a court ruling that dismisses the court action, if Lender determines that this court ruling prevents Forfeiture of the Property and also prevents any

damage to Lender's interest in the Property or rights under this Security Instrument. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Section 19 of this Security Instrument, even if Lender has required Immediate Payment in Full (as defined in Section 22). The proceeds of any award or claim for damages that are attributable to the damage or reduction of Lender's interest in the Property are assigned, and will be paid, to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property will be applied in the order provided for in Section 2.

**12. Continuation of Borrower's Obligations And of Lender's Rights.**

**(a) Borrower's Obligations.** Lender may allow me, or a Person who takes over my rights and obligations, to delay or to change the amount of the Periodic Payments. Even if Lender does this, however, I will still be fully obligated under the Note and under this Security Instrument unless Lender agrees to release me, in writing, from my obligations.

Lender may allow those delays or changes for me or a Person who takes over my rights and obligations, even if Lender is requested not to do so. Even if Lender is requested to do so, Lender will not be required to (1) bring a lawsuit against me or such a Person for not fulfilling obligations under the Note or under this Security Instrument, or (2) refuse to extend time for payment or otherwise modify amortization of the Sums Secured.

**(b) Lender's Rights.** Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under Applicable Law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if: (1) Lender obtains insurance, pays taxes, or pays other claims, charges or Liens against the Property; (2) Lender accepts payments from third Persons; or (3) Lender accepts payments in amounts less than the amount then due, Lender will have the right under Section 22 below to demand that I make Immediate Payment in Full of any amounts remaining due and payable to Lender under the Note and under this Security Instrument.

**13. Obligations of Borrower And of Persons Taking Over Borrower's Rights or Obligations.** If more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (a) that Person is signing this Security Instrument only to give that Person's rights in the Property to Lender under the terms of this Security Instrument; (b) that Person is not personally obligated to pay the Sums Secured; and (c) that Person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights, to modify, or make any accommodations with regard to the terms of this Security Instrument or the Note without that Person's consent.

Subject to the provisions of Section 18 of this Security Instrument, any Person who takes over my rights or obligations under this Security Instrument in writing, and is approved by Lender in writing, will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Borrower will not be released from Borrower's obligations and liabilities under this Security Instrument unless Lender agrees to such release in writing. Any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's promises and agreements made in this Security Instrument except as provided under Section 20.

**14. Loan Charges.** Lender may charge me fees for services performed in connection with my default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. With regard to other fees, the fact that this Security Instrument does not expressly indicate that Lender may charge a certain fee does not mean that Lender cannot charge that fee. Lender may not charge fees that are prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to Applicable Law which sets maximum loan charges, and that Applicable Law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed permitted limits: (a) any such loan charge will be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (even if a prepayment charge is provided for under the Note). If I accept such a refund that is paid directly to me, I will waive any right to bring a lawsuit against Lender because of the overcharge.

**15. Notices Required under this Security Instrument.** All notices given by me or Lender in connection with this Security Instrument will be in writing. Any notice to me in connection with this Security Instrument is considered given to me when mailed by first class mail or when actually delivered to my notice address if sent by other means. Notice to any one Borrower will be notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address is the address of the Property unless I give notice to Lender of a different address. I will promptly notify Lender of my change of address. If Lender specifies a procedure for reporting my change of address, then I will only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender will be given by delivering it or by mailing it by first class mail to Lender's address stated on the first page of this Security Instrument unless Lender has given me notice of another address. Any notice in connection with this Security Instrument is given to Lender when it is actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Law That Governs this Security Instrument; Word Usage.** This Security Instrument is governed by federal law and the law of New York State. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might allow the parties to agree by contract or it might be silent, but such silence does not mean that Lender and I cannot agree by contract. If any term of this Security Instrument or of the Note conflicts with Applicable Law, the conflict will not affect other provisions of this Security Instrument or the Note which can operate, or be given effect, without the conflicting provision. This means that the Security Instrument or the Note will remain as if the conflicting provision did not exist.

As used in this Security Instrument: (a) words of the masculine gender mean and include corresponding words of the feminine and neuter genders; (b) words in the singular mean and include the plural, and words in the plural mean and include the singular; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** I will be given one copy of the Note and of this Security Instrument.

**18. Agreements about Lender's Rights If the Property Is Sold or Transferred.** Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**19. Borrower's Right to Have Lender's Enforcement of this Security Instrument Discontinued.** Even if Lender has required Immediate Payment in Full, I may have the right to have enforcement of this Security Instrument stopped. I will have this right at any time before the earliest of: (a) five days before sale of the Property under any power of sale granted by this Security Instrument; (b) another period as Applicable Law might specify for the termination of my right to have enforcement of the Loan stopped; or (c) a judgment has been entered enforcing this Security Instrument. In order to have this right, I will meet the following conditions:

(a)   I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if Immediate Payment in Full had never been required;

(b)   I correct my failure to keep any of my other promises or agreements made in this Security Instrument;

(c)   I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and

(d)   I do whatever Lender reasonably requires to assure that Lender's interest in the Property and rights under this Security Instrument and my obligations under the Note and under this Security Instrument continue unchanged.

Lender may require that I pay the sums and expenses mentioned in (a) through (d) in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.

If I fulfill all of the conditions in this Section 19, then this Security Instrument will remain in full effect as if Immediate Payment in Full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required Immediate Payment in Full under Section 18 of this Security Instrument.

**20. Note Holder's Right to Sell the Note or an Interest in the Note; Borrower's Right to Notice of Change of Loan Servicer; Lender's and Borrower's Right to Notice of Grievance.** The Note, or an interest in the Note, together with this Security Instrument, may be sold one or more times. I might not receive any prior notice of these sales.

The entity that collects the Periodic Payments and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. Applicable Law requires that I be given written notice of any change of the Loan Servicer. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by RESPA or Applicable Law. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to me will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither I nor Lender may commence, join or be joined to any court action (as either an individual party or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other has not fulfilled any of its obligations under this Security Instrument, unless the other is notified (in the manner required under Section 15 of this Security Instrument) of the unfulfilled obligation and given a reasonable time period to take corrective action. If Applicable Law provides a time period which will elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to me under Section 22 and the notice of the demand for payment in full given to me under Section 22 will be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20. All rights under this paragraph are subject to Applicable Law.

**21. Continuation of Borrower's Obligations to Maintain and Protect the Property.** The federal laws and the laws of New York State that relate to health, safety or environmental protection are called "Environmental Law." Environmental Law classifies certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Section 21. These substances are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Law and the substances considered hazardous for purposes of this Section 21 are called "Hazardous Substances." "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law. An "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

I will not do anything affecting the Property that violates Environmental Law, and I will not allow anyone else to do so. I will not cause or permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property. I also will not dispose of Hazardous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. I also will not do, nor allow anyone else to do, anything affecting the Property that: (a) is in violation of any Environmental Law; (b) creates an Environmental Condition; or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The promises in this paragraph do not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property (including, but not limited to, Hazardous Substances in consumer

NEW YORK--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3033  1/01   *(page 16 of 19 pages)*

products). I may use or store these small quantities on the Property. In addition, unless Environmental Law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

I will promptly give Lender written notice of: (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which I have actual knowledge; (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance; and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If I learn, or any governmental or regulatory authority, or any private party, notifies me that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, I will promptly take all necessary remedial actions in accordance with Environmental Law.

Nothing in this Security Instrument creates an obligation on Lender for an Environmental Cleanup.

