Joseph F. Fields, (JF 0040)
Edward Tessler (ET 4503)
David L. Elkind (DE 5559)
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Defendant
Jaine Elkind Eney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------x

ALLAN S. LARSON

        Plaintiff,

v.

JAINE ELKIND ENEY

        Defendant.

------------------------------x

CASE NO. 08 CV 3513 (DC)

MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

## TABLE OF CONTENTS

**INTRODUCTION** ..........................................................................................................1

**FACTS** ...........................................................................................................................2

**ARGUMENT** .................................................................................................................6

    I.    THE PARTIES HAVE REACHED A BINDING AGREEMENT THAT REQUIRES DISMISSAL OF THE COMPLAINT ..............................................6

    II.   IF THERE IS NO CONTRACT BETWEEN THE PARTIES, PLAINTIFF'S COMPLAINT MUST BE DISMISSED BASED ON THE STATUTE OF FRAUDS ..............................................................................................................8

    III.  THE SPECIFIC CLAIMS ALLEGED IN THE COMPLAINT HAVE NO BASIS IN LAW ...........................................................................................10

**CONCLUSION** ............................................................................................................11

DSMDB-2470458v01

Joseph F. Fields, (JF 0040)
Edward Tessler (ET 4503)
David L. Elkind (DE 5559)
Dickstein Shapiro LLP
1177 Avenue of the Americas
New York, New York 10036-2714
Telephone: (212) 277-6500
Facsimile: (212) 277-6501

Attorneys for Defendant
Jaine Elkind Eney

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
ALLAN S. LARSON                     :
                                    :
           Plaintiff,               :    CASE NO. 08 CV 3513 (DC)
                                    :
    v.                              :    MEMORANDUM IN SUPPORT OF
                                    :    MOTION TO DISMISS
                                    :
JAINE ELKIND ENEY                   :
                                    :
           Defendant.               :
                                    :
------------------------------------x

## **INTRODUCTION**

Defendant, Jaine Elkind Eney ("Eney"), by her attorneys, hereby moves to dismiss the Plaintiff's complaint. The complaint is barred by the terms of an agreement that the parties reached in late November or early December 2007, which Plaintiff's outside counsel repeatedly has confirmed. Ms. Eney stands ready to perform her obligations under that agreement. Thus, the complaint should be dismissed pursuant to Rule 56(b).

If the Court determines that there was no agreement to resolve this dispute, however, then the entire complaint must be dismissed pursuant to Rule 12(b)(6). The complaint admits that any payments by Ms. Eney were to be secured solely by granting the Plaintiff an interest as a

mortgagee in Ms. Eney's home, the only asset of value that she owns. There is no writing signed by Ms. Eney memorializing this interest in her home. Pursuant to New York General Obligations Law § 5-703, Plaintiff's claim to recovery from Ms. Eney's real property thus is void, if there is no agreement between the parties.

Finally, none of the specific "Causes of Action" states a valid claim for relief, and should be dismissed.

## FACTS

The relevant facts, as set forth in the affidavit of Jaine Elkind Eney ("Eney Aff."), will not be repeated here, except as necessary to explain the legal basis for this motion. This dispute unfortunately ended a 35-year relationship between Ms. Eney and the Plaintiff and his daughter, during which Plaintiff treated Ms. Eney as his second daughter, and Ms. Eney's children as his grandchildren. Eney Aff. ¶4. The complaint itself, however, ignores the context of the parties' dealings, contains numerous factual inaccuracies, and is internally inconsistent.

Most of the significant amounts that Plaintiff ultimately gave to Ms. Eney arose out of her divorce proceedings, in which Plaintiff was an active participant: first hiring and paying for a new attorney for her, and then advising and participating in the court proceedings. Eney Aff. ¶ 12. The day that Ms. Eney reached a financial settlement with her ex-husband, September 24, 2002, Plaintiff was an important participant in the courtroom negotiations. Without any prompting from Ms. Eney, Plaintiff offered to pay her ex-husband $81,000, to pay down the existing mortgages in Ms. Eney's and her ex-husband's name, and to advance funds to repair the house. *Id.* ¶ 13. This offer resolved the divorce proceedings. Plaintiff knew that Ms. Eney had no funds to pay any of this. *Id.* Ms. Eney would not have waived child support, or agreed to pay off her ex-husband, with money she did not have, without Plaintiff's generous offer. Plaintiff's

offer to pay down the mortgages enabled Ms. Eney to accept onerous provisions in the divorce settlement. *Id.*[1]

