Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
David J. Lorenz (DL 3072)
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013
Telephone: (212) 226-5054
Facsimile:   (212) 226-5085


Attorneys for Plaintiff
Allan S. Larson


## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – x

ALLAN S. LARSON                                        :

                Plaintiff,        :     **CASE NO. 08 CIV. 3513 (DC)(FM)**

     v.                                        :     **DECLARATION OF ALLAN S. LARSON**

                             :

JAINE ELKIND ENEY                                      **ECF**

                Defendant.        :

                             :

                             :

– – – – – – – – – – – – – – – – – – – – – – – – – – – x


## DECLARATION OF ALLAN S. LARSON IN SUPPORT OF
## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

ALLAN S. LARSON hereby declares:

1.　　　Beginning in or prior to May of 2000, Defendant Jaine Elkind Eney

(hereinafter referred to as "Defendant") periodically requested funds from me.  Between May

2000 and October 2003, Defendant requested funds from me on at least nine (9) occasions.  In

total, I provided at least $296,610.80 to Defendant at her request and for her benefit.

2.      During this time, Defendant requested funds on seven (7) occasions to pay for legal services, living expenses and for her general use.  In response to Defendant's requests, I sent or personally delivered seven (7) personal checks to Defendant and/or individuals identified by Defendant.  Based on previous occasions, it was my understanding that an implicit loan agreement existed between Defendant and me with regard to each of these checks.  Consistent with my understanding of our agreements, I marked each check as a "loan" in the memo section.  At Defendant's request, two (2) of these checks were payable directly to Defendant's attorneys in payment of outstanding bills.

3.      In September 2002, Defendant was negotiating her divorce and needed additional funds to complete a settlement.  I provided the needed funds to Defendant by wire transfer.  No notation of the word "loan" appears on the documentation of the wire transfer, but it was my understanding of our agreement that this wire transfer was a loan.

4.      Also in September 2002, I agreed to loan funds to Defendant to pay off a mortgage on her residence, and Defendant agreed to repay this loan with interest.  I provided these funds to Defendant by wire transfer.  No notation of the word "loan" appears on the documentation of the wire transfer, but it was my understanding of our agreement that this wire transfer was a loan.

5.      At the time I made the loans, Defendant and I did not specify exact repayment terms.  Beginning in about October 2002, I attempted to finalize mutually-agreeable repayment terms with Defendant, and Defendant was repeatedly asked to begin repaying the loans as soon as possible.  These communications with Defendant were handled by my attorneys.

6.      In January 2003, Defendant personally drafted and sent proposed loan agreements (hereinafter referred to as "the January 2003 proposed loan agreements") to my attorneys in an effort to finalize repayment terms for the loans.  From that time to the present, my attorneys and Defendant have discussed and exchanged various proposed loan repayment agreements, with changes in the proposed terms by both parties reflecting ongoing negotiations. However, the communications between my attorneys and Defendant consistently reflect that the funds I sent to Defendant were loans.  For example, in the cover letter accompanying Defendant's initial January 2003 proposed loan agreements, Defendant admits that the funds I sent to her were loans.  (A true and correct copy of a letter dated January 16, 2003 from Defendant to one of my attorneys, Denise Guzman, is attached hereto as Exhibit A).

7.      The January 2003 proposed loan agreements prepared by Defendant included an unsecured note, a secured note and a mortgage.  The secured note and mortgage proposed to secure a portion of my loans to Defendant by using Defendant's residence as collateral. However, Defendant created these documents – and unilaterally suggested a mortgage agreement – years after the majority of the original loan agreements had already been agreed to and made. At the time I made each loan, my only concern was for the immediate well being of Defendant's minor children.  At no time did I request that Defendant's residence be used as collateral for the loans or that Defendant draft any loan agreements to include a mortgage on Defendant's residence.  To the best of my understanding, Defendant is a practicing licensed real property attorney.

8.      Tax issues relating to my loans to Defendant have been, and remain, in dispute. In particular, my attorneys notified Defendant as early as May 2003 that tax issues implicated by the repayment terms proposed by Defendant were of concern to me and would not be acceptable.

9.      In emails sent to my attorneys in November 2007, Defendant indicated that she was working on a proposed settlement agreement with a tax attorney, which, in my understanding, was for the purpose of addressing the tax liability issues that I had been raising since 2003.  (True and correct copies of emails dated November 5, 8, 28 and 29, 2007 from Defendant to one of my attorneys, Denise Guzman, are attached hereto as Exhibits B, C, D and E, respectively).

10.      When Defendant subsequently put her proposal in writing and sent it to my attorneys in December 2007 (Eney Affidavit at Exh. 9), the treatment of tax issues in the December 2007 proposed settlement agreement was unacceptable to me, as made clear to Defendant by my attorneys.  (A true and correct copy of an email dated January 2, 2008 from my attorney, Denise Guzman, to Defendant is attached hereto as Exhibit F).  Consequently, I did not agree to Defendant's December 2007 proposed settlement agreement.

11.      Instead, my attorneys prepared a counter-proposal, which included a proposed treatment of the associated tax issues.  (A true and correct copy of a letter with attachments dated May 14, 2008 from my attorney, Denise Guzman, to Defendant is attached hereto as Exhibit G).  Defendant rejected the counter-proposal.

12.      Defendant has not repaid any of the $296,610.80 in loans that I made to her despite repeated requests that she do so.

I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

Date: _Sept 5, 2008_          By: _____
                                  Allan S. Larson

5

# EXHIBIT A

**JAINE ELKIND ENEY, ESQ.**
**9 KILMER ROAD**
**LARCHMONT, NEW YORK 10538**
Phone (914) 834-6661  Fax (914) 834-9184

January 16, 2003

Avv. Denise M. Guzman
Artiano, Guzman & Toomey, LLP
3828 Carson Street, Suite 102
Torrance, California 90503-6713

Dear Denise:

Enclosed is a draft of the Mortgage Note, Mortgage and Note for my loan transaction with Al. Please call me to discuss the transaction before you review all of the enclosed documents.

Cordially,

Avv. Jaine Elkind Eney

# EXHIBIT B

From: JALEL@aol.com
Subject: **(no subject)**
Date: November 5, 2007 5:34:08 AM PST
To: dguzman@guzmanlou.com

Denise:
I hope your closing went well..or at least closed!!
I spoke to the tax guy.Give me a call when you can talk..
I will be in mst of today...leaving at 3 to take lizzie to pennsylvania for an interview tomorow, then in the rest of the week
Jaine

See what's new at AOL.com and Make AOL Your Homepage.

# EXHIBIT C

From:  JALEL@aol.com
Subject: **(no subject)**
Date:  November 8, 2007 6:18:40 AM PST
To:  dguzman@guzmanlou.com

Hi Denise:
I am glad to hear that your closing finally happened...you must be exhausted (I call it "post closing head").
I am sorry that I was out when you were able to return my call. I am actually meeting with the tax atty today. Hopefully
we will be able to speak later today to move this deal off the dime and wrap it up..wouldn't that be a nice present for
both of us?!
Jaine

See what's new at AOL.com and Make AOL Your Homepage.

# EXHIBIT D

From: JALEL@aol.com
Subject: **(no subject)**
Date: November 28, 2007 8:26:20 AM PST
To: dguzman@guzmanlou.com

Denise:
I just want to keep you apprised on where things stand. My tax attorney has been on vacation. He returned to the office today. I am setting up a meeting with him and will let you know as soon as I have spoken with him.
Hope you had a nice Thanksgiving
Jaine

Check out AOL Money & Finance's list of the hottest products and top money wasters of 2007.

