USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/14/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
                                    :
ALLAN S. LARSON,                    :
                                    :
                         Plaintiff, :       08 Civ. 3513(VM)
                                    :
                                    :       **DECISION AND ORDER**
       - against -                  :
                                    :
JAINE ELKIND ENEY,                  :
                                    :
                        Defendant.  :
------------------------------------X

**VICTOR MARRERO, United States District Judge.**

Plaintiff Allan Larson ("Larson") brought this diversity of jurisdiction action against defendant Jaine Elkind Eney ("Eney") to recover purportedly unpaid loans. The parties filed cross-motions for summary judgment in January 2010, and for the reasons discussed below, both motions are DENIED.

## I. BACKGROUND[1]

The current dispute began when Eney received money from her close friend Larson to help conclude her divorce proceedings,

---

[1] The factual recitation set forth below is drawn from the following documents, and any exhibits or declarations submitted therewith: Affidavit of Jaine Elkind Eney, dated January 9, 2010 ("Eney Aff."); Affidavit of David L. Elkind, dated January 12, 2010 ("Elk. Aff."); Affidavit of Allan S. Larson in Support of Plaintiff's Motion for Summary Judgment, dated January 13, 2010 ("Larson Aff."); [Defendant's] Statement of Material Facts as to Which There is No Genuine Issue to be Tried, dated January 13, 2010; Plaintiff's Statement of Material Facts as to which there is No Genuine Statement to be Tried, dated January 15, 2010; Affidavit of David J. Lorenz in Support of Plaintiff's Motion for Summary Judgment, dated January 2010, ("Lorenz Aff."); Affidavit of Denise Guzman in Opposition to Defendant's Motion for Summary Judgment, dated February 2, 2010 ("Guzman Aff."); Defendant's Statement of Disputed Facts in Opposition to Plaintiff's Statement of Material Facts as to Which There is No Genuine Statement to be Tried, dated February 4, 2010; Plaintiff's Response to Defendant's Statement of Material Facts in Support of Plaintiff's Opposition to Defendant's Motion for Summary Judgement, dated February 8, 2010. Except as quoted, no further reference to these documents will be made.

pay off a mortgage on her home, and improve her overall financial situation. Specifically, Larson wired Eney $220,000, sent her several checks totaling $51,000, and sent her divorce attorneys several checks totaling $25,110.80. In sum, between 2000 and 2003, Larson gave $296,110.80 to Eney directly or to a third party on Eney's behalf. Eney did not repay this money after Larson's numerous repayment requests beginning in 2003.

As part of negotiations between the parties, on January 16, 2003, Eney sent Larson a mortgage loan proposal (the "2003 Mortgage Loan Proposal"). Eney's cover letter to the proposal noted that it was to settle her "loan transaction" with Larson. (Larson Aff., Ex. L.) After several subsequent discussions, Eney sent Larson a settlement proposal in December 2007 (the "2007 Settlement Proposal"), outlining her proposed repayment plan. Larson, however, wrote Eney in January 2008, to indicate his dissatisfaction with the terms regarding tax liability. Neither party signed the 2007 Settlement Proposal.

Larson then filed a complaint on April 10 2008, (the "Complaint") against Eney alleging breach of implied contract, unjust enrichment, fraud, conversion, and breach of implied covenant of goof faith. On May 14, 2008, Larson sent Eney a letter explaining that he changed the terms of the settlement

-2-

proposal to reflect his belief that each party should assume his or her own tax consequences.  Larson also attached a copy of the Complaint to the letter and warned that if Eney did not agree to the terms of the new settlement proposal he would continue with the litigation.  When Eney did not agree to the terms, Larson served her with a copy of the Complaint.

Eney moved to dismiss all claims on August 22, 2008.  By Decision and Order dated February 10, 2009, Judge Chin[2] granted the motion in part, dismissing the fraud claim, conversion claim, and implied covenant of good faith and fair dealing claims.[3]

Eney additionally moved to dismiss Larson's breach of implied contract claim pursuant to the statute of frauds.  She argued that the parties agreed that Eney would repay Larson through a mortgage on her property with Larson as the mortgagee.  Eney asserted that such an interest in real property had to be in writing in order to be enforceable. Judge Chin denied the motion, noting "there [was] no indication from the [C]omplaint that [Larson] requested the mortgage, and it was never signed."  Larson, 2009 WL 321256, at *2-*3.