## NON-UNIFORM COVENANTS

I also promise and agree with Lender as follows:

**22. Lender's Rights If Borrower Fails to Keep Promises and Agreements. Except as provided in Section 18 of this Security Instrument, if all of the conditions stated in subsections (a), (b) and (c) of this Section 22 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "Immediate Payment in Full."**

**If Lender requires Immediate Payment in Full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another Person may acquire the Property. This is known as "Foreclosure and Sale." In any lawsuit for Foreclosure and Sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by Applicable Law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.**

**Lender may require Immediate Payment in Full under this Section 22 only if all of the following conditions are met:**

**(a) I fail to keep any promise or agreement made in this Security Instrument or the Note, including, but not limited to, the promises to pay the Sums Secured when due, or if another default occurs under this Security Instrument;**

**(b) Lender sends to me, in the manner described in Section 15 of this Security Instrument, a notice that states:**

**(1) The promise or agreement that I failed to keep or the default that has occurred;**

**(2) The action that I must take to correct that default;**

**(3) A date by which I must correct the default. That date will be at least 30 days from the date on which the notice is given;**

(4) That if I do not correct the default by the date stated in the notice, Lender may require Immediate Payment in Full, and Lender or another Person may acquire the Property by means of Foreclosure and Sale;

(5) That if I meet the conditions stated in Section 19 of this Security Instrument, I will have the right to have Lender's enforcement of this Security Instrument stopped and to have the Note and this Security Instrument remain fully effective as if Immediate Payment in Full had never been required; and

(6) That I have the right in any lawsuit for Foreclosure and Sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have; and

(c) I do not correct the default stated in the notice from Lender by the date stated in that notice.

**23. Lender's Obligation to Discharge this Security Instrument.** When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will pay all costs of recording the discharge in the proper official records. I agree to pay a fee for the discharge of this Security Instrument, if Lender so requires. Lender may require that I pay such a fee, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by Applicable Law.

**24. Agreements about New York Lien Law.** I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 of the New York Lien Law. This means that I will: (a) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a trust fund; and (b) use those amounts to pay for "Cost of Improvement" (as defined in Section 13 of the New York Lien Law) before I use them for any other purpose. The fact that I am holding those amounts as a trust fund means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Section 24.

**25. Borrower's Statement Regarding the Property [check box as applicable].**
☐ This Security Instrument covers real property improved, or to be improved, by a one or two family dwelling only.
☐ This Security Instrument covers real property principally improved, or to be improved, by one or more structures containing, in the aggregate, not more than six residential dwelling units with each dwelling unit having its own separate cooking facilities.
☐ This Security Instrument does not cover real property improved as described above.

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 19 of this Security Instrument and in any Rider signed by me and recorded with it.

Witnesses:

_____          _____(Seal)
                                           Jaine Elkind Eney          -Borrower


_____          _____(Seal)
                                                                      -Borrower

_____ [Space Below This Line For Acknowledgment] _____

# EXHIBIT 21

# NOTE

_____, ____                    <u>Larchmont</u>___, <u>New York</u>
[Date]                                            [City]        [State]

<u>9 Kilmer Road, Larchmont, New York</u>_____
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ <u>177,721.20</u> (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is <u>Allan S. Larson</u>_____.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of <u>5.01</u>%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

**(A)   Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the <u>1st</u> day of each month beginning on <u>April 1</u>, 20<u>04</u> I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on <u>April 1</u>, 20<u>34</u> I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date." <u>Marina Del Rey,</u>

I will make my monthly payments at <u>13603 Marina Pointe Dr.,CA, 90292</u>_____ or at a different place if required by the Note Holder.

**(B)   Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ <u>955.13</u>_____.

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)   Late Charge for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of __<u>15</u>__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be <u>3</u> % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)   Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

NEW YORK FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3233    1/01 *(page 1 of 3 pages)*

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.    WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require immediate payment in full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires immediate payment in full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
Jaine Elkind Eney                    -Borrower

_____(Seal)
                                     -Borrower

_____(Seal)
                                     -Borrower

*[Sign Original Only]*

# EXHIBIT 22

# NEW YORK BALLOON NOTE
### (Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU WILL PROBABLY BE CHARGED INTEREST AT MARKET RATES PREVAILING AT THAT TIME AND SUCH RATES MAY BE HIGHER THAN THE INTEREST RATE PAID ON THIS LOAN. YOU MAY ALSO HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW MORTGAGE LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

_____, _____  Larchmont           New York
                         [City]              [State]

9 Kilmer Road, Larchmont, New York
_____
[Property Address]

**1.    BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $ 83,633.52 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is Allan S. Larson                . I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 3.5 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3.    PAYMENTS**

(A)    **Time and Place of Payments**

I will pay ~~principal and~~ interest by making a payment every month.

I will make my monthly payments on the 1st day of each month beginning on April 1, 2004 _____. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on April 1 _____, 2011 still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

Marina Del Rey
I will make my monthly payments at 13603 Marina Pointe Dr.,CA 90292 or at a different place if required by the Note Holder.

NEW YORK BALLOON FIXED RATE NOTE—Single Family—Fannie Mae Uniform Instrument          Form 3260.33  1/01 (rev. 5/02)
(Page 1 of 4)

**(B)    Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ __243.93__ .

**4.    BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of this Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of __15__ calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be __3__ % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B)    Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)    No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

9.    **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.   **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Lender may require Immediate Payment in Full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. If Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission, Lender also may require Immediate Payment in Full. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender requires Immediate Payment in Full under this Section 18, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is given to me in the manner required by Section 15 of this Security Instrument. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

.................................................................... (Seal)
    Jaine Elkind Eney      -Borrower

.................................................................... (Seal)
                              -Borrower

.................................................................... (Seal)
                              -Borrower

*[Sign Original Only]*

EXHIBIT 23



## ATTORNEYS AT LAW

E.Frank Keller *
Extension 117
frank.keller@agtlaw.com

<u>Via Facsimile & Regular Mail</u>
(914) 834-9184

August 17, 2004

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

Re:    Loans from Al Larson
       Our File No. B224.13.2

Dear Ms. Eney:

This letter serves as a follow up to our previous telephone conversations, in which we discussed the issues related to this matter.

In our last telephone conversation, I stated to you that our office met with Mr. Larson regarding this matter and that he was informed of all communications with you, including your statement to us indicating that you would not execute the notes forwarded by us for the following reasons:

- You were being charged a higher interest rate than what you had agreed to with Mr. Larson on the $177,721.20 note ( 5.01% as opposed to 4.45%);

- The $83,633.54 note was supposed to be unsecured and we made it secured by a mortgage; and

- The term of the $83,633.54 note was supposed to be for 30 years with an interest only payment on 4.45%. The note we sent you, although it was for a lower rate (3.01%), was only for a term of 7 years with principal and interest payments.

I also informed you that after meeting with Mr. Larson and discussing your objections, he agreed to apply the 4.45% interest rate to both notes, and to convert the $83,633.54 note to an unsecured note for 30 years with interest only payments. I also requested that you propose a payment schedule seeing that a

Artiano, Guzman
& Toomey, LLP
3828 Carson Street
Suite 102
Torrance, CA 90503-6702
Telephone: 310.543.1240
Facsimile: 310.543.9850
* Licensed in Chile only.

substantial amount of time had transpired without any payment on any of the loans that Mr. Larson made to you. You stated to me that you were unable at this time to make any monthly payments and that you would discuss this matter with Mr. Larson.