At the time that Plaintiff offered to make the advances, and Ms. Eney consequently agreed to waive child support and to make payments to her ex-husband, Plaintiff and Ms. Eney did not discuss that any of the advances were to be repaid by Ms. Eney. Eney Aff. ¶ 14. Because of their long-standing relationship and his prior gifts, Ms. Eney had no understanding that any of the money was to be repaid by her to Plaintiff. *Id.* They later agreed that whatever amounts, if any, that Ms. Eney would repay Plaintiff would be secured by giving Plaintiff a mortgage on Ms. Eney's house, her only meaningful asset, but they never discussed any specific terms for repayment. *Id.* After speaking with his business manager, Plaintiff subsequently requested that Ms. Eney draft documents with respect to some of these funds that Plaintiff had previously agreed to make during the divorce negotiations to have a "paper trail" for the IRS. *Id.* ¶ 16. She did so in January 2003. *Id.*; *see* Complaint Ex. 1-3.

Plaintiff's outside counsel, Denise M. Guzman, rejected the unsigned papers that Ms. Eney drafted, and later submitted proposals for different amounts and interest rates than in the drafts that Ms. Eney sent in January 2003. Eney Aff. ¶ 16. Thus, the parties had not yet reached an agreement based on Ms. Eney's 2003 draft documents.

On June 7, 2007, Ms. Guzman recognized that the parties had not set forth anything in writing concerning their understandings of what funds were going to be transferred. *See* Eney Aff. ¶ 17, Ex. 5.

On October 9, 2007, Ms. Guzman asserted that she would propose a settlement offer to minimize Plaintiff's tax consequences, but did not mention imposing tax consequences on Ms.

---

[1] Plaintiff made these advances to Ms. Eney that he had agreed to make during the divorce proceedings on four occasions: October 2002, April 2003, and the Fall of 2003. *Id.* ¶ 15. The complaint wrongly characterizes these advances as "loans," but the parties' settlement agreement described below means that this Court does not have to determine this issue.

Eney. Ms. Guzman proposed a $150,000 payment in five years, secured by a mortgage note and deed on Ms. Eney's residence, with no monthly payments or interest from Ms. Eney. Eney Aff. ¶ 18, Ex. 6. Ms. Eney agreed to the $150,000 payment, but not to the five-year payment. *Id.* ¶ 18.

Following numerous discussions, Ms. Guzman asserted on November 20, 2007 that she and Ms. Eney "have covered all the issues at this point and as I stated to you yesterday, there is an urgency to wrapping up these negotiations." Eney Aff. ¶ 19, Ex. 7. In response, Ms. Eney proposed a longer period of repayment, but offered to make monthly interest payments. *Id.* ¶ 20.

The parties finally reached an agreement in late November or early December 2007 on the relevant terms of Ms. Eney's repayments to Plaintiff. Ms. Eney agreed to repay him $150,000 in 15 years or upon her death or sale of her property, with interest payments of $50.00 per month. Eney Aff. ¶ 21. On December 7, 2007, Ms. Guzman confirmed most of the relevant terms of the agreement:

> Jaine, the offer on the table is your $50/mo interest only payments, all principal due in 15 years or upon your death or sale of the property. *There is nothing to discuss regarding these terms.* Please revise your mortgage deed and note to reflect the same.

Eney Aff. ¶ 21, Ex. 8 (emphasis added).

Pursuant to Ms. Guzman's demand that Ms. Eney send the relevant documents to "my office by Monday including the settlement agreement," *id.*, Ms. Eney sent Ms. Guzman the settlement and mortgage documents on December 11, 2007 which set forth the relevant terms that the parties had agreed to, including the principal amount owed of $150,000. *See* Eney Aff. ¶ 21, Ex. 9.