# EXHIBIT E

From: JALEL@aol.com
Subject: **(no subject)**
Date: November 29, 2007 5:23:09 PM PST
To: dguzman@guzmanlou.com

Hi Denise:
I spoke with my tax attorney today. We will be sending you a proposed settlement agreement soon.
Jaine

Check out AOL Money & Finance's list of the hottest products and top money wasters of 2007.

# EXHIBIT F

From: Denise Guzman <dguzman@agattys.com>
Subject: **Settlement Agreement**
Date: January 2, 2008 6:02:45 PM PST
To: Jaine Eney <JALEL@aol.com>

Jaine,
I had several issues with the language in your settlement agreement. You had represented that your tax attorney would be working on a settlement agreement that was favorable to both parties regarding the tax consequences of this settlement. I did not find that to be the case. We now have our tax attorney working on the structure for the settlement agreement and suggested language.

I will contact you as soon as I have something additional to discuss with you.

Denise

**PLEASE NOTE MY _NEWEST_ EMAIL ADDRESS:**
dguzman@guzmanlou.com

DENISE M. GUZMAN
GUZMAN & LOU, LLP
3828 Carson St., Ste 102
Torrance, Ca. 90503
310. 543-1240 Tel
310. 543-9850 Fax

ATTORNEY-CLIENT PRIVILEGE / WORK PRODUCT: This message and any accompanying documents is for the personal and exclusive use of the recipient(s) named above. It contains confidential information from the law offices of GUZMAN & LOU, LLP. If you have received this transmission and are not the IDENTIFIED RECIPIENT(S) OR HIS/HER AGENT, please be advised that any disclosure, use, review, copying, selling, dissemination publication or distribution of this transmission is unauthorized and prohibited.

IF YOU HAVE RECEIVED THIS TRANSMISSION AND ARE NOT THE IDENTIFIED RECIPIENT(S) OR HIS/HER AGENT, PLEASE NOTIFY US IMMEDIATELY BY TELEPHONE AND DELETE THIS TRANSMISSION.

IRS CIRCULAR 230 DISCLOSURE: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE IRS, WE INFORM YOU THAT ANY TAX ADVICE CONTAINED IN THIS COMMUNICATION (INCLUDING ANY ATTACHMENTS) WAS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, FOR THE PURPOSE OF (i) AVOIDING TAX-RELATED PENALTIES UNDER FEDERAL, STATE OR LOCAL TAX LAW OR (ii) PROMOTING, MARKETING OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR MATTER ADDRESSED HEREIN.

# EXHIBIT G

**Guzman & Lou, LLP**

ATTORNEYS AT LAW

May 14, 2008

**Via Federal Express**

Jaine Eney
9 Kilmer Road
Larchmont, NY 10538

Re:     *Larson/Eney Settlement Agreement*
*Our File No: B224.13.2*

Dear Jaine,

As you know we engaged tax attorneys to review the Settlement Agreement prepared by your tax attorney. Unfortunately, they differ greatly with how the settlement needs to be structured for tax purposes. I have maintained the settlement terms that you and I had agreed to in December of 2007, however, we have greatly altered the structure of the proposed settlement agreement submitted by your tax counsel. Enclosed you will find our proposed Settlement Agreement.

We have based the structure of our proposed settlement agreement on the research completed by our tax attorneys. According to their research, whether a dispute is resolved through litigation or settlement, the nature of the underlying action determines the proper tax consequences of the payment. Getty v. Commissioner, 913 F.2d 1486 (9th Cir. 1990), revg, 91 T.C. 160 (1988); Tribune Publishing Co. v. United States, 836 F.2d 1176, 1177 (9th Cir. 1988). The taxability of a settlement is controlled by the nature of the litigation. Raytheon Production Corp. v. Commissioner, 144 F.2d 110, 114 (1st Cir. 1944), affg. 1 T.C. 952 (1943); Victor E. Gidwitz Family Trust v. Commissioner, 61 T.C. 664, 673 (1974). The nature of the litigation is, in turn, controlled by the origin and character of the claim which gave rise to the litigation. United States v. Gilmore, 372 U.S. 39 (1963); Victor E. Gidwitz Family Trust v. Commissioner, supra.

Therefore, we need to look to the factual situation in each instance that money was transferred to you and any evidence by either party of the intent behind the transfers. We cannot randomly consider some transactions as gifts and others as loans for purposes of settlement without the factual support required to prove they warrant these classifications. If the IRS were ever to audit either you or Al, they would reconstruct the transactions by reviewing all correspondence and documents related to each incident. It is our tax

attorney's opinion that out of all the money transferred to you, the two notes that you sent in January of 2003 would most likely be the starting point of their reconstruction of the events and thus was the starting point for the structure of our settlement.

The facts as have been related to me by you and Al are the basis of the Recitals. Our settlement offer is in the form of the two notes that you provided this office in January of 2003. The $80,000 note has been forgiven in it's entirety and Mr. Larson will accept the tax consequences resulting from this action. You will note that we are agreeing not to report this forgiveness as a personal bad debt and we see no reporting requirement involved in issuing you a 1099 for the amount forgiven.

The $170,000 note has been reduced to $150,000. This note will bear the new terms discussed and agreed upon by the two of us. Again, Mr. Larson will accept the tax consequences for the difference of the stated interest rate and the Applicable Federal Rate that will be imputed to him each year. We will accept the proposed forms for the mortgage and note as submitted by you on December 7, 2007. Our references to Exhibit "A" and "B" are to those notes.

In reconstructing the $170,000 note it was clear that you had encompassed the $31,610 from the previous year, the anticipated $120,000 and the $20,000 in 2003 and simply rounded down the number. The remaining balances are treated as gifts and the factual scenario surrounding each transfer can clearly support these classifications. You will note that Mr. Larson will have tax consequences for all gifts over $10,000 in any given year and accepts those treatments.

It is only fair that each party accepts their own tax consequences and we have proposed such a term in the settlement agreement. I had previously explained to you that paragraph 4 of the settlement agreement proposed by your attorney was simply not acceptable. In the spirit of settlement each party should accept responsibility for any future tax consequence they each may have as a result of this settlement.

To date, we have not been provided any proof of your inability to pay. We have accepted up until this point your verbal statements as to your dire financial state. However, for purposes of IRS requirements and as a condition of Mr. Larson agreeing to compromise on the amount that he believes he is owed and the reduced interest rate, we will require that proof be provided as defined in the settlement agreement.

We have engaged New York counsel to review our proposed Settlement Agreement and to finalize this matter with you. You can contact either Mr. Robert Powley and/or Mr. James Gibson of Powley & Gibson, P.C. Their contact information is as follows:

Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, NY 10013
Ph: 212-226-5054 Fax: 212-226-5085

This offer shall remain open until May 30, 2008. All future communication needs to be addressed to either Mr. Powley or Mr. Gibson. They will keep me apprised of the status of this case. I again ask that you do not directly communicate with Al, Nan, or Julie Larson regarding this matter.

In light of the length of time that this matter has gone unresolved, we have prepared and filed a lawsuit in this matter in the state of New York. Please note that we do not intend to effectuate service on the Complaint unless the Settlement Agreement is not approved and executed by you on or before May 30, 2008. I have enclosed a courtesy copy of the complaint sans Exhibits. I strongly urge you to contact Mr. Powley or Mr. Gibson as to your intent to go forward with the Settlement.