---

[2] This action was originally assigned to Judge Chin but was transferred to this Court on May 12, 2010, following Judge Chin's appointment to the Second Circuit Court of Appeals.

[3] The Decision and Order is reported at Larson v. Eney, No. 08-CV-3513, 2009 WL 321256 (S.D.N.Y. Feb. 10, 2010).

In the same motion, Eney included a seemingly premature request for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56"), claiming that the parties reached a settlement agreement in December 2007. Judge Chin denied summary judgment, finding that Larson presented evidence indicating the parties never agreed on the terms of tax liability, which Larson contended represented a material term, and because Larson never signed the 2007 Settlement Proposal. See id. at *5-*7.

## II. LEGAL STANDARD

In connection with a Rule 56 motion, "[s]ummary judgment is proper if, viewing all the facts of the record in a light most favorable to the non-moving party, no genuine issue of material fact remains for adjudication." Samuels v. Mockry, 77 F.3d 34, 35 (2d Cir. 1996) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-50 (1986)). The role of a court in ruling on such a motion "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." Knight v. U.S. Fire Ins. Co., 804 F.2d 9, 11 (2d Cir. 1986). The moving party bears the burden of proving that no genuine issue of material fact exists, or that due to the paucity of evidence presented by the non-movant, no rational jury could find in

-4-

favor of the non-moving party.   See Gallo v. Prudential
Residential Servs., L.P., 22 F.3d 1219, 1223 (2d Cir. 1994).
When deciding cross-motions for summary judgment, the standard
to be applied "is the same as that for individual summary
judgment motions and a court must consider each motion
independent of the other." Schultz v. Stoner, 308 F. Supp. 2d
289, 298 (S.D.N.Y. 2004).

### III.   DISCUSSION

The parties have presented competing evidence on four
issues essential to the resolution of this case: (1) Larson
claims that the parties entered into a valid loan agreement,
while Eney asserts that no loan was contemplated between the
parties; (2) Eney argues that if there was a loan, repayment
was to be accomplished via an interest in real property; (3)
Eney asserts that the parties settled this dispute in 2007;
and (4) Larson claims that if the Court denies summary
judgment on his breach of contract claim, that the Court must
grant summary judgment on his unjust enrichment claim.  After
close review of the record, the Court concludes that these
issues are rife with disputed genuine issues of material facts
and thus cannot be decided on summary judgment.

### A. LOAN AGREEMENT

At the outset, the Court notes that the issue of whether
a transaction is a loan "is essentially a factual question

-5-

which is answered with reference to the context in which the transaction occurred." Midland Ins. Co. v. Friedgood, 577 F. Supp. 1407, 1412-1413 (S.D.N.Y. 1984). Under New York law, a loan is defined as "(i) a contract, whereby (ii) one party transfers a defined quantity of money, goods, or services, to another, and (iii) the other party agrees to pay for the sum or items transferred at a later date." In re Renshaw, 222 F.3d 82, 88 (2d Cir. 2000). In order for the loan to be valid and enforceable, a meeting of the minds must occur between the parties on all essential terms. See Schurr v. Austin Galleries of Ill., Inc., 719 F.2d 571, 576 (2d Cir. 1983) (citation omitted).

Eney claims that her arrangement with Larson constituted a gift rather than a loan because the parties never discussed material elements of the "loan," such as the principal amount and the interest rate, and thus no meeting of the minds occurred between the parties. (See Elk. Aff., Ex. 3 at 176.) However, in addition to a meeting of the minds, "a critical issue in the determination of whether a transaction [is] a loan is whether the intent to make a loan was present." Midland Ins. Co., 577 F. Supp. at 1413 (emphasis in original). Since "summary judgment is likely to be inappropriate where intent is at issue," the question of whether Larson

transferred the money as a loan or a gift is ill-suited for summary judgment.  Id.

Larson does not contest that certain terms of the loan were not decided at the outset of the transaction, but he asserts that the nature of the transactions was never in dispute.  First, he argues that the checks sent to Eney had the word "loan" written in the memo line.  He asserts that, although checks without this notation were sent to Eney's attorneys on her behalf, the word "loan" would have been inaccurate as applied to the attorneys and so was not included on the memo line.  Additionally, he claims that the money Larson wired to Eney was not marked with the word "loan" because wire transfers provide no opportunity to label the transaction type.