Mr. Larson has represented that the two of you did discuss this matter and that he indicated to you that he did expect to be paid just as if he were the Bank. Mr. Larson has stated to me that it always was his intent that you would pay him just as you would have paid the Bank (if your mortgage had remained with the Bank).

I understand if times are difficult for you and if you are not in a position to make full payment on the loans. I am proposing that you at least begin to send some amount of the monthly payment to Mr. Larson even though it may be less that the full amount owed. We can make adjustments in the future and at least it would indicate an effort on your part to honor the debt and alleviate any possible negative tax impact on him.

Upon receipt of this letter, please call us to discuss execution of the notes and a payment plan that accommodates to your budget.

Very truly yours,

Frank Keller

Enclosure

# EXHIBIT 24



E.Frank Keller *
Extension 117
frank.keller@agtlaw.com

<u>Via Facsimile & Regular Mail</u>
(914) 834-9184

February 23, 2005

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

Re:    Loans from Al Larson
       Our File No. B224.13.2

Dear Ms. Eney:

This letter serves as a follow up to our previous communications in connection with the above-referenced matter.

As, I stated to you in my letter dated August 17, 2004, Mr. Larson agreed to the terms proposed by you. An interest rate of 4.45% per annum will be charged for both loans and both will be for a fix term of 30 years. He also agreed to convert the $80,000 loan to an unsecured loan payable in monthly installments of interest only.

We have updated the principal amounts due under both loans by adding interest (4.45% per annum) to the principal amount owed from day one through February 1, 2005. Thus, the $170,000 loan made on January 1, 2003 has an unpaid principal of $ 185,150 as of February 1, 2005; and the $80,000 loan made on January 1, 2003 has an unpaid principal of $82,200 as of February 1, 2005.

Enclosed herewith, please find two promissory notes and a mortgage that reflect the updated principals amounts due on both notes, these notes also reflect all of the terms requested by you. Therefore, we have removed all the obstacles you claimed prevented you from executing the notes and mortgage previously sent to you on March 23, 2004.

**Artiano, Guzman**
**& Toomey, LLP**
3828 Carson Street
Suite 102
Torrance, CA 90503-6702
Telephone: 310.543.1240
Facsimile: 310.543.9850
* Licensed in Chile only.

Jaine Elkind Eney
February 23, 2005
Page 2

---

We understand if times are difficult for you and if you are not in a position to make full payment on the loans. However, we request that you at least execute the enclosed notes and mortgage and begin to send some amount of the monthly payment to Mr. Larson even though it may be less that the full amount owed. We can make adjustments in the future and at least it would indicate an effort on your part to honor the debt and alleviate any possible negative tax impact on Mr. Larson.

Upon receipt of this letter, please call us to discuss execution of the enclosed documents.

Very truly yours,


Frank Keller

cc: Al Larson

Enclosure

# EXHIBIT 25

## PROMISSORY NOTE

For value received, the undersigned hereby jointly and severely promises to pay to the order of ALLAN S. LARSON, or holder, the sum of $ 82,200.00 with interest at the rate of 4.45 % per annum thereon.

Payments under this Note shall commence on the 1ˢᵗ day of March 2005. Payments shall be made monthly thereafter on the 1ˢᵗ day of each month, and shall be for interest only in the sum of not less than $ 304.83. All payments shall be first applied to interest (both current and accrued) and the balance to principal. The entire sum of principal and accrued interest shall be fully payable on March 1, 2035.

This Note may be pre-paid, in whole or in part, without penalty.

This Note shall at the option of any holder hereof be immediately due and payable upon the occurrence of any of the following:

1.     Failure to make any payment due hereunder within ten (30) days of its due date.

2.     Breach of any condition of any security agreement or mortgage, if any, having a priority over any security agreement, pledge or mortgage on Collateral granted, in whole or in part, as security for this Note.

3.     The sale, transfer, assignment, pledge, encumbrance, hypothecation, or any attempted sale, transfer, assignment, pledge, encumbrance, hypothecation, or any other disposal or attempted disposal of the security for this Note, or any right or interest therein.

4.     The death of the undersigned.

5.     The filing by any of the undersigned or any guarantor hereof of an assignment for the benefit of creditors, bankruptcy, or for relief under any provisions of the Bankruptcy Code; or by suffering an involuntary petition in bankruptcy or receivership not vacated within 30 days.

In the event this Note shall be in default, and placed with an attorney for collection, then the undersigned agrees to pay all actual attorneys fees and costs of collection. Payments not made within ten (10) days of the due date shall be subject to a late charge of ten percent (10%) of said payment. All payments hereunder shall be made to such address as may from time to time be designated by any holder hereof. This Note is payable in U.S. Dollars.

The undersigned and all other parties to this Note, whether as endorsers, guarantors, or sureties, agree to remain fully bound hereunder until this Note shall be fully paid and waive demand, presentment and protest and all notices

thereto and further agree to remain bound, notwithstanding any extension, modification, waiver, or other indulgence by any holder or upon the discharge or release of any obligor hereunder or to this Note, or upon the exchange, substitution, or release of any collateral granted as security for this Note. No modification or indulgence by any holder hereof shall be binding unless in writing; and any indulgence on any one occasion shall not be an indulgence for any other or future occasion. Any modification or change of terms, hereunder granted by any holder hereof, shall be valid and binding upon each of the undersigned, notwithstanding the acknowledgment of any of the undersigned. The rights of any holder hereof shall be cumulative and not necessarily successive. This Note shall take effect as a sealed instrument and shall be construed, governed and enforced in accordance with the laws of the State of California.

This Note is dated this 22nd day of February 2005.

_____
Jaine Elking Eney

# EXHIBIT 26



ATTORNEYS AT LAW

Denise M. Guzman
Extension 106
denise.guzman@agtlaw.com

February 13, 2007

**SENT VIA OVERNIGHT DELIVERY**

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

Re:     *Loans from Al Larson*
        *Our File No.: B224.13.2*

Dear Ms. Eney:

This letter serves as a follow up to our previous communications in connection with the above-referenced matter.

Enclosed please find for your review and execution the following documents:

- Mortgage;
- Note;
- Promissory Note; and
- Initialization Information

We have updated the principal amounts due under both loans made to you from Al Larson by adding interest (4.45% per annum) to the principal amount owed from day one through February 1, 2007. Thus, the $170,000 loan made to you on January 1, 2003 has an unpaid principal balance of $200,931 as of February 1, 2007; and the $80,000 loan made to you on January 1, 2003 has an unpaid principal balance of $89,616 as of February 1, 2007.

Enclosed herewith, please find two (2) Promissory Notes and one (1) Mortgage that reflect the updated principal amounts due on both Notes. These Notes also reflect all of the terms requested by you. Therefore, we removed all of the obstacles you claimed that prevented you from executing the Notes and Mortgage previously sent to you.

Artiano · Guzman, LLP
3828 Carson Street, Suite 102
Torrance, CA 90503
Telephone: 310/543-1240
Facsimile: 310/543-9850

Jaine Elkind Eney / Larso
February 13, 2007
Page 2

_____

Please review these documents, sign where indicated and return them to our office.

I thank you for your attention to this matter. Please do not hesitate to contact our office should you have any questions.