Although Ms. Eney repeatedly contacted Ms. Guzman over the next several months, Ms. Guzman did not have the papers executed. Weeks after Ms. Eney sent her the drafts, Ms. Guzman raised vague issues concerning the tax consequences of the documents that Ms. Eney

has sent on December 11. Eney Aff. ¶ 22, Ex. 10. Since the parties already had reached agreement on the deal, Ms. Eney immediately disagreed with Ms. Guzman's comments. *Id.* Ex. 11. Having not received substantive comments from Ms. Guzman since she had sent the December 11, 2007 documents, Ms. Eney sent an e-mail to Ms. Guzman on May 12, 2008, confirming the relevant terms of the agreement, and asking for Ms. Guzman's response to the settlement language that Ms. Eney had sent six months previously. Eney Aff. ¶ 22, Ex. 12.

On May 14, 2008, Ms. Guzman responded by saying that she had "Fed Ex'd" the settlement agreement to Ms. Eney, and emphasizing that *"the terms are the same"* as in Ms. Eney's December 11, 2007 draft. *See* Eney Aff. ¶ 23, Ex. 13 (emphasis added).

The final communication from Ms. Guzman was her May 14, 2008 letter, which included a copy of the complaint, without exhibits. Eney Aff. ¶ 24, Ex. 1. Ms. Guzman's letter stated that "I have maintained the settlement terms that *you and I had agreed to in December 2007.*" *Id.* (emphasis added). Ms. Guzman added that "This note will bear *the new terms discussed and agreed upon by the two of us.*" (emphasis added). She also agreed in her letter to the form of note and mortgage that Ms. Eney had submitted on December 11, 2007. *Id.* at 2.

Ms. Guzman's letter, however, attached a document that contained additional terms that the parties had never agreed to, including that the $80,000 [sic] was to be "a forgiven" non-business bad debt, that an additional $20,000 was a "non-business bad debt" that was forgiven, and that Ms. Eney was to enter into a consent judgment for more than $300,000, all of which had no basis, but which would have caused Ms. Eney to incur substantial tax consequences that she never agreed to and could not afford. Eney Aff. ¶ 26, Ex. 1, "Settlement Agreement and Release" at 3-4.

To support its allegations, the Complaint relies in detail on the proposed mortgage and note dated January 2003 that were prepared by Ms. Eney, Complaint ¶¶ 20-30, yet

recognizes that none of those papers were executed, because the parties did not reach agreement on the terms of those documents, Complaint ¶ 6.

Most egregiously, the complaint alleges $296,000 of loans, while the draft 2003 documents that the complaint relies on stated a principal amount due of $170,000. Complaint ¶ 20. This apparently is because, in part, the drafter of the complaint was unaware that Plaintiff's outside counsel had "forgiven" an "$80,000 note . . . in it's [sic] entirety," *see* Eney Aff. Exhibit 1 at 2, and also agreed that the principal amount that Ms. Eney was to pay was $150,000, *id*.[2]

The simple fact is that this complaint never should have been brought.[3] Nonetheless, the terms of the agreement to resolve this dispute between Ms. Eney and the Plaintiff are clear and have been agreed to by the parties. The agreement involves payments of principal solely from granting the Plaintiff an interest as mortgagee in Ms. Eney's home in Larchmont, New York. No formal documents related to the interest have been executed by Ms. Eney.

## ARGUMENT

I. **THE PARTIES HAVE REACHED A BINDING AGREEMENT THAT REQUIRES DISMISSAL OF THE COMPLAINT**

The consequences of the parties' exchanges in 2007 are clear: the parties had an agreement, pursuant to which Ms. Eney would repay Plaintiff $150,000 in 15 years or upon her death or sale of the property, with interest payments of $50.00 per month, and that the terms, set forth in the form of the note and mortgage that Ms. Eney submitted on December 11, 2007, were agreed to. There was no agreement, however, regarding Ms. Guzman's belated attempt to shift tax consequences and other onerous terms to Ms. Eney. Under New York law, a contract exists

---

[2] Although the amount "forgiven" was in fact a gift, outside counsel's statement constitutes a waiver, *see Meachem v. New York Central R. Co.*, 8 N.Y.2d 293, 299 (1960), yet the complaint still includes this sum.