Very truly yours,

Denise M. Guzman

Enclosures

cc: Al Larson
    Robert Powley
    James Gibson

JS 44C/SDNY
REV. 12/2005

## CIVIL COVER SHEET

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for use of the Clerk of Court for the purpose of initiating the civil docket sheet.

| PLAINTIFFS | DEFENDANTS |
|---|---|
| Allan S. Larson | Jaine Elkind Eney |

| ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER | ATTORNEYS (IF KNOWN) |
|---|---|
| Powley&Gibson, P.C., 304 Hudson Street, 2nd Fl. NY, NY 10013,212-226-5054 | Unknown |

APR 1 0 2008

CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE)

Breach of Implied Contract, Unjust Enrichment, Fraud, Conversion and Breach of Implied Covenant of Good Faith and Fair Dealing

Has this or a similar case been previously filed in SDNY at any time? No ☒ Yes? ☐   Judge Previously Assigned

If yes, was this case Vol.☐ Invol. ☐ Dismissed. No☐ Yes ☐   If yes, give date _____ & Case No. _____

*(PLACE AN [x] IN ONE BOX ONLY)*              NATURE OF SUIT

ACTIONS UNDER STATUTES

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| | PERSONAL INJURY | PERSONAL INJURY | [ ] 610 AGRICULTURE | [ ] 422 APPEAL 28 USC 158 | [ ] 400 STATE REAPPORTIONMENT |
| [ ] 110 INSURANCE | [ ] 310 AIRPLANE | [ ] 362 PERSONAL INJURY - MED MALPRACTICE | [ ] 620 FOOD & DRUG | [ ] 423 WITHDRAWAL 28 USC 157 | [ ] 410 ANTITRUST |
| [ ] 120 MARINE | [ ] 315 AIRPLANE PRODUCT LIABILITY | [ ] 365 PERSONAL INJURY PRODUCT LIABILITY | [ ] 625 DRUG RELATED SEIZURE OF PROPERTY 21 USC 881 | | [ ] 430 BANKS & BANKING |
| [ ] 130 MILLER ACT | [ ] 320 ASSAULT, LIBEL & SLANDER | [ ] 368 ASBESTOS PERSONAL INJURY PRODUCT LIABILITY | [ ] 630 LIQUOR LAWS | PROPERTY RIGHTS | [ ] 450 COMMERCE/ICC RATES/ETC. |
| [ ] 140 NEGOTIABLE INSTRUMENT | [ ] 330 FEDERAL EMPLOYERS' LIABILITY | | [ ] 640 RR & TRUCK | [ ] 820 COPYRIGHTS | [ ] 460 DEPORTATION |
| [ ] 150 RECOVERY OF OVERPAYMENT & ENFORCEMENT OF JUDGMENT | [ ] 340 MARINE | PERSONAL PROPERTY | [ ] 650 AIRLINE REGS | [ ] 830 PATENT | [ ] 470 RACKETEER INFLU- ENCED & CORRUPT ORGANIZATION ACT (RICO) |
| | [ ] 345 MARINE PRODUCT LIABILITY | [ ] 370 OTHER FRAUD | [ ] 660 OCCUPATIONAL SAFETY/HEALTH | [ ] 840 TRADEMARK | |
| [ ] 151 MEDICARE ACT | [ ] 350 MOTOR VEHICLE | [ ] 371 TRUTH IN LENDING | [ ] 690 OTHER | | [ ] 480 CONSUMER CREDIT |
| [ ] 152 RECOVERY OF DEFAULTED STUDENT LOANS (EXCL VETERANS) | [ ] 355 MOTOR VEHICLE PRODUCT LIABILITY | [ ] 380 OTHER PERSONAL PROPERTY DAMAGE | LABOR | SOCIAL SECURITY | [ ] 490 CABLE/SATELLITE TV |
| | [ ] 360 OTHER PERSONAL INJURY | [ ] 385 PROPERTY DAMAGE PRODUCT LIABILITY | [ ] 710 FAIR LABOR STANDARDS ACT | [ ] 861 MIA (1395FF) | [ ] 810 SELECTIVE SERVICE |
| [ ] 153 RECOVERY OF OVERPAYMENT OF VETERANS BENEFITS | | | [ ] 720 LABOR/MGMT RELATIONS | [ ] 862 BLACK LUNG (923) | [ ] 850 SECURITIES/ COMMODITIES/ EXCHANGE |
| [ ] 160 STOCKHOLDERS SUITS | | | [ ] 730 LABOR/MGMT REPORTING & DISCLOSURE ACT | [ ] 863 DIWC (405(g)) | [ ] 875 CUSTOMER CHALLENGE 12 USC 3410 |
| [x] 190 OTHER CONTRACT | | | | [ ] 864 SSID TITLE XVI | [ ] 891 AGRICULTURE ACTS |
| [ ] 195 CONTRACT PRODUCT LIABILITY | | | [ ] 740 RAILWAY LABOR ACT | [ ] 865 RSI (405(g)) | [ ] 892 ECONOMIC STABILIZATION ACT |
| [ ] 196 FRANCHISE | | | [ ] 790 OTHER LABOR LITIGATION | FEDERAL TAX SUITS | [ ] 893 ENVIRONMENTAL MATTERS |
| | ACTIONS UNDER STATUTES | | [ ] 791 EMPL RET INC SECURITY ACT | [ ] 870 TAXES | [ ] 894 ENERGY ALLOCATION ACT |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | | [ ] 871 IRS-THIRD PARTY 20 USC 7609 | [ ] 895 FREEDOM OF INFORMATION ACT |
| [ ] 210 LAND CONDEMNATION | [ ] 441 VOTING | [ ] 510 MOTIONS TO VACATE SENTENCE 28 USC 2255 | | | [ ] 900 APPEAL OF FEE DETERMINATION UNDER EQUAL ACCESS TO JUSTICE |
| [ ] 220 FORECLOSURE | [ ] 442 EMPLOYMENT | | | | |
| [ ] 230 RENT LEASE & EJECTMENT | [ ] 443 HOUSING ACCOMMODATIONS | [ ] 530 HABEAS CORPUS | | | [ ] 950 CONSTITUTIONALITY OF STATE STATUTES |
| [ ] 240 TORTS TO LAND | [ ] 444 WELFARE | [ ] 535 DEATH PENALTY | | | [ ] 890 OTHER STATUTORY ACTIONS |
| [ ] 245 TORT PRODUCT LIABILITY | [ ] 445 AMERICANS WITH DISABILITIES - EMPLOYMENT | [ ] 540 MANDAMUS & OTHER | | | |
| [ ] 290 ALL OTHER REAL PROPERTY | [ ] 446 AMERICANS WITH DISABILITIES -OTHER | [ ] 550 CIVIL RIGHTS | | | |
| | [ ] 440 OTHER CIVIL RIGHTS | [ ] 555 PRISON CONDITION | | | |

*Check if demanded in complaint:*

CHECK IF THIS IS A CLASS ACTION
UNDER F.R.C.P. 23

DO YOU CLAIM THIS CASE IS RELATED TO A CIVIL CASE NOW PENDING IN S.D.N.Y.?
IF SO, STATE:

DEMAND $ _____ OTHER _____   JUDGE _____ DOCKET NUMBER _____

*Check YES only if demanded in complaint*
JURY DEMAND: ☒ YES ☐ NO        NOTE: Please submit at the time of filing an explanation of why cases are deemed related.