Next, Larson explains that Eney herself referred to the money as a "loan" in the 2003 Mortgage Loan Proposal, which referred to the transaction as a "loan transaction" with Larson.  (Larson Aff., Ex. L.)

Finally, Larson notes that Eney also used the word "loan" in a letter she sent to her son's college's financial aid office on November 10, 2004.  The letter stated, "a family friend's father loaned me ... money .... I have every intention of recording a mortgage against the house and ... repaying the loan."  (Lorenz Aff., Ex. 4.)  Accordingly,

Larson claims that Eney acknowledged that the transaction was a loan by describing it as one in the cover letter.

Eney disputes Larson's evidence.  She notes that she immediately questioned the use of the word "loan" on the checks she received and that Larson explained that the word "loan" was simply for "the IRS." (Deposition of Jaine Elkind Eney, dated October 6, 2009, at 82.)  Thus, even though the checks were marked as loans, Eney claims this was essentially a lie to satisfy the IRS rather than to indicate the nature of the transaction between Larson and herself.  Additionally, Eney claims that while some checks were marked with "loan" in the memo line, the checks sent to her attorneys and the money wired to Eney lacked this notation, and such inconsistent memorialization proves Larson never intended the money to constitute a loan.

Eney next explains that she prepared the 2003 Mortgage Loan Proposal at Larson's request because he needed it "for the IRS." (Elkind. Aff., Ex. 3 at 179).  Therefore, Eney claims she used the word "loan" in the proposal because a mortgage is a security for a debt, and since she was discussing a mortgage, "loan" was a more appropriate word choice. (See Elk. Aff., Ex. 3 at 187.)  The Court finds this reasoning unpersuasive, as Eney could have used several other words indicating a mortgage other than the word "loan."

However, viewed in the light most favorable to Eney, the non-moving party on this issue, the use of the word "loan" in this document does not by itself prove the existence of a loan given that the 2003 Mortgage Loan Proposal represents only one document among many the parties exchanged between 2002 and 2007.

Finally, Eney claims that she used the word "loan" in the letter to her son's college's financial aid office because the college directed her to explain her current financial situation.  (See Lorenz Aff., Ex. 4.)   Again viewing the issue in the light most favorable to the non-moving party, the Court finds it not implausible that Eney, though perhaps improperly misrepresenting to financial aid officers, used the word "loan" to make it appear that she was in a weaker financial position, and therefore would be more likely to receive financial aid.  Thus, in this context, the use of the word "loan" in a letter to a third-party raises a genuine factual dispute as to whether Eney believed the transaction constituted a loan.

Since Eney and Larson present conflicting evidence regarding their intent and the nature of the transaction on the record before the Court, the existence of a loan in the parties' dealings remains a question of fact for the jury.

B.  <u>STATUTE OF FRAUDS</u>

-9-

Next, assuming there was a loan from Larson to Eney, the parties dispute whether Eney agreed to repay Larson through an interest in her home. Eney claims that all repayment discussions concerned how Eney would repay Larson through a mortgage on her property. As this understanding constituted an interest in real property, Eney asserts that the loan agreement had to be in writing in order to satisfy the statute of frauds and be enforceable. See N.Y. Gen. Oblig. Law § 5-703(1) ("An estate or interest in real property ... cannot be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the person creating, granting, assigning, surrendering or declaring the same....").

As Judge Chin noted, "[w]hile [Eney] did send [Larson] a draft mortgage in January 2003 identifying [Larson] as the mortgagee on [Eney's] house, there is no indication from the [C]omplaint that [Larson] requested the mortgage, and it was never signed." Larson, 2009 WL 321256, at *2-*3. The record after discovery now includes documents indicating that Eney would repay Larson through an interest in her house, such as the 2003 Mortgage Loan Proposal, the 2007 Settlement Proposal, and a document explaining the value of her house and indicating that her house is her sole asset. (See Eney Aff., Exs. 1, 10, 15.) However, Larson claims that Eney initiated

-10-

the idea of repaying Larson through a mortgage and that he never requested this method of repayment. (See Larson Aff., Ex. J at 147.)  Though Eney's preparation and transmission of these documents suggest Eney and Larson discussed repayment via an interest in real property, when viewing the issue in the light most favorable to Larson, the non-moving party on this issue, the Court finds it equally plausible that Larson never requested repayment via a mortgage because the correspondence was often initiated by Eney.  Therefore, the Court finds there are genuine issues of disputed material facts as to whether Larson ever requested repayment through a mortgage on Eney's property.