Very truly yours,

ARTIANO • GUZMAN, LLP

Denise M. Guzman

DMG/kj

Enclosures

# EXHIBIT 27

_____[Space Above This Line For Recording Data]_____

# MORTGAGE

## WORDS USED OFTEN IN THIS DOCUMENT
(A) "Security Instrument." This document, which is dated February        , 2007       , will be called the "Security Instrument."
(B) "Borrower."   JAINE ELKIND ENEY

Whose address is 9 Kilmer Rd., Larchmont, NY 10538                          , sometimes will be called "Borrower" and sometimes simply "I" or "me."                          , (C) "Lender."
  Allan S. Larson
will be called "Lender." Lender is a corporation or association which exists under the laws of
                                              . Lender's address is 13603 Marina Pointe Dr., Marina del Rey,
California, 90292.
(D) "Note." The note signed by Borrower and dated February ___, 2007          , will be called the "Note."
The Note shows that I owe Lender TWO HUNDRED THOUSAND NINE HUNDRED THIRTY ONE 00/100
                              Dollars (U.S. $ 200,931.00                    ) plus interest.
I have promised to pay this debt in monthly payments and to pay the debt in full by February 1, 2037     .
(E) "Property." The property that is described below in the section titled "Description of the Property," will be
called the "Property."
(F) "Sums Secured." The amounts described below in the section titled "Borrower's Transfer to Lender of Rights in
the Property" sometimes will be called the "Sums Secured."

## BORROWER'S TRANSFER TO LENDER OF RIGHTS IN THE PROPERTY
I mortgage, grant and convey the Property to Lender subject to the terms of this Security Instrument.  This means
that, by signing this Security Instrument, I am giving Lender those rights that are stated in this Security Instrument
and also those rights that the law gives to lenders who hold mortgages on real property.  I am giving Lender these
rights to protect Lender from possible losses that might result if I fail to:
(A) Pay all the amounts that I owe Lender as stated in the Note;
(B) Pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 of this Security Instrument to
protect the value of the Property and Lender's rights in the Property; and
(C) Keep all of my other promises and agreements under this Security Instrument.

**NEW YORK** - Single Family - **FNMA/FHLMC UNIFORM INSTRUMENT**          **Form 3033 10/91**

**DESCRIPTION OF THE PROPERTY**
I give Lender rights in the Property described in (A) through (G) below:
(A) The Property which is located at 9 Kilmer Road

[Street]

Larchmont , New York     10538     . This Property is in
[City]                        [Zip Code]

Westchester     County. It has the following legal description:

(B) All buildings and other improvements that are located on the Property described in subparagraph (A) of this section;
(C) All rights in other property that I have as owner of the Property described in subparagraph (A) of this section. These rights are known as "easements and appurtenances attached to the Property";
(D) All rights that I have in the land which lies in the streets or roads in front of, or next to, the Property described in subparagraph (A) of this section;
(E) All fixtures that are now or in the future will be on the Property described in subparagraphs (A) and (B) of this section;
(F) All of the rights and property described in subparagraphs (B) through (E) of this section that I acquire in the future; and
(G) All replacements of or additions to the Property described in subparagraphs (B) through (F) of this section.

**BORROWER'S RIGHT TO MORTGAGE THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY**
I promise that: (A) I lawfully own the Property; (B) I have the right to mortgage, grant and convey the Property to Lender; and
(C) there are no outstanding claims or charges against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

**PLAIN LANGUAGE SECURITY INSTRUMENT**
This Security Instrument contains promises and agreements that are used in real property security instruments all over the country. It also contains other promises and agreements that vary, to a limited extent, in different parts of the country. My promises and agreements are stated in "plain language."

# COVENANTS

I promise and I agree with Lender as follows:

## 1. BORROWER'S PROMISE TO PAY
I will pay to Lender on time principal and interest due under the Note and any prepayment and late charges due under the Note.

## 2. MONTHLY PAYMENTS FOR TAXES AND INSURANCE
### (A) Borrower's Obligations
I will pay to Lender all amounts necessary to pay for taxes, assessments, water frontage charges and other similar charges, sewer rents, leasehold payments or ground rents (if any), hazard or property insurance covering the Property, and flood insurance (if any). If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, (i) I also will pay to Lender all amounts necessary to pay for mortgage insurance, and (ii) if, under Paragraph 8 below, instead of paying for mortgage insurance I am required to pay Lender an amount equal to the cost of mortgage insurance, I will pay this amount to Lender. I will pay all of these amounts to Lender unless Lender tells me, in writing, that I do not have to do so, or unless the law requires otherwise. I will make these payments on the same day that my monthly payments of principal and interest are due under the note.

My payments under this Paragraph 2 will be for the items listed in (i) through (vi) below, which are called "Escrow Items":
(i) The estimated yearly taxes, assessments, water frontage charges and other similar charges, and sewer rents on the Property which under the law may be superior to this Security Instrument as a lien on the Property. Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a "lien";
(ii) The estimated yearly leasehold payments or ground rents on the Property (if any);
(iii) The estimated yearly premium for hazard or property insurance covering the Property;
(iv) The estimated yearly premium for flood insurance covering the Property (if any);
(v) The estimated yearly premium for mortgage insurance (if any); and
(vi) The estimated yearly amount I may be required to pay Lender under Paragraph 8 below instead of the payment of the estimated yearly premium for mortgage insurance (if any).

Lender will estimate from time to time the amount I will have to pay for Escrow Items by using existing assessments and bills and reasonable estimates of the amount I will have to pay for Escrow Items in the future, unless the law requires Lender to use another method for determining the amount I am to pay. The amounts that I pay to Lender for Escrow Items under this Paragraph 2 will be called the "Funds." The Funds are pledged as additional security for all Sums Secured.

The law puts limits on the total amount of Funds Lender can at any time collect and hold. This total amount cannot be more than the maximum amount a lender for a "federally related mortgage loan" could require me to place in an "escrow account" under the federal law called the "Real Estate Settlement Procedures Act of 1974," as that law may be amended from time to time. If there is another law that imposes a lower limit on the total amount of Funds Lender can collect and hold, Lender will limited to the lower amount.

### (B) Lender's Obligations
Lender will keep the Funds in a savings or banking institution which has its deposits insured by a federal agency, instrumentality, or entity, or in any Federal Home Loan Bank, if Lender is such a savings or banking institution, Lender may hold the Funds. Except as described in this Paragraph 2, Lender will use the Funds to pay the Escrow Items. Lender will give to me, without charge, an annual accounting of the Funds. That accounting must show all additions to and deductions from the Funds and the reason for each deduction.

Lender may not charge me for holding or keeping the Funds, for using the Funds to pay Escrow Items, for making a yearly analysis of my payment of Funds or for receiving, verifying and totaling assessments and bills. However, Lender may charge me for these services if Lender pays me interest on the Funds and if the Law permits Lender to make such a charge. Lender also may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with my loan, unless the law does not permit Lender to make such a charge. Lender will not be required to pay me any interest or earnings on the Funds unless either (i) Lender and I agree in writing, at the time I sign this Security Instrument, that Lender will pay interest on the Funds; or (ii) the law requires Lender to pay interest on the Funds.

### (C) Adjustments to the Funds
Under the law, there is a limit on the amount of Funds Lender may hold. If the amount of Funds held by Lender exceeds this limit, then the law requires Lender to account to me in a special manner for the excess amount of Funds. There will be an excess amount if, at any time, the amount of Funds which Lender is holding or keeping is greater that the amount of Funds Lender is allowed to hold under the law.

If, at any time, Lender has not received enough Funds to make the payments of Escrow Items when the payments are due, Lender may tell me in writing that an additional amount is necessary. I will pay to Lender whatever additional amount is necessary to pay the Escrow Items in full. Lender will determine the number of monthly payments I have in which to pay that additional amount, but the number of payments will not be more than twelve.