[3] Indeed, Ms. Eney was never served with the complaint, but only received a courtesy copy, without exhibits, along with Exhibit 1 to the Eney Affidavit.

when there is "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Express Indus. & Terminal Corp. v. N.Y. State Dep't of Transp.*, 93 N.Y. 2d 584, 589 (1999). New York courts "look to the basic elements of the offer and acceptance to determine whether there was an objective meeting of the minds sufficient to give rise to a binding and enforceable contract." *Id.* As Judge Marrero of this Court has held,

> Not every misunderstanding between the parties following execution of an agreement could possibly void a contract, since almost any contractual dispute is based on some disappointment of expectations.

*Canada Life Ass. Co. v. Guardian Life Ins. Co. of Am.*, 242 F. Supp. 2d 344, 356 (S.D.N.Y. 2003).

Ms. Guzman's May 14, 2008 letter (Eney Aff. Ex. 1) agrees in writing to the terms of the papers that Ms. Eney sent in December 2007 ("I have maintained the settlement terms that you and I had agreed to in December 2007"). A formal documentation of that agreement was not necessary, because, under New York Law,

> When all essential terms and conditions of an agreement have been set forth in informal written memoranda and all that remains is their translation into a more formal document, such an agreement will be capable of specific performance.

*Brause v. Goldman*, 10 A.D. 2d 328, 332 (1st Dep't 1960). The e-mails between Ms. Eney and Ms. Guzman clearly meet this test.[4]

Ms. Guzman's belated attempt on May 14, 2008 to modify the prior agreement by adding material terms to which Ms. Eney did not agree cannot be used to modify the contract. Under New York law, a contract cannot be modified without the mutual ascent of the parties. *See Beacon Terminal Corp v. Chemprene, Inc.*, 75 A.D. 2d 350, 354, (2d Dep't 1980). In *Louis*

---

[4] During the premotion conference on August 1, 2008, the Court stated that it would need to see a document clearly showing the agreement between the parties. Here, we have two such documents: Exhibits 8 and 1 to the Eney Affidavit.

7

*Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir. 2001), the Second Circuit, applying New York law, held that:

> The existence of . . . [a] modification must be established in the same way as any other contract. *No one will be held to have surrendered or modified any of his contract rights unless he is shown to have assented thereto* in a manner that satisfies the requirements of a valid contract.

*Id.* at 228 (emphasis in original).

The documentary evidence clearly establishes the contract that the parties reached in late November or early December of 2007. Ms. Eney always has been willing to adhere to those terms. Pursuant to Rule 56(b), the complaint therefore should be dismissed.

### II. IF THERE IS NO CONTRACT BETWEEN THE PARTIES, PLAINTIFF'S COMPLAINT MUST BE DISMISSED BASED ON THE STATUTE OF FRAUDS

The parties agree that any money that was to be repaid by Ms. Eney would be repaid through a mortgage on her property, her only material asset, with Plaintiff as the mortgagee. *See* Eney Aff. ¶ 14 and Exs. 6, 7, Complaint ¶¶ 6, 21, and Complaint Ex. 1. There is no writing signed by Ms. Eney, however, that satisfies the statue of frauds provisions in New York General Obligations Law § 5-703. If there is no agreement between the parties, therefore, the complaint must be dismissed in its entirety.

The statute of frauds provides that "[a]n . . . interest in real property . . . cannot be created, granted, assigned, surrendered or declared, unless . . . by a . . . deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same." *Jones v. James*, 37 A.D.3d 543 (2d Dep't 2007) (quoting General Obligations Law § 5-703(1)). The statute's purpose "is to prevent litigation over oral arguments in relation to real property . . . ." *Donahue v. Manufacturers Trust Co.*, 10 Misc. 2d 298, 300 (Sup. Ct. Westchester County 1957). A memorandum will satisfy the statute of frauds only if it states "the entire contract with reasonable certainty, so that the substance thereof will appear from the

writing alone." *Aceste v. Wiebusch*, 74 A.D.2d 810 (2d Dep't 1980). In *Jones v. James*, the cause of action for breach of contract was barred because "there was no deed or conveyance in writing regarding the proposed conveyance." 37 A.D.3d at 543. That is the case here.

The complaint in this action also apparently relies on Plaintiff's designation in the memo section on some of the checks that he sent Ms. Eney as being a "loan." Such a designation does not satisfy the statute of frauds provision in General Obligations Law § 5-703. *See Hudson Contracting Corp. v. Paliotto*, 14 Misc. 2d 492, 492-93 (Sup. Ct. Suffolk County 1958) (plaintiff's designation on a check of a notation that it was for "1/3 interest for Property to be obtained in Oakdale, Suffolk County from the County of Suffolk as agreed," was insufficient to satisfy the statute of frauds).