(SEE REVERSE)

| *(PLACE AN  x  IN ONE BOX ONLY)* | | ORIGIN | | | | | |
|---|---|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2a. Removed from State Court<br>☐ 2b. Removed from State Court<br>AND at least one party is a pro se litigant | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from (Specify District) | ☐ 6 Multidistrict Litigation | ☐ 7 Appeal to District Judge from Magistrate Judge Judgment | |

| *(PLACE AN  x  IN ONE BOX ONLY)* | BASIS OF JURISDICTION | | | *IF DIVERSITY, INDICATE* |
|---|---|---|---|---|
| ☐ 1 U.S. PLAINTIFF | ☐ 2 U.S. DEFENDANT | ☐ 3 FEDERAL QUESTION (U.S. NOT A PARTY) | ☒ 4 DIVERSITY | *CITIZENSHIP BELOW.*<br>*(28 USC 1332, 1441)* |

CITIZENSHIP OF PRINCIPAL PARTIES (FOR DIVERSITY CASES ONLY)

(Place an [X] in one box for Plaintiff and one box for Defendant)

| | PTF  DEF | | PTF  DEF | | PTF  DEF |
|---|---|---|---|---|---|
| CITIZEN OF THIS STATE | [ ] 1  [☒] 1 | CITIZEN OR SUBJECT OF A FOREIGN COUNTRY | [ ] 3  [ ] 3 | INCORPORATED and PRINCIPAL PLACE OF BUSINESS IN ANOTHER STATE | [ ] 5  [ ] 5 |
| CITIZEN OF ANOTHER STATE | [☒] 2  [ ] 2 | INCORPORATED or PRINCIPAL PLACE OF BUSINESS IN THIS STATE | [ ] 4  [ ] 4 | FOREIGN NATION | [ ] 6  [ ] 6 |

PLAINTIFF(S) ADDRESS(ES) AND COUNTY(IES)

Allan S. Larson
13603 Marina Pointe Drive
Marina del Rey, California 90292
Los Angeles County

DEFENDANT(S) ADDRESS(ES) AND COUNTY(IES)

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York  10538
Westchester County

DEFENDANT(S) ADDRESS UNKNOWN
REPRESENTATION IS HEREBY MADE THAT, AT THIS TIME, I HAVE BEEN UNABLE, WITH REASONABLE DILIGENCE, TO ASCERTAIN THE RESIDENCE ADDRESSES OF THE FOLLOWING DEFENDANTS:

Check one:  THIS ACTION SHOULD BE ASSIGNED TO:   ☐ WHITE PLAINS    ☒ FOLEY SQUARE
(DO NOT check either box if this a PRISONER PETITION.)

DATE ʼ/ɪₒ/ₒ₈    SIGNATURE OF ATTORNEY OF RECORD

RECEIPT #

ADMITTED TO PRACTICE IN THIS DISTRICT
[ ] NO
[x] YES (DATE ADMITTED Mo. March  Yr. 2000 )
Attorney Bar Code # DL 3072

Magistrate Judge is to be designated by the Clerk of the Court.

Magistrate Judge _____ is so Designated.

J Michael McMahon, Clerk of Court by _____ MAAS _____ Clerk, DATED _____.

UNITED STATES DISTRICT COURT (NEW YORK SOUTHERN)

AO 440 (Rev. 8/01) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

| Southern | District of | New York |

Allan S. Larson

### SUMMONS IN A CIVIL ACTION

V.

Jaine Elkind Eney

CASE NUMBER:

# 08 CV 03513

TO: (Name and address of Defendant)

Jaine Elkind Eney
9 Kilmer Road
Larchmont, New York 10538

**YOU ARE HEREBY SUMMONED** and required to serve on PLAINTIFF'S ATTORNEY (name and address)

Robert L. Powley
James M. Gibson
David J. Lorenz
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013

an answer to the complaint which is served on you with this summons, within _____ twenty (20) _____ days after service of this summons on you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. Any answer that you serve on the parties to this action must be filed with the Clerk of this Court within a reasonable period of time after service.

J. MICHAEL McMAHON                                          APR 1 0 2008

CLERK                                                              DATE

(By) DEPUTY CLERK

AO 440 (Rev. 8/01) Summons in a Civil Action

## RETURN OF SERVICE

| | DATE |
|---|---|
| Service of the Summons and complaint was made by me[1] | |

| | TITLE |
|---|---|
| NAME OF SERVER *(PRINT)* | |

*Check one box below to indicate appropriate method of service*

☐ Served personally upon the defendant. Place where served:

☐ Left copies thereof at the defendant's dwelling house or usual place of abode with a person of suitable age and discretion then residing therein.

Name of person with whom the summons and complaint were left:

☐ Returned unexecuted:

☐ Other (specify):

## STATEMENT OF SERVICE FEES

| TRAVEL | SERVICES | TOTAL $0.00 |
|---|---|---|

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Return of Service and Statement of Service Fees is true and correct.

Executed on _____         _____
                        Date                            *Signature of Server*


                                           _____
                                           *Address of Server*

(1) As to who may serve a summons see Rule 4 of the Federal Rules of Civil Procedure.

Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
David J. Lorenz (DL 3072)
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013
Telephone: (212) 226-5054
Facsimile:  (212) 226-5085

Attorneys for Plaintiff
Allan S. Larson



IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – x

ALLAN S. LARSON                             :

             Plaintiff,                      :    **CASE NO.**

        v.                                   :    **COMPLAINT FOR BREACH OF**
                                                  **CONTRACT, UNJUST**
                                             :    **ENRICHMENT, FRAUD,**
JAINE ELKIND ENEY                                 **CONVERSION AND BREACH OF**
                                             :    **IMPLIED COVENANT OF GOOD**
             Defendant.                           **FAITH AND FAIR DEALING**
                                             :
                                                  **ECF**
                                             :

– – – – – – – – – – – – – – – – – – – – – – – – – x


        Plaintiff Allan S. Larson (hereinafter referred to as "Plaintiff") by his attorneys

complains of defendant Jaine Elkind Eney (hereinafter referred to as "Defendant") and alleges

as follows:

<u>THE PARTIES</u>

1.        Plaintiff is a citizen of the State of California with an address at 13603 Marina Pointe

Drive, Marina del Rey, California 90292.

2.      On information and belief, Defendant is a citizen of the State of New York with an address at 9 Kilmer Road, Larchmont, New York 10538.

## JURISDICTION AND VENUE

3.      The court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(1).  Diversity of citizenship is present between Plaintiff and Defendant.  The matter in controversy exceeds $75,000 in value, exclusive of interest and costs.

4.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(a)(2).  Property at issue in this action is located within this district, a substantial part of the events giving rise to Plaintiff's claims against Defendant occurred in this district and, upon information and belief, a substantial portion of the money Plaintiff seeks from Defendant was used to satisfy a mortgage owing on Defendant's property, to pay for legal services and to pay living expenses, all of which took place in this district.

## NATURE OF THE CASE

5.      This action arises out of Defendant's failure to repay funds loaned to Defendant by Plaintiff.  On several occasions, Plaintiff made loans to Defendant totaling $296,610.80 ("the Subject Loans").  On information and belief, Defendant used the monies from the Subject Loans for the purpose of satisfying mortgage obligations and other interests applicable to Defendant's residence, as well as paying for legal services received by Defendant and for general living expenses.

6.      Prior to the Subject Loans being made, Defendant orally agreed to repay the Subject Loans with interest.  The parties' intent that the Subject Loans would be repaid to Plaintiff is clearly manifested by certain writings, including a Mortgage, Mortgage Note and Note dated January 2003 that were prepared by Defendant and sent to Plaintiff.  The Mortgage,

Mortgage Note and Note dated January 2003 were not executed as the parties were not able to reach agreement upon an interest rate for repayment. True and correct copies of the January 2003 Mortgage, January 2003 Mortgage Note and January 2003 Note are attached as Exhibits 1, 2 and 3, respectively.