   C. DECEMBER 2007 SETTLEMENT AGREEMENT

     Alternatively, Eney asserts that if the Court finds that factual issues exist barring summary judgment on the first two grounds she asserts, then she is nonetheless entitled to summary judgment on the basis that the parties reached a final settlement in 2007.

     Eney claims that, as indicated in the 2007 Settlement Proposal, the parties agreed that Eney would repay Larson "$50.00 per month in interest in return for a 15-year payment term for the $150,000 principal." (Eney Aff. ¶ 19; id. Ex. 10.)  Eney argues that Larson's subsequent disagreement with the tax liability, as indicated in his email response to the

-11-

2007 Settlement Proposal and his new proposal sent in May 2008, did not constitute a rejection of a material term that would preclude the existence of a settlement contract. Eney explains that the tax issue did not represent a material term because Larson mentioned the tax liability issue only sporadically and in an inconsistent manner regarding the tax consequences affecting each party. (See Eney Aff., ¶¶ 18, 20, 22.)

Eney therefore concludes that the parties reached a final settlement in 2007 since a meeting of the minds existed as to all material terms. See Schurr, 719 F.2d at 576 (citation omitted). Under this theory, Larson's attempt to modify the tax liability on May 14, 2008, represented an alteration to an already-formed contract. Since, under New York law, a contract cannot be modified without the mutual assent of each party, Eney claims that the new terms shifting the tax liability failed to modify or otherwise undo the 2007 Settlement Proposal. See Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 783 (2d Cir. 2003) (citation omitted).

Larson, however, insists that the issue of tax liability represented a material term and since this issue was never resolved, no settlement was consummated in 2007. Larson argues that prior to Eney's proposed settlement, Larson's counsel clearly indicated to Eney that the distribution of tax

-12-

consequences between the parties represented a material term. (See Larson Affidavit in Opposition to Defendant's Motion for Summary Judgment ¶ 28, dated February 8, 2010; id. Ex. A at 171-173.)  Additionally, Larson claims that Eney implicitly recognized the significance of this issue since she was working with a tax attorney to prepare the proposed settlement agreement.  (See Guzman Aff., Ex. 8; Eney Aff., Ex. 17.)

Larson therefore characterizes the events of December 2007 through May 2008 as a rejection of Eney's settlement offer and a proposal of his counter-offer, which included new terms providing that Larson and Eney assume their own tax consequences. (See Guzman Aff. ¶ 22; id. Ex. 12.)  Eney never agreed to this counter-offer and thus Larson claims the parties failed to reach a settlement.

Resolution of whether the parties reached a settlement in 2007, including whether allocation of tax liability was a material term of the settlement, relies on a fact-finder's evaluation of sharply divergent versions of what the parties assert they genuinely believed, and of each party's credibility.  These issues, therefore, raise questions of material fact for a jury.

D. UNJUST ENRICHMENT

Larson argues that even if the Court does not find that a loan existed, the Court must grant summary judgment on his

unjust enrichment claim.   But a party can claim unjust enrichment only if no valid and enforceable contract governs the subject matter.   See EBC I, Inc. v. Goldman Sachs & Co., 5 N.Y.3d 11, 23 (N.Y. 2005).   Since the Court has not determined that a loan agreement did not exist between the parties, the Court cannot consider Larson's unjust enrichment claim at this stage.

## IV. ORDER

Accordingly, it is hereby

**ORDERED** that the motion of defendant Allan Larson for summary judgment (Docket No. 36) is DENIED; and it is further

**ORDERED** that the motion of plaintiff Jaine Elkind Eney for summary judgment (Docket No. 34) is DENIED; and it is further

**ORDERED** that a conference is scheduled for July 23, 2010, at 3:15 p.m. to discuss preparations for trial.

**SO ORDERED.**

Dated:     New York, New York
           13 July 2010

                                   VICTOR MARRERO
                                      U.S.D.J.

-14-