When I have paid all of the Sums Secured, Lender will promptly refund to me any Funds that are then being held by Lender. If, under Paragraph 21 below, Lender either acquires or sells the Property, then before the acquisition or sale, Lender will use any Funds which Lender is holding at the time of the acquisition or sale to reduce the Sums Secured.

## 3. APPLICATION OF BORROWER'S PAYMENTS

Unless the law requires otherwise, Lender will apply each of my payments under the Note and under Paragraphs 1 and 2 above in the following order and for the following purposes:
First, to pay any prepayment charges due under the Note;
Next, to pay the amounts due to Lender under Paragraph 2 above;
Next, to pay interest due;
Next, to pay principal due; and
Last, to pay any late charges due under the Note.

## 4. BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS

I will pay all taxes, assessments, water frontage charges and other similar charges, sewer rents, and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument. I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will do this either by making the payments to Lender that are described in Paragraph 2 above or, if I am not required to make payments under Paragraph 2, by making the payments on time to the person owed them. (In this Security Instrument, the word "person" means any person, organization, governmental authority or other party.) If I make direct payments, then promptly after making any of those payments I will give Lender a receipt which shows that I have done so. If I make payment to Lender under Paragraph 2, I will give Lender all notices or bills that I receive for the amounts due under this Paragraph 4.

I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that during the lawsuit, the superior lien may not be enforced; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give Borrower a notice identifying the superoir lien. Borrower shall pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

## 5. BORROWER'S OBLIGATION TO MAINTAIN HAZARD INSURANCE OR PROPERTY INSURANCE

I will obtain hazard or property insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage cause by fire, hazards normally cover by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage, including floods and flooding. The insurance must be in the amounts and for the periods of time required by Lender and may choose the insurance company, but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. If I do not maintain the insurance coverage described above, Lender may obtain insurance coverage to protect Lender's rights in the Property in accordance with Paragraph 7 below.

All of the insurance policies and renewals of those policies must include what is known as a "standard mortgage clause" to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

If there is a loss or damage to the Property, I will promptly notify the insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "proceeds". The proceeds will be used to repair or to restore the damaged Property unless: (A) it is not economically feasible to make the repairs or restoration; or (B) the use of the proceeds for that purpose would lessen the protection given to Lender by this Security Instrument; or (C) Lender and I have agreed in writing not to use the proceeds for that purpose. If the repair or restoration is not economically feasible or if it would lessen Lender's protection under this Security Instrument, then the proceeds will be used to reduce the amount that I owe to Lender under the Note and under this Security Instrument. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that the insurance company has offered to settle a claim, Lender may collect the proceeds. Lender may use the proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays or changes.

If Lender acquires the Property under Paragraph 21 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any proceeds which are paid because of damage that occured before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those proceeds will not be greater that the Sums Secured immediately before the Property is acquired by Lender or sold.

**6. BORROWER'S OBLIGATIONS TO OCCUPY THE PROPERTY, TO MAINTAIN AND PROTECT THE PROPERTY, AND TO FULFILL ANY LEASE OBLIGATIONS; BORROWER'S LOAN APPLICATION**

**(A) Borrower's Obligations to Occupy the Property**

I will occupy the Property and use the Property as my principal residence within sixty days after I sign this Security Instrument. I will continue to occupy the Property and to use the Property as my principal residence for at least one year. The one-year period will begin when I first occupy the Property. However, I will not have to occupy the Property and us4e the Property as my principal residence within the time frames set forth above if Lender agrees in writing that I do not have to do so. Lender may not refuse to agree unless the refusal is reasonable. I also will not have to occupy the Property and use the Property as my principal residence within the time frames set forth above if extenuating circumstances exist which are beyond my control.

**(B) Borrower's Obligations to Maintain and Protect the Property**

I will keep the Property in good repair. I will not destroy, damage or harm the Property, and I will not allow the Property to deteriorate.

I will be "in default" under this Security Instrument if I fail to keep any promise or agreement made in this Security Instrument. I also will be in default under this Security Instrument if any civil or criminal action or proceeding for "forfeiture" (that is, a legal action or proceeding to require the Property, or any part of the Property, to be given up) is begun and Lender determines, in good faith, that this action or proceeding could result in a court ruling (i) that would require forfeiture of the Property or (ii) that would materially impair the lien of this Security Instrument or Lender's rights in the Property. I may correct the default by obtaining a court ruling that dismisses the legal action or proceeding, if Lender determines, in good faith, that this court ruling prevents forfeiture of my interests in the Property and also prevents any material impairment of (i) the lien created by this Security Instrument or (ii) Lender's rights in the Property. If I correct the default, I will have the right to have enforcement of this Security Instrument discontinued, as provided in Paragraph 18 below, even if Lender has required immediate payment in full.

**(C) Borrower's Obligations to Fulfill Any Lease Obligations**

If I do not own but am a tenant on the Property, I will fulfill all my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

**(D) Borrower's Loan Application**

If, during the application process for the loan that I promise to pay under the Note, I made false or inaccurate statements to Lender about information important to Lender in determining my eligibility for the loan, Lender will treat my actions as a default under this Security Instrument. False or inaccurate statements about information important to Lender would include a misrepresentation of my intentions to occupy the Property as a principal residence. This is just one example of a false or inaccurate statement of important information. Also, if during the loan application process I failed to provide Lender with information important to Lender in determining my eligibilty for the loan, Lender will treat this as a default under this Security Instrument.

**7. LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY**

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (such as a legal proceeding in bankruptcy, in probate, for condemnation or forfeiture, or to enforce laws or regulations), Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this Paragraph 7, Lender does not have to do so.

I will pay to Lender any amounts, with interest, which Lender spends under this Paragraph 7. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. I will also pay interest on those amounts at the Note rate. Interest on each amount will begin on the date that the amount is spent by Lender. However, Lender and I may agree in writing to terms of payment that are different from those in this paragraph. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

## 8. MORTGAGE INSURANCE

If Lender required mortgage insurance as a condition of making the loan that I promise to pay under the Note, I will pay the premiums for the mortgage insurance. If, for any reason, the mortgage insurance coverage lapses or ceases to be in effect, I will pay the premiums for substantially equivalent mortgage insurance coverage. However, the cost of this mortgage insurance coverage must be substantially equivalent to the cost to me of the previous mortgage insurance coverage, and the alternate mortgage insurer must be approved by Lender.

If substantially equivalent mortgage insurance coverage is not available, Lender will establish a "loss reserve" as a substitute for the mortgage insurnace coverage. I will pay to Lender each month an amount equal to one-twelfth of the yearly mortgage insurance premium (as of the time the coverage lapsed or ceased to be in effect). Lender will retain these payments, and will use these payments to pay for losses that the mortgage insurance would have covered. Lender may choose to no longer require loss reserve payments, if mortgage insurance coverage again becomes available and is obtained. The mortgage insurance coverage must be in the amount and for the period of time required by Lender. The Lender must approve the insurance company providing the coverage.

I will pay the mortgage insurance premiums, or the loss reserve payments, until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law. Lender may require me to pay the premiums, or the loss reserve payments, in the manner described in Paragraph 8 above.