If the Court finds that there was no meeting of the minds concerning the contract between the parties described above, then the complaint must be dismissed under the New York General Obligations Law § 5-703.

During the premotion conference on August 1, 2008, the Court noted that, if the statute of frauds applied, Plaintiff still might have a cause of action for rescission of the "loans." First, Plaintiff would have to prove (and he cannot) that when he agreed to make the advances, they were loans, not gifts. *See First Am. Bank of New York v. Sloane*, 235 A.D.2d 656, 657 (3d Dep't 1997) (notwithstanding existence of a mortgage, advances of hundreds of thousands of dollars to a "favorite nephew" held to be a gift, not loans secured by a mortgage); *see also Fedun v. Fedun*, 228 A.D.2d 907 (3d Dep't 1996) (deed conveying property in return for execution of promissory note held to be a gift, when promissory note was signed as an accommodation to plaintiff for plaintiff's tax purposes, and plaintiff knew defendants could not make payments under promissory note).

Second, as the New York Court of Appeals has held, in order to maintain a rescission action, Plaintiff would have to establish the terms of the loan agreement that otherwise would be "valid and binding." *Mercantile & General Reinsurance Co. v. Colonial Assurance Co.*, 82 N.Y.2d 248, 253 (1993). Since the terms of the agreement violate the statute of frauds, Plaintiff could not meet his burden of establishing an otherwise valid agreement subject to rescission.

### III.  THE SPECIFIC CLAIMS ALLEGED IN THE COMPLAINT HAVE NO BASIS IN LAW

The "Breach of Implied Contract" and "Unjust Enrichment" claims (First and Second Causes of Action) cannot be sustained under New York law. Because there is a valid enforceable contract, the implied contract claim must be dismissed. *See Clark-Fitzpatrick, Inc. v. Long Island R. R. Co.*, 70 N.Y.2d 382, 388 (1987). Similarly, to find unjust enrichment, the Court would have to find a confidential or fiduciary relationship, a promise, monies transferred in reliance thereon, a breach of the promise, and unjust enrichment. *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 177 (1st Dep't 1987). Since Ms. Eney has not breached her promise to repay Plaintiff, but instead, always has agreed to adhere to the contract that she reached with him, this claim must fail.

The "Fraud" claim (Third Cause of Action) must fail because "a cause of action for Fraud does not arise when the only alleged fraud relates to a breach of contract." *Metropolitan Transp. Auth. v. Triumph Advertising Productions, Inc.*, 116 A.D.2d 526, 527 (1st Dep't 1986). Since the Plaintiff does not seek special damages apart from the contract measure of damages, the fraud action is "redundant." *Id.* at 527-28; *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996).

The "Conversion" claim (Fourth Cause of Action) must fail because the conversion action "cannot be predicated upon an equitable interest or a mere breach of contract obligation." *Hutchings v. Torrey*, 203 Misc. 1038, 1040 (Sup. Ct. Broome County 1952). Moreover, since

Plaintiff voluntarily gave the money to Ms. Eney, the conversion action will not lie. *MacDonnell v. PHH Mortgage Corp.*, 45 A.D.3d 537 (2d Dep't 2007). Finally, the claim for "Breach of Implied Covenant of Good Faith and Fair Dealing" (Fifth Cause of Action) also must fail because it is redundant of the breach of contact claims and is "intrinsically tied to the damages allegedly resulting from a breach of that contract." *Canstar v. J.A. Jones Constr. Co.*, 212 A.D.2d 452, 453 (1st Dep't 1995).

## CONCLUSION

This complaint should never have been brought. Nonetheless, for the reasons set forth above, it should be dismissed in its entirety, with costs.

Dated: August 22, 2008

Respectfully submitted,

*/s/ Joseph F. Fields*

Joseph F. Fields, (JF 0040)
Edward Tessler (ET 4503)
David L. Elkind (DE 5559)
DICKSTEIN SHAPIRO LLP
1177 Avenue of the Americas
New York, NY 10036-2714
(212) 277-6500 (Telephone)
(212) 277-6501 (Facsimile)