7.    To date, Defendant has not repaid any of the Subject Loans despite repeated requests from Plaintiff do so.

## BACKGROUND FACTS

### The Subject Loans

8.    On or about May 26, 2000, Plaintiff sent to Defendant a loan in the amount of $10,000.00 by check bearing serial number 1114. Plaintiff marked said check as "loan" in the memo section. A true and correct copy of the check bearing serial number 1114 is attached as Exhibit 4.

9.    On or about August 5, 2002, Plaintiff sent to Defendant a loan in the amount of $6,500.00 by check bearing serial number 1661. Plaintiff marked said check as "loan" in the memo section. A true and correct copy of the check bearing serial number 1661 is attached as Exhibit 5.

10.    On or about October 8, 2002, Plaintiff sent to Defendant a loan in the amount of $100,000.00 by wire transfer. A true and correct copy of Plaintiff's bank statement showing the October 8, 2002 wire transfer is attached as Exhibit 6.

11.    On or about October 29, 2002, Plaintiff made a loan to Defendant in the amount of $10,000.00 by check bearing serial number 1519. At Defendant's request and pursuant to the parties' agreement, Plaintiff made this check payable to Richard Danzig, Esq. on Defendant's behalf. Upon information and belief, said loan was used for Defendant's benefit to pay for

legal services rendered to Defendant. A true and correct copy of the check bearing serial number 1519 is attached as Exhibit 7.

12.     On or about November 10, 2002, Plaintiff made a loan to Defendant in the amount of $10,000.00 by check bearing serial number 1531. At Defendant's request and pursuant to the parties' agreement, Plaintiff made this check payable to Kurzman Eisenberg Corbin & Lever, LLP on Defendant's behalf. Upon information and belief, said loan was used for Defendant's benefit to pay for legal services rendered to Defendant. A true and correct copy of the check bearing serial number 1531 is attached as Exhibit 8.

13.     On or about November 10, 2002, Plaintiff made a loan to Defendant in the amount of $5,110.80 by check bearing serial number 1532. At Defendant's request and pursuant to the parties' agreement, Plaintiff made this check payable to Richard Danzig, Esq. on Defendant's behalf. Upon information and belief, said loan was used for Defendant's benefit to pay for legal services rendered to Defendant. A true and correct copy of the check bearing serial number 1532 is attached as Exhibit 9.

14.     On or about April 14, 2003, Plaintiff sent to Defendant a loan in the amount of $120,000.00 by wire transfer. A true and correct copy of Plaintiff's bank statement showing the April 14, 2003 wire transfer is attached as Exhibit 10.

15.     On or about September 3, 2003, Plaintiff sent to Defendant a loan in the amount of $15,000.00 by check bearing serial number 1909. Plaintiff marked said check as "loan" in the memo section. A true and correct copy of the check bearing serial number 1909 is attached as Exhibit 11.

16.     On or about October 12, 2003, Plaintiff sent to Defendant a loan in the amount of $20,000.00 by check bearing serial number 1927. Plaintiff marked said check as "loan" in

the memo section. A true and correct copy of the check bearing serial number 1927 is attached as Exhibit 12.

17.     The foregoing loans sent to Defendant, totaling $296,610.80, constitute the principal of the Subject Loans from Plaintiff to Defendant.

### The Parties' Agreement

18.     On information and belief, on or before May 26, 2000, Plaintiff orally agreed to provide the Subject Loans to Defendant, with the purpose of enabling Defendant to satisfy an existing bank mortgage owing on Defendant's residence located at 9 Kilmer Road, Larchmont, New York 10538 ("the Subject Property"), to "buy out" an interest in the Subject Property owned by Defendant's former spouse, to pay for legal services received by Defendant and to defray Defendant's living expenses. On information and belief, Defendant agreed to repay the Subject Loans in the same manner as Defendant was repaying the existing bank mortgage, but at an annual interest rate to be negotiated by the parties ("the Agreement"). In part, the purpose of the Agreement was to reduce the financial burden of the bank mortgage on Defendant. A true and correct copy of the Description of the Subject Property is attached as Exhibit 13.

19.     From about October 2002 to the present, Plaintiff, through his attorneys Artiano, Guzman & Toomey, LLP ("AGT") (now Guzman & Lou, LLP ("G&L")), regularly and frequently contacted Defendant by letter and telephone to request that Defendant begin repaying the Subject Loans pursuant to the Agreement. In the course of said contacts, Plaintiff provided notice that Defendant was in continuous default in repaying the Subject Loans. During said discussions from about October 2002 to as late as about March 2007, the parties negotiated specific terms of the Agreement. During said discussions, Defendant did

5

not dispute its obligation under the Agreement to repay the Subject Loans with interest.

20.    On or about January 16, 2003, Defendant prepared and sent to Plaintiff the January 2003 Mortgage, Mortgage Note and Note. (See Exhibits 1, 2 and 3). In a cover letter dated January 16, 2003 accompanying said documents, Defendant purported to enclose "a draft of the Mortgage Note, Mortgage and Note for my loan transaction with [Plaintiff]." A true and correct copy of the January 16, 2003 cover letter is attached as Exhibit 14.

21.    The January 2003 Mortgage defines Defendant as Borrower and Plaintiff as Lender. The January 2003 Mortgage specifies that Defendant owes Plaintiff $170,000 plus interest and other amounts that may be payable. (See Exhibit 1, p. 1).

22.    The January 2003 Mortgage specifies that Defendant mortgages, grants and conveys the Subject Property to Plaintiff against Defendant's obligation to repay the amounts specified in the January 2003 Mortgage. (See Exhibit 1, p. 2).

23.    The January 2003 Mortgage specifies that the Mortgage is governed by federal law and the law of New York State. (See Exhibit 1, p. 10).

24.    The January 2003 Mortgage specifies that, if Defendant fails to fulfill the obligations under the Mortgage, Plaintiff may require immediate payment in full of the remaining unpaid balance, may initiate litigation to take away all remaining rights of Defendant in the Subject Property and have the Subject Property sold and may collect all attorneys' fees and costs, which fees shall become part of the obligations secured by the Subject Property. (See Exhibit 1, p. 12).

25.    The January 2003 Mortgage Note specifies repayment by Defendant of a principal amount of $170,000 at 4.45% interest per year, with monthly installments of $856.32 to be paid by Defendant beginning March 1, 2003 and ending February 1, 2033. (See Exhibit 2, ¶¶

1-3).

26.     The January 2003 Mortgage Note specifies that Defendant will be in default if Defendant does not pay the full amount of each monthly payment on the date it is due. (See Exhibit 2, ¶ 6(E)).

27.     The January 2003 Mortgage Note specifies that if Defendant is in default, Plaintiff may require immediate repayment of all principal and unpaid accrued interest and is entitled to all costs and expenses incurred by Plaintiff in the collection of the Mortgage Note, including reasonable attorneys' fees. (See Exhibit 2, ¶ 22).

28.     The January 2003 Note specifies repayment by Defendant to Plaintiff of a principal amount of $80,000 at 4.45% interest per year, with monthly interest-only installments to be paid by Defendant beginning February 1, 2004 and ending February 1, 2033. (See Exhibit 3, p. 1).

29.     The January 2003 Note specifies that Defendant will be in default if Defendant does not pay the full amount of each annual interest payment by the end of fifteen calendar days after the date it is due. (See Exhibit 3, p. 1).

30.     The January 2003 Note specifies that if Defendant is in default, Plaintiff may require immediate repayment of all principal and unpaid accrued interest and is entitled to all costs and expenses incurred by Plaintiff in the collection of the Note, including reasonable attorneys' fees. (See Exhibit 3, p. 1).