## 9. LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter on and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

## 10. AGREEMENT ABOUT CONDEMNATION OF THE PROPERTY

A taking of Property by any governmental authority by eminent domain is known as "condemnation." I give to Lender my right: (A) to proceeds of all awards or claims for damages resulting from condemnation or other governmental taking of the Property; and (B) to proceeds from a sale of the Property that is made to avoid condemnation. All of those proceeds will be paid to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the amount that I owe to Lender has been paid in full, the remaining proceeds will be paid to me.

Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking either is equal to, or greater than, the amount of the Sums Secured immediately before the taking, the amount that I owe to Lender will be reduced only by the amount of proceeds multiplied by a fraction. That fraction is as follows: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

Unless Lender and I agree otherwise in writing or unless the law requires otherwise, if only a part of the Property is taken, and the fair market value of the Property immediately before the taking is less than the amount of the Sums Secured immediately before the taking, the proceeds will be used to reduce the Sums Secured.

If I abandon the Property, or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds. Lender may then use the proceeds to repair or restore the Property or to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of principal which I owe to Lender under the Note, that use will not delay the due date or change the amount of any of my monthly payments under the Note and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to those delays of changes.

## 11. CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS
### (A) Borrower's Obligations
Lender may allow a person who takes over my rights and obligations to delay or to change the amount of the monthly payments of principal and interest due under the Note or under this Security Instrument. Even if Lender does this, however, that person and I will both still be fully obligated under the Note and under this Security Instrument.

Lender may allow those delays or changes for a person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a person for not fulfilling obligations under the Note or under this Security Instrument, even if Lender is requested to do so.

### (B) Lender's Rights
Even if Lender does not exercise or enforce any right of Lender under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 21 below to demand that I make immediate payment in full of the amount that I owe to Lender under the Note and under this Security Instrument.

## 12. OBLIGATIONS OF BORROWER AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS
Any person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

If more than one person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured. However, if one of us does not sign the Note: (A) that person is signing this Security Instrument only to give that person's rights in the Property to Lender under the terms on this Security Instrument; and (B) that person is not personally obligated to pay the Sums Secured; and (C) that person agrees that Lender may agree with the other Borrowers to delay enforcing any of Lender's rights or to modify or make any accommodations with regard to the terms of this Security Instrument or the Note without that person's consent.

## 13. LOAN CHARGES
If the loan secured by this Security Instrument is subject to a law which sets maxium loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

## 14. NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT
Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at the address stated in the section above titled "Description of the Property." A notice will be given to me at a different address if I give Lender a notice of my different address. Any notice that must be given to Lender under this Security Instrument will be given by mailing it to Lender's address stated in subparagraph (C) of the section above title "Words Used Often In This Document." A notice will be mailed to Lender at a different address if Lender gives me a notice of the different address. A notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

## 15. LAW THAT GOVERNS THIS SECURITY INSTRUMENT
This Security Instrument is governed by federal law and the law that applies in the place where the Property is located. If any term of this Security Instrument or of the Note conflicts with the law, all other terms of this Security Instrument and of the Note will still remain in effect if they can be given effect without the conflicting term. This means that any terms of this Security Instrument and of the Note which conflict with the law can be separated from the remaining terms, and the remaining terms will still be enforced.

**16. BORROWER'S COPY**
I will be given one conformed copy of the Note and of this Security Instrument.

**17. AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**
Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment in full under this Paragraph 17, Lender will give me a notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

**18. BORROWER'S RIGHT TO HAVE LENDER'S ENFORCEMENT OF THIS SECURITY INSTRUMENT DISCONTINUED**
Even if Lender has required immediate payment in full, I may have the right to have enforcement of this Security Instrument discontinued. I will have this right at any time before sale of the Property under any power of sale granted by this Security Instrument or any time before a judgment has been entered enforcing this Security Instrument if I meet the following conditions:
(A) I pay to Lender the full amount that then would be due under this Security Instrument and the Note as if immediate payment in full had never been required; and
(B) I correct my failure to keep any of my other promises or agreements made in this Security Instrument; and
(C) I pay all of Lender's reasonable expenses in enforcing this Security Instrument including, for example, reasonable attorneys' fees; and
(D) I do whatever Lender reasonably requires to assure that Lender's rights in the Property, Lender's rights under this Security Instrument, and my obligations under the Note and under this Security Instrument continue unchanged.

If I fulfill all of the conditions in this Paragraph 18, then the Note and this Security Instrument will remain in full effect as if immediate payment in full had never been required. However, I will not have the right to have Lender's enforcement of this Security Instrument discontinued if Lender has required immediate payment in full under Paragraph 17 above.

**19. NOTE HOLDER'S RIGHT TO SELL THE NOTE OR AN INTEREST IN THE NOTE; BORROWER'S RIGHT TO NOTICE OF CHANGE OF LOAN SERVICER**
The Note, or an interest in the Note, together with this Security Instrument, maybe sold one or more times. I may not receive any prior notice of these sales.

The entity that collects my monthly payments due under the Note and this Security Instrument is called the "Loan Servicer." There may be a change of the Loan Servicer as a result of the sale of the Note, there also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. The law requires that I be given written notice of any change of the Loan Servicer. The written notice must be given in the manner required under Paragraph 14 above and under applicable law. The notice will state the name and address of the new Loan Servicer, and also tell me the address to which I should make my payments. The notice also will contain any other information required by the law.

**20. CONTINUATION OF BORROWER'S OBLIGATIONS TO MAINTAIN AND PROTECT THE PROPERTY**
The federal laws and the laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection are called "Environmental Laws." I will not do anything affecting the Property that violates Environmental Laws, and I will not allow anyone else to do so.

Environmental Laws classify certain substances as toxic or hazardous. There are other substances that are considered hazardous for purposes of this Paragraph 20. These are gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. The substances defined as toxic or hazardous by Environmental Laws and the substances considered hazardous for purposes of this Paragraph 20 are called "Hazardous Substances."

I will not permit Hazardous Substances to be present on the Property. I will not use or store Hazardous Substances on the Property, and I also will not allow anyone else to do so. I will not dispose of Hazadous Substances on the Property, or release any Hazardous Substance on the Property, and I will not allow anyone else to do so. However, I may permit the presence on the Property of small quantities of Hazardous Substances that are generally recognized as appropriate for normal residential use and maintenance of the Property, and I may use or store these small quantities on the Property. In addition, unless the law requires removal or other action, the buildings, the improvements and the fixtures on the Property are permitted to contain asbestos and asbestos-containing materials if the asbestos and asbestos-containing materials are undisturbed and "non-friable" (that is, not easily crumbled by hand pressure).

If I know of any investigation, claim, demand, lawsuit or other action by the government or by a private party involving the Property and any Hazardous Substance or Environmental Laws, I will promptly notify the Lender in writing. If the government notifies me (or I otherwise learn) that it is necessary to remove a Hazardous Substance affecting the Property or to take other remedial actions, I will promptly take all necessary remedial actions as required by Environmental Laws.

## 21. LENDER'S RIGHTS IF BORROWER FAILS TO KEEP PROMISES AND AGREEMENTS
Except as provided in Paragraph 17 above, if all of the conditions stated in subparagraphs (A), (B) and (C) of this Paragraph 21 are met, Lender may require that I pay immediately the entire amount then remaining unpaid under the Note and under this Security Instrument. Lender may do this without making any further demand for payment. This requirement is called "immediate payment in full."

If Lender requires immediate payment in full, Lender may bring a lawsuit to take away all of my remaining rights in the Property and have the Property sold. At this sale Lender or another person may acquire the Property. This is known as "foreclosure and sale." In any lawsuit for foreclosure and sale, Lender will have the right to collect all costs and disbursements and additional allowances allowed by law and will have the right to add all reasonable attorneys' fees to the amount I owe Lender, which fees shall become part of the Sums Secured.