31.     On or about January 22, 2003, Defendant amended the mortgagee declaration in an insurance policy ("the Policy") applicable to the Subject Property. The Policy was issued by the Amica Mutual Insurance Company and was renewable annually. Defendant amended the Policy to name Plaintiff as Mortgagee of the Subject Property. First Union National Bank is

named Second Mortgagee of the Subject Property. A true and correct copy of the Amended Declarations for the Policy is attached as Exhibit 15.

32.     On or about May 1, 2003 and July 21, 2003, Plaintiff, through attorneys AGT, corresponded with Defendant to request that Defendant begin repaying the Subject Loans outstanding as of those dates. True and correct copies of the May 1, 2003 and July 21, 2003 correspondence are attached as Exhibits 16 and 17.

33.     On or about March 23, 2004, Plaintiff, through attorneys AGT, sent correspondence to Defendant enclosing a Mortgage and Note specifying a principal of $177,721.20, which included the $170,000 principal recited in the January 2003 Mortgage Note and Mortgage plus unpaid accrued interest, and a Mortgage and New York Balloon Note specifying a principal of $83,633.52, which included the $80,000 principal recited in the January 2003 Note plus unpaid accrued interest. True and correct copies of the March 2004 correspondence, Mortgages, Note and New York Balloon Note are attached as Exhibits 18, 19, 20, 21 and 22, respectively.

34.     The March 2004 Mortgages, Note and New York Balloon Note additionally recited proposed revised interest rates and a revised repayment term for the $83,633.52 loan but otherwise contained substantially the same provisions as the January 2003 Mortgage Note, Mortgage and Note.

35.     In preparing the March 2004 Mortgages, Note and New York Balloon Note, Plaintiff incorporated the $170,000 and $80,000 principal amounts specified by Defendant in the January 2003 Mortgage Note, Mortgage and Note.

36.     During the time period from about April 2004 to about June 2004, Plaintiff, through attorneys AGT, contacted and attempted to contact Defendant by telephone regarding the

8

March 2004 Mortgages, Note and New York Balloon Note and payments due thereon. During one telephone conference on or about June 4, 2004, Defendant agreed to secure the $177,721.20 loan and agreed to a thirty year term for the $83,633.52 loan. Defendant objected to the proposed revised interest rates to the extent that the resulting monthly payments would exceed the monthly payments due under Defendant's original home mortgage.

37.    On or about August 17, 2004, Plaintiff, through attorneys AGT, informed Defendant of Plaintiff's decision to approve all terms proposed by Defendant during the telephone conference on or about June 4, 2004 for the March 2004 Mortgages, Note and New York Balloon Note and requested a payment schedule from Defendant. A true and correct copy of correspondence dated August 17, 2004 is attached as Exhibit 23.

38.    Despite Plaintiff's agreement to Defendant's proposed terms, and despite Plaintiff's continued demands between about August 17, 2004 and the present for Defendant to begin repaying the Subject Loans, Defendant has failed to honor the Agreement and has made no payments.

39.    On or about February 23, 2005, Plaintiff, through attorneys AGT, sent correspondence to Defendant requesting that Defendant begin repaying the Subject Loans. The February 2005 correspondence indicated that two promissory notes and a mortgage reflecting updated principal amounts due on both notes were enclosed. According to the February 2005 correspondence, the updated principal due on the loan recited in the January 2003 Mortgage Note and Mortgage was $185,150, which included the $170,000 principal plus unpaid accrued interest. According to the February 2005 correspondence, the updated principal due on the loan recited in the January 2003 Note was $82,200, which included the

$80,000 principal plus unpaid accrued interest. True and correct copies of the February 2005 correspondence and Note for the $82,200 loan are attached as Exhibits 24 and 25, respectively.

40.     On or about February 13, 2007, Plaintiff, through attorneys AGT, sent correspondence to Defendant requesting that Defendant begin repaying the Subject Loans and enclosing a Mortgage, Note and Promissory Note reflecting updated loan totals due under the March 2004 Mortgages, Note and New York Balloon Note. The February 2007 Mortgage and Note specified a principal of $200,931, which included the $170,000 principal recited in the January 2003 Mortgage Note and Mortgage plus unpaid accrued interest. The February 2007 Promissory Note specified a principal of $89,616, which included the $80,000 principal recited in the January 2003 Note plus unpaid accrued interest at the interest rate specified in the January 2003 Note. True and correct copies of the February 2007 correspondence, Mortgage, Note and Promissory Note are attached as Exhibits 26, 27, 28 and 29, respectively.

41.     On or about April 10, 2007, Plaintiff, through attorneys AGT, again requested that Defendant repay the Subject Loans. Plaintiff reviewed the January 2003 Mortgage, Mortgage Note and Note and noted that the accompanying correspondence from Defendant stated that these documents were for Defendant's loan from Plaintiff in the amount of $250,000. Plaintiff informed Defendant that a search of Plaintiff's records showed that the Subject Loans, which Defendant was obligated to repay pursuant to the Agreement, in fact totaled $296,610.80 in principal. Plaintiff enclosed a list itemizing the dates and amounts of the Subject Loans. A true and correct copy of the April 2007 correspondence is attached as Exhibit 30.

FIRST CAUSE OF ACTION
BREACH OF IMPLIED CONTRACT

42.    Plaintiff realleges and reasserts Paragraphs 1 through 41 as if fully set forth and restated herein.

43.    Plaintiff and Defendant reached the Agreement obligating Plaintiff to provide the Subject Loans to Defendant and obligating Defendant to repay the Subject Loans with interest. Plaintiff and Defendant memorialized the terms of the Agreement in the January 2003 Mortgage Note, the January 2003 Mortgage, the January 2003 Note, the revised versions thereof and correspondence between the parties subsequent to the formation of the Agreement. Defendant additionally amended the Policy to name Plaintiff as Mortgagee of the Subject Property.

44.    Plaintiff sent the Subject Loans to Defendant pursuant to the Agreement and has fully performed all of Plaintiff's obligations under the Agreement.

45.    Defendant has failed and refused to repay any portion of the Subject Loans or to otherwise satisfy Defendant's obligations under the Agreement.

46.    As a direct and proximate cause of Defendant's breach of the Agreement, Plaintiff has suffered and continues to suffer damages.

47.    Consequently, Defendant has wrongfully and dishonorably denied Plaintiff's expectation interests, per the terms of the Agreement. Plaintiff therefore is entitled to damages and other equitable relief which flow from the breach.

48.    The January 2003 Mortgage, January 2003 Mortgage Note and January 2003 Note, and all revised versions thereof, each specify that Defendant agrees to pay all costs and expenses, including reasonable attorneys' fees, incurred by Plaintiff in the collection of the Subject Loans.

11

49.    As a direct and proximate cause of Defendant's breach of the Agreement and Plaintiff's attempts to enforce Defendant's performance arising thereunder, Plaintiff has incurred, and continues to incur, costs and expenses, including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
## UNJUST ENRICHMENT

50.    Plaintiff realleges and reasserts Paragraphs 1 through 49 as if fully set forth and restated herein.

51.    Defendant directly benefited from the Subject Loans.

52.    Defendant was unjustly enriched at Plaintiff's expense by failing to repay any portion of the Subject Loans.

53.    The circumstances of Defendant's unjust enrichment are such that Defendant is obligated to make restitution to Plaintiff.

54.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiff has suffered and continues to suffer damages.

## THIRD CAUSE OF ACTION
## FRAUD

55.    Plaintiff realleges and reasserts Paragraphs 1 through 54 as if fully set forth and restated herein.

56.    As part of the Agreement, Defendant agreed to repay the Subject Loans to Plaintiff.

57.    In reasonable reliance upon Defendant's representations, Plaintiff sent the Subject Loans to Defendant.

58.    Defendant's representations that the Subject Loans would be repaid were materially false and misleading.

59.    As a direct and proximate result of Plaintiff's reasonable reliance on Defendant's

material representations, wrongful deception and fraudulent conduct, Plaintiff has suffered and continues to suffer damages.