Lender may require immediate payment in full under this Paragraph 21 only if all of the following conditions are met:

(A) I fail to keep any promise or agreement made in this Security Instrument, including the promises to pay when due the Sums Secured.

(B) Lender sends to me, in the manner described in Paragraph 14 above, a notice that states:
  (i) The promise or agreement that I failed to keep;
  (ii) The action that I must take to correct that default;
  (iii) A date by which I must correct the default. That date must be at least 30 days from the date on which the notice is given;
  (iv) That if I do not correct the default by the date stated in the notice, Lender may require immediate payment in full, and Lender or another person may acquire the Property by means of foreclosure and sale;
  (v) That if I meet the conditions stated in Paragraph 18 above, I will have the right to have Lender's enforcememt of this Security Instrument discontinued and to have the Note and this Security Instrument remain fully effective as if immediate payment in full had never been required; and
  (vi) That I have the right in any lawsuit for foreclosure and sale to argue that I did keep my promises and agreements under the Note and under this Security Instrument, and to present any other defenses that I may have.

(C) I do not correct the default stated in the notice from Lender by the date stated in that notice.

## 22. LENDER'S OBLIGATION TO DISCHARGE THE SECURITY INSTRUMENT
When Lender has been paid all amounts due under the Note and under this Security Instrument, Lender will discharge this Security Instrument by delivering a certificate stating that this Security Instrument has been satisfied. I will not be required to pay Lender for the discharge, but I will pay all costs of recording the discharge in the proper official records.

## 23. AGREEMENTS ABOUT NEW YORK LIEN LAW
I will receive all amounts lent to me by Lender subject to the trust fund provisions of Section 13 on the New York Lien Law. This means that if, on the date this Security Instrument is recorded, construction or other work on any building or other improvement located on the Property has not been completed for at least four months, I will: (A) hold all amounts which I receive and which I have a right to receive from Lender under the Note as a "trust fund"; and (B) use those amounts to pay for that construction or work before I use them for any other purpose. The fact that I am holding those amounts as a "trust fund" means that for any building or other improvement located on the Property I have a special responsibility under the law to use the amount in the manner described in this Paragraph 23.

**24. RIDERS TO THIS SECURITY INSTRUMENT**

If one or more riders are signed by Borrower and recorded together with this Security Instrument, the promises and agreements of each rider are incorporated as a part of this Security Instrument. [Check applicable box(es)]

☐ Adjustable Rate Rider            ☐ Condominium Rider                 ☐ 1-4 Family Rider
☐ Graduated Payment Rider          ☐ Planned Unit Development Rider     ☐ Biweekly Payment Rider
☐ Balloon Rider                    ☐ Rate Improvement Rider             ☐ Second Home Rider

☐ VA Rider                         ☐ Other(s) [specify]

       BY SIGNING BELOW, I accept and agree to the promises and agreements contained in pages 1 through 10 of this Security Instrument and in any rider(s) signed by me and recorded with it.

Witnesses:

_____        _____ (Seal)
                                                            -Borrower
                                                    Jaine Elkind Eney

_____        _____ (Seal)
                                                            -Borrower

_____ (Seal)   _____ (Seal)
                         -Borrower                          -Borrower

**STATE OF NEW YORK**                          )
                                               )ss.
County of                                      )

     On the            day of              in the year              before me, the undersigned, a notary public in and for said state, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person on behalf of which the individual(s) acted, executed the instrument.

My Commission Expires:

_____
Notary Public

Tax Map Information:

Form 3033 10/91

# EXHIBIT 28

# NOTE

[Date] FEBRUARY ____,2007                    [City] LARCHMONT                    [State] NEW YORK

9 KILMER ROAD, LARCHMONT, NEW YORK.

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 200,931.00                    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is Allan S. Larson

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 4.45          %.

The interest rate required by this Section 2 is the rate I will pay both before and after my default as described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1st      day of each month beginning on March 1, 2007                    , . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on                    March 1, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 13603 Marina Pointe Dr., California 90292
                    or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ 1,012.13

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (I) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payments by the end of 15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 3                    % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

NEW YORK FIXED RATE NOTE - Single Family - Fannie Mae/Freddie Mac Uniform Instrument
                    Form 3233 10/91

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all costs and expenses in enforcing this Note, whether or not a lawsuit is brought, to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to he Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address slated in Section 3(A) above or at a different address if I am given notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED**

Lender may require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may require immediate payment in full if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person. However, Lender shall not require immediate payment in full if this is prohibited by federal law on the date of this Security Instrument.

If Lender requires immediate payment if full under this Paragraph 17, Lender will give me notice which states this requirement. The notice will give me at least 30 days to make the required payment. The 30-day period will begin on the date the notice is mailed or delivered. If I do not make the required payment during that period, Lender may act to enforce its rights under this Security Instrument without giving me any further notice or demand for payment.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)            _____(Seal)
                JAINE ELKIND ENEY          -Borrower                                                    -Borrower
SSN:                                                         SSN:

_____(Seal)            _____(Seal)
                                              -Borrower                                                    -Borrower
SSN:                                                         SSN:

*[Sign Original Only]*
**Form 3233 10/91**

# EXHIBIT 29

# PROMISSORY NOTE

For value received, the undersigned hereby jointly and severely promises to pay to the order of ALLAN S. LARSON, or holder, the sum of $ 89,616.00 with interest at the rate of 4.45 % per annum thereon.

Payments under this Note shall commence on the 1st day of March 2007. Payments shall be made monthly thereafter on the 1st day of each month, and shall be for interest only in the sum of not less than $332.33. All payments shall be first applied to interest (both current and accrued) and the balance to principal. The entire sum of principal and accrued interest shall be fully payable on March 1, 2037.

This Note may be pre-paid, in whole or in part, without penalty.

This Note shall at the option of any holder hereof be immediately due and payable upon the occurrence of any of the following:

     1.    Failure to make any payment due hereunder within ten (30) days of its due date.

     2.    Breach of any condition of any security agreement or mortgage, if any, having a priority over any security agreement, pledge or mortgage on Collateral granted, in whole or in part, as security for this Note.

     3.    The sale, transfer, assignment, pledge, encumbrance, hypothecation, or any attempted sale, transfer, assignment, pledge, encumbrance, hypothecation, or any other disposal or attempted disposal of the security for this Note, or any right or interest therein.

     4.    The death of the undersigned.

     5.    The filing by any of the undersigned or any guarantor hereof of an assignment for the benefit of creditors, bankruptcy, or for relief under any provisions of the Bankruptcy Code; or by suffering an involuntary petition in bankruptcy or receivership not vacated within 30 days.

In the event this Note shall be in default, and placed with an attorney for collection, then the undersigned agrees to pay all actual attorneys fees and costs of collection. Payments not made within ten (10) days of the due date shall be subject to a late charge of ten percent (10%) of said payment. All payments hereunder shall be made to such address as may from time to time be designated by any holder hereof. This Note is payable in U.S. Dollars.