## FOURTH CAUSE OF ACTION
### CONVERSION

60.     Plaintiff realleges and reasserts Paragraphs 1 through 59 as if fully set forth and restated herein.

61.     Defendant has engaged in an unauthorized assumption and exercise of ownership over the Subject Loans.

62.     Defendant is acting in an unauthorized way and without appropriate right, depriving Plaintiff of ownership rights in the Subject Loans.

63.     As a direct and proximate result of Defendant's unauthorized assumption and exercise of ownership over the Subject Loans, Plaintiff has suffered and continues to suffer damages.

## FIFTH CAUSE OF ACTION
### BREACH OF IMPLIED COVENANT
### OF GOOD FAITH AND FAIR DEALING

64.     Plaintiff realleges and reasserts Paragraphs 1 through 63 as if fully set forth and restated herein.

65.     The Agreement contains an implied covenant of good faith and fair dealing, which requires Defendant not do anything to destroy Plaintiff's right to receive the benefits of the Agreement.

66.     Defendant has breached the aforesaid implied covenant by engaging in those wrongful acts set forth herein above.  In so doing, Defendant has acted willfully and maliciously with intent to injure Plaintiff.

67.     As a direct and proximate result of Defendant's wrongful acts, Plaintiff has suffered and continues to suffer damages.

13

## PRAYER FOR RELIEF

WHEREFORE Plaintiff asks that this Court:

A.     Award damages in an amount proven at trial, but in no event less than the Subject Loans plus interest;

B.     Award Plaintiff's costs in bringing this action or any related action or proceeding to recover the Subject Loans;

C.     Award Plaintiff's attorneys' fees incurred in bringing this action;

D.     Award such other relief as the Court deems necessary and appropriate; and

E.     Order the Subject Property sold at auction to recoup the Subject Loans.

## JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues and causes of action so triable herein.

Respectfully submitted,

Dated: April 10, 2008

Robert L. Powley (RP 7674)
James M. Gibson (JG 9234)
David J. Lorenz (DL 3072)
Powley & Gibson, P.C.
304 Hudson Street, 2nd Floor
New York, New York 10013
(212) 226-5054

Attorneys for Plaintiff
Allan S. Larson

14

## SETTLEMENT AGREEMENT AND RELEASE

1.0.   **PARTIES**.   The parties to this Settlement Agreement and Release ("Agreement") are, JAINE ELKIND ENEY residing at 9 Kilmer Road, Larchmont, New York, 10538, (hereinafter "ENEY") and ALLAN S. LARSON residing at 2160 Century Part East, Apt #1702, Century City, California 90067 (hereinafter "LARSON") (ENEY and LARSON hereinafter referred to collectively as "the PARTIES").

2.0.   **RECITALS**.   This Agreement is based on the facts set forth below:

2.1.   WHEREAS on May 26, 2000 LARSON transferred directly to ENEY the sum of $ 10,000;

2.2.   WHEREAS in the year 2002 the following sums were transferred directly to ENEY or on her behalf on the stated dates:

| | | |
|---|---|---|
| 2.2.1. | August 5, 2002 | $  6,500 |
| 2.2.2. | October 8,2002 | $ 100,000 |
| 2.2.3. | October 29,2002 | $ 10,000 |
| 2.2.4. | November 10,2002 | $ 10,000 |
| 2.2.5. | November 10,2002 | $  5,110.80; |

2.3.   WHEREAS in the year 2003 the following sums were transferred directly to ENEY on the stated dates:

| | | |
|---|---|---|
| 2.3.1. | April 14, 2003 | $ 120,000 |
| 2.3.2. | September 3,2003 | $ 15,000 |
| 2.3.3. | October 12, 2003 | $ 20,000; |

2.4.   WHEREAS ENEY contends that the $10,000 transferred to her from LARSON on May 26, 2000 was directed to her by LARSON as a gift for her son's Bar Mitzvah;

2.5.   WHEREAS LARSON contends that on October 8, 2002 that he transferred to ENEY $100,000 for the purpose of providing ENEY with the means to buy-out her ex-husband's one-half interest in the family residence as a term of ENEY's divorce settlement and to pay for certain repairs to ENEY's residence;

2.6.   WHEREAS LARSON further contends that it was his intent to be paid back in full for the money transferred to ENEY in 2002;

2.7.   WHEREAS ENEY contends that the buy-out of her ex-husband's one-half interest in the family residence was $81,000 and the $81,000 was the number she conveyed to LARSON.   ENEY contends that the difference of the $81,000 and $100,000 received by her on October 8, 2002 was intended as a gift by LARSON;

1

2.8.    WHEREAS in addition, in 2002 LARSON transferred directly to ENEY the sum of $6,500 on the date stated above;

2.9.    WHEREAS in 2002 LARSON transferred the additional sums of $25,110.80 to third party creditors of ENEY on her behalf;

2.10.   WHEREAS ENEY further contends that at the time she received money from LARSON in 2002 she was uncertain as to how much of the money that was given to her would have to be paid back to LARSON;

2.11.   WHEREAS ENEY on January 16, 2003 prepared and delivered to LARSON an unsecured Promissory Note in the amount of $80,000 with interest at 4.45%, monthly payments to be interest only for a period of thirty (30) years with a balloon payment of principal at the end of thirty (30) years.   The Note was unexecuted by ENEY and delivered to LARSON for his review;

2.12.   WHEREAS on January 16, 2003 ENEY prepared and delivered to LARSON a Promissory Note in the amount of $170,000 to be secured by a mortgage on ENEY's residence. The terms of this note were for thirty (30) years, fully amortized with stated monthly payments of $856.32.   The note was prepared in anticipation of additional sums to be transferred to ENEY from LARSON in 2003 and included previous sums transferred to ENEY in 2002.   The Note was unexecuted by ENEY and delivered to LARSON for his review;

2.13.   WHEREAS ENEY and LARSON discussed that LARSON would transfer to ENEY $120,000 for the sole purpose of ENEY paying-off the mortgage on her residence;

2.14.   WHEREAS LARSON alleges that it was his intent to loan ENEY the money to pay off her mortgage at a lower interest than what she was then paying and to secure a first position as a lien holder on her residence;

2.15.   WHEREAS LARSON on April 14, 2003 transferred to ENEY the sum of $ 120,000. In addition the sums of $15,000 and $20,000 were transferred directly to ENEY on the dates stated above;

2.16.   WHEREAS ENEY further contends that at the time she received money from LARSON in 2003 she was uncertain as to how much of the money that was given to her would have to be paid back to LARSON;

2.17.   WHEREAS ENEY contends that she is unable to make payments under the terms of the above stated Notes of $80,000 and $170,000;

2.18.   WHEREAS ENEY further contends that she has no other assets, real or personal, that is held for her benefit by any third party, including but not limited to any family members;

2.19.   WHEREAS ENEY represents that she is the sole owner of 9 Kilmer Road in Larchmont, New York;

2.20.   WHEREAS LARSON filed a complaint against ENEY for breach of contract, unjust enrichment, fraud, conversion, and breach of implied covenant of good faith and fair dealing in the federal district court for the Southern District of New York and the PARTIES are entering this agreement in an effort to settle the allegations therein.

In consideration of the foregoing and of the mutual representations and covenants contained herein, the PARTIES hereto agree as follows:

**3.0    AGREEMENT.**

3.1    FORGIVENESS OF $80,000 UNSECURED NOTE.    LARSON hereby agrees to forgive in full, the $80,000 Unsecured Note as presented by ENEY dated January 2003. The parties agree that this note under IRC Regs 166(d)(2) constitutes a nonbusiness bad debt. However, the parties agree that LARSON will not claim for tax purposes this Note as a bad debt on his personal tax return.

3.2    COMPROMISE OF $170,000 SECURED NOTE.

3.2.1    LARSON agrees to reduce the $ 170,000 Secured Note to $150,000. LARSON agrees that the difference of the amount of money owed on this Note and the compromised amount of $150,000 constituting a non-business bad debt under Internal Revenue Code § 166(d)(2) and Treasury Regulations, Subchapter A, § 1.66-1 and will not be claimed for tax purposes as bad debt on LARSON's personal tax return.

3.2.2    ENEY agrees to execute a Secured Promissory Note, in the form attached hereto as Exhibit "A" in the amount of $150,000 secured by a mortgage, in the form attached hereto as Exhibit "B", on her residence at 9 Kilmer Road, Larchmont, New York, 10538. The Note will carry interest at .4% on the principal, monthly payments of $50 will be made on the first day of each month, the first payment due on the execution of this Agreement. The entire note of principal and interest shall be due 15 years from January 1, 2008 or due in full at the death of ENEY or if the residence is sold. The mortgage shall be in first position of all other liens or encumbrances on the residence. LARSON shall have the right to fully assign said Note.

3

3.3     GIFTS.  The PARTIES agree that the following transfers to ENEY were intended as gifts to ENEY:
3.3.1   $10,000 transferred to ENEY on May 26, 2000;
3.3.2   $19,000 transferred to ENEY on October 8, 2002
3.3.3   $15,000 transferred to ENEY on September 3, 2003

3.4     ASSUMPTION OF FUTURE TAX CONSEQUENCES.    Both PARTIES agree to be responsible for their own tax liability on any future tax consequences that either party may incur as a result of this Settlement Agreement and Release.

3.5     PROOF OF INABILITY TO REPAY.  ENEY shall produce a verified balance sheet and an affidavit from her tax preparer as to her net worth regarding her personal and real property assets as way of proof of her inability to repay the total amount of the Notes as stated in Paragraphs 3.1 and 3.2 above.

3.6     CONSENT JUDGMENT.  This Settlement and Release Agreement shall be secured by a Consent Judgment signed by the PARTIES, by which ENEY stipulates to allow LARSON to have a Judgment entered against ENEY in the sum of $311,357.47 which represents the total amount of interest and principal owed on the $80,000 and the $170,000 notes as of January 1, 2008. The Judgment would be held by LARSON as security for the payments as set forth in paragraph 3.2 above and not filed with the Court, provided that ENEY make all of the payments outlined in paragraph 3.2.  The Consent Judgment shall not be filed unless there was a default by ENEY in making the required payments as set forth in paragraph 3.2.  If ENEY defaults in the payment schedule, LARSON must provide ENEY with seven (7) days written notice of default and ENEY would have seven (7) days to cure the default.  To be effective, written notice must be sent by an overnight courier selected by LARSON, or notice by personal service whichever LARSON chooses as an effective method of notice.  Notice will be deemed given to ENEY upon personal service or deposit of the notice with an overnight courier.  Provided ENEY makes payments in accordance with paragraph 3.2 above, or cures the default within seven (7) days of receipt of any written default notice, then the original Consent Judgment would not be filed with the Court, and would be returned to ENEY's attorney within seven (7) days of receipt of final payment in accordance with paragraph 3.2 above.

3.7     RELEASES.  Except as to such rights or claims as may be created by this Agreement, each party hereby releases, remits and forever discharges each other party hereto from any and all claims, demands and causes of action arising out of, connected with, or incidental to the dealings between the PARTIES, including but not limited to LARSON's claim for the Loans or any other money owed

4

by ENEY to LARSON. The PARTIES are aware that they may hereafter discover claims or facts in addition to or different from those it now know or believes to be true with respect to the matters related herein. Nevertheless, it is the intention of the PARTIES to fully, finally and forever settle, and release all such matters, and all claims relative thereto, which do now exist, may exist, or should therefore have existed between them, except as to such claims as may be created by this Agreement. In furtherance of such intention, the releases given herein shall be and remain in effect as full and complete mutual releases of all such matters, notwithstanding the discovery or existence of any additional or different claims or facts relative thereto.

3.8    Additional Documents. The PARTIES shall execute all such further and additional documents as shall be reasonable, convenient, necessary or desirable to carry out the provisions of this Settlement Agreement.

**4.0.    REPRESENTATIONS AND WARRANTIES.** Each party hereto represents, warrants, and agrees as follows:

4.1.    Legal Advice. The PARTIES each had the opportunity to seek independent legal advice from an attorney of his own choosing with respect to the advisability of making the Agreement provided herein, with respect to the advisability of executing this Agreement and with respect to the meaning and operation of California Civil Code Section 1542, wherever applicable to either or both PARTIES hereto.

4.2.    Legal Representation. The PARTIES hereto acknowledge that the preparers of this Agreement are Denise M. Guzman, of Guzman & Lou, LLP, attorney for LARSON, and Lee Corbin of Kurzman Eisenberg Corbin Lever & Goodman, LLP, attorney for ENEY.

4.3.    No Reliance. No party nor any agent, representative, or attorney of any party has made any statement or representation to any of the parties regarding any fact relied upon in entering into this Agreement, and each party does not rely upon any statement, representation or promise of any party or of any officer, agent, employee, representative or attorney for the other party, in executing this Agreement, or in making the settlement provided for herein, except as expressly stated in this Agreement.

4.4.    No Assignment. None of the parties herein assigned, transferred, granted, or purported to assign, transfer or grant, any of the claims, demands and the causes of action disposed of by this Agreement.

4.5   <u>Authority.</u>   The PARTIES represent that they have the legal capacity and authority to enter into this Agreement and do so under their own free will.

## 5.0.   <u>MISCELLANEOUS.</u>

5.1   <u>Applicable Law and Venue.</u>   This Agreement shall be deemed to have been executed and delivered within the State of New York, and the rights and obligations of the parties hereto shall be construed and enforced in accordance with, and governed by, the laws of the State of New York.

5.2.   <u>Entire Agreement.</u>   This Agreement is the entire Agreement between the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous oral or written agreements. This Agreement may be amended only by an agreement in writing.

5.4.   <u>Successors in Interest.</u>   This Agreement is binding upon and shall inure to the benefit of the parties hereto, their respective agents, representatives, assigns, heirs, and successors in interest.

5.5.   <u>Drafting Responsibility.</u>   Each party has participated in the drafting and preparation of this Agreement. Hence in any construction to be made of this Agreement, the same shall not be construed against any party.

5.6.   <u>Costs and Attorneys Fees.</u>   In the event of any dispute with respect to the terms of this Agreement, the prevailing party shall be entitled to all of its costs and attorneys fees in resolving the dispute (including arbitration fees).

5.7.   <u>Counterparts.</u>   This Agreement may be executed in counter-parts, all of which shall be an original for all purposes.

6

5.8.  <u>Effective Date</u>.  This Agreement is effective as of the date on which the final party to this Agreement herein signs.

**PARTIES**

_____       _____
JAINE ELKIND ENEY                                                      DATE


_____       _____
ALLAN S. LARSON                                                         DATE


**\*APPROVED AS TO FORM AND CONTENT**

_____       _____
DENISE M. GUZMAN                                                   DATE
Attorney for LARSON


_____       _____
LEE CORBIN                                                               DATE
Attorney for ENEY