The undersigned and all other parties to this Note, whether as endorsers, guarantors, or sureties, agree to remain fully bound hereunder until this Note shall be fully paid and waive demand, presentment and protest and all notices

Prepared by
Artiano, Guzman, & Toomey, LLP

thereto and further agree to remain bound, notwithstanding any extension, modification, waiver, or other indulgence by any holder or upon the discharge or release of any obligor hereunder or to this Note, or upon the exchange, substitution, or release of any collateral granted as security for this Note. No modification or indulgence by any holder hereof shall be binding unless in writing; and any indulgence on any one occasion shall not be an indulgence for any other or future occasion. Any modification or change of terms, hereunder granted by any holder hereof, shall be valid and binding upon each of the undersigned, notwithstanding the acknowledgment of any of the undersigned. The rights of any holder hereof shall be cumulative and not necessarily successive. This Note shall take effect as a sealed instrument and shall be construed, governed and enforced in accordance with the laws of the State of California.

This Note is dated this ___ day of February 2007.


_____
Jaine Elking Eney

# EXHIBIT 30



ATTORNEYS AT LAW

Denise M. Guzman
Extension 106
dguzman@agattys.com

April 10, 2007                                   *Via Federal Express*

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

      *Re: Loans*
      *File No.: B224.13.2*

Jaine,

I'm sorry it has taken until now to respond to your email of March 13, but my mother has been quite ill for almost a month and I've been spending most of my time at the hospital.

However, I have had an opportunity to review your email response of March 13, 2007 to my letter of February 13, 2007. And, I have also thoroughly reviewed the content of your responses with Al and he has approved this letter to you.

On January 16, 2003 you prepared and sent me the following documents:

1. Mortgage Agreement in the amount of $ 170,000, between you as Borrower and Allan S. Larson, as Lender in which your residence located at 9 Kilmer Road, Larchmont, New York, 10538 was provided as a security;

2. A note in the amount of $ 170,000 between you as the Borrower and Allan S. Larson, as the Lender with the term of 4.45% and monthly payments of principal and interest beginning March 1, 2003 in he amount of $ 856.32;

3. An unsecured note in the amount of $ 80,000 between you as Borrower and Allan S. Larson as Lender with terms of 4.45% interest payable in annual installments of interest only beginning February 1, 2004 and continuing until February 1, 2033 at which time the entire remaining principal would be paid in full.

Your letter of January 16, 2003 clearly and specifically states, "Enclosed is a draft of the Mortgage Note, Mortgage and Note for *my loan* **(our emphasis)** with Al." I have enclosed with this letter a copy of your letter for your review.

Artiano · Guzman, LLP

3828 Carson Street, Suite 102
Torrance, CA 90503
Telephone: 310/543-1240
Facsimile: 310/543-9850

Jaine, the money that you received from Al was always discussed in the context of a "loan" with this office beginning in 2003 and with Al, each time you borrowed money. By your own hand, you admit that at least $ 250,000 was a loan. The only issue to be discussed in January of 2003 was the rate of interest on the loans, of which our position was and has always been that the interest rate you had proposed at the time was not a legally accepted IRS interest rate and that such a low rate put Al and Nan in jeopardy of significant tax consequences. However, we later agreed to your request as a means of closing this transaction.

You have had countless discussions with this office regarding this transaction. All discussions centered on the amount of interest to be paid and the amount of the loans that would be secured by your residence. Never, did you raise the issue that you thought the money lent to you was a gift!

You state in your letter that "your arrangement with Al was arrived at in the middle of intense courtroom negotiations" during your divorce settlement. Jaine, you borrowed from Al on nine (9) separate occasions beginning May 26, 2000 and ending October 12, 2003. The loans total $ 296,610 in principal. Up until this point in time Al accepted your calculations of $ 250,000. Now your unwillingness to take care of this matter long ago has prompted Al to do a search of his records. I have enclosed for your review a list of the dates and amounts of money advanced to you by Al.

Jaine, you admit you took the money from Al not fully clear as to how much, if any, of the sums advanced were to be repaid. You said yes to Al's offer and basically hoped that Al would later make a gift of the loan. You knew full well that the money being given you was a loan and in January 2003, you prepared loan documents that stated as much.

I do not know of any "prior" gifts Al or Nan might have given you that would make you come to the conclusion that Al was gifting you $ 296, 610.80 or for that matter gifting you the value of an entire house. Such prior gifts would have to have been of monumental significance to lead you to such a conclusion.

Your letter further states that you were taken back by the terms contained in the documents that this office sent you. Jaine, the documents we sent you were based on the documents you sent us in January of 2003. You provided us with the mortgage form and promissory note form valid in the state of New York where you practice real estate law for nearly three decades. You have a complete and thorough knowledge of these types of transactions and documents. I have to believe that you understood what you were doing when you prepared the documents and at least at that time were committed to honoring your obligations to Al and Nan.

There is no implication that you are ignoring the situation Jaine. I am stating it loud and clear. You have avoided signing documents for four (4) years. When Al agreed to your own terms in 2004, you still would not agree to execute your own documents. That says

it all Jaine. When you state, "that you will not sign documents that attempt to alter Al's and my prior agreement" you are definitely shunning your obligation because you prepared documents for this transaction in 2003 that this office has used as its base form. Since 2004 we have represented that Al was willing to accept the terms that you proposed. And yet you do not sign.

Please save your admonitions as to the trust that belongs between family and friends. Al trusted that you would be honorable in your commitment to him. And yet here we stand still talking about what you are willing or not willing to sign.

My words to you are harsh Jaine because you have taken advantage of Al. And if you truly care about him and Nan you will act quickly. I understand you will be here for Julie's surprise birthday party. Let's make it a good one by getting this matter settled now.

Not counting interest, you have borrowed $ 296, 610.80. As he was from the beginning, Al is willing to waive the interest that has accumulated on these loans to date, which is another amount worth approximately $ 50,000 to you. But he has instructed me to make it clear that if you continue as you have, we are to add $46,610.80 interest to the total owed computed on the terms you stated in the documents you prepared, and to begin compounding interest according to IRS regulations if the matter is not resolved by April 30, 2007.

Refresh the documents you sent in 2003 to bring them up to current date under New York law, execute them and mail them with your first monthly checks on both notes. Again, I am requesting that you do not call Al directly as this situation is extremely upsetting to him. I was in Al's home office in New York when you called him in February despite my request for you to communicate with me alone. I witnessed first hand how upset Al became in having to deal with you. . I understand that since that time, Al simply avoids your calls. I will also forewarn you that I will not participate in a conversation with you if you engage in conversation as you did with Al that day. If you want to talk to me in a reasonable fashion and tone I am always available to engage in negotiations.

I await your documents for signature by my client.

Very truly yours,

Denise M. Guzman

DMG/jm
Enclosure

# ENEY LOANS

| DATE | CHECK # | PAYEE | AMOUNT |
|------|---------|-------|--------|
| 05/26/00 | 1114 | Jaine Eney | $ 10,000 |
| 08/05/02 | 1661 | Jaine Eney | $ 6,500 |
| 10/08/02 | WIRE | Jaine Elkind Eney, JP Morgan Chase | $ 100,000 |
| 10/29/02 | 1519 | Richard Danzig, Esq. | $ 10,000 |
| 11/10/02 | 1531 | Kurzman Eisenberg Corbin, et. al. | $ 10,000 |
| 11/10/02 | 1532 | Richard Danzig, Esq. | $ 5,110.80 |
| 04/14/03 | WIRE | Jaine Elkind Eney | $ 120,000 |
| 09/03/03 | 15,000 | Jaine Eney | $ 15,000 |
| 10/12/03 | 20,000 | Jaine Eney | $ 20,000 |
| | | **TOTAL** | **$ 269,610.